**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KIMBERLY BARTLETT on behalf of herself and all others similarly situated, | |
| Plaintiff, | **CASE NO.** |
| v. | **1:11-CV-0624-JOF** |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | **CLASS ACTION** |
| Defendant. | |

**Response Memorandum in Opposition to Plaintiff Kimberly Bartlett's Motion for Class Certification**


ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Christopher W. Madel (MN #230297)
Lisa L. Heller (GA # 344109)
Denise S. Rahne (MN #331314)
Jennifer M. Robbins (MN #387745)
Barry M. Landy (MN #391307)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

*Attorneys for Defendant*
*Portfolio Recovery Associates, LLC*

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. FACTS .......... 1

A. Plaintiff has presented no facts in support of her motion for class certification .......... 2

B. Individualized circumstances, including varying contractual terms and conditions, prevent Plaintiff from meeting her burden under Fed. R. Civ. P. 23 .......... 2

C. Plaintiff's class definition relies upon proof of PRA's liability, but she has presented no facts or evidence to support such a finding .......... 5

1. The purpose of the Telephone Consumer Protection Act is to restrict activities of telemarketers—not debt collectors such as PRA .......... 5

2. PRA does not use—and has no incentive to use—an ATDS because it does not make business sense for PRA to dial telephone numbers randomly or sequentially .......... 6

D. The *Meyer* Court noted that Plaintiff Meyer failed to meet Fed. R. Civ. P. 23 for the purposes of a preliminary injunction .......... 7

III. ARGUMENT .......... 8

A. Plaintiff is not a member of the class that she seeks to represent and she does not have standing to pursue class claims .......... 9

B. Plaintiff cannot meet Rule 23(a)'s commonality and typicality requirements or Rule 23(b)(3)'s predominance requirement .......... 10

1. The individual question of consent defeats class certification ....................11

2. In addition to consent, other case-by case-defenses based on the wide-ranging contracts between creditors and putative class members impede Rule 23(b)(3)'s predominance requirement ....................15

C. Plaintiff has presented no evidence of numerosity ....................17

D. Plaintiff's class definition renders the putative class unascertainable....................18

E. Plaintiff fails to establish superiority under Rule 23(b)(3)..........20

1. Because PRA's liability to a class would be disproportionate to the conduct of which it is accused, class certification should be denied....................21

IV. CONCLUSION....................25

**TABLE OF AUTHORITIES**

**Page**

## Cases

*Bakalar v. Vavra*,
237 F.R.D. 59 (S.D.N.Y. 2006)....................18

*Bledsoe v. Combs*,
2000 U.S. Dist. LEXIS 7434 (S.D. Ind. Mar. 14, 2000)....................20

*Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*,
238 F.R.D. 679 (S. D. Fla. 2006)....................11

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)....................9

*De Bremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970)....................18

*Evans v. U.S. Pipe & Foundry Co.*,
696 F.2d 925 (11th Cir. 1983)....................17

*Fluellen v. Wetherington*,
2003 U.S. Dist. LEXIS 21712 (N.D. Ga. Mar. 21, 2003)....................18

*Forman v. Data Transfer, Inc.*,
164 F.R.D. 400 (E.D. Pa. 1995)....................12

*Gene & Gene LLC*,
541 F.3d 318 (5th Cir. 2008), *aff'd* 624 F.3d 698 (5th Cir. 2010) 11, 12, 14, 15, 19

*Hagen v. Winnemucca*,
108 F.R.D. 61 (D. Nev. 1985)....................19

*Heffelfinger v. Electronic Data Systems*,
2008 U.S. Dist LEXIS 5296 (C.D. Cal. Jan. 7, 2008)....................19

*Helms v. Consumerinfo.com, Inc.*,
236 F.R.D. 561 (N.D. Ala. 2005) .......................................................... 21, 24

*Hicks v. Client Services, Inc.*,
No. 07-61822-CIV, 2008 U.S. Dist. LEXIS 101129 (S.D. Fla. Dec. 11, 2008) .......................................................................................... 11, 12, 13

*Hillis v. Equifax Consumer Svcs., Inc.*,
237 F.R.D. 491 (N.D. Ga. 2006) .................................................... 21, 23, 24

*Hinman v. M & M Rental Center, Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008)..........................................................23

*Jackson v. Motel 6 Multipurpose, Inc.*,
130 F. 3d 999 (11th Cir. 1997)...................................................................16

*Kenro Inc. v. Fax Daily, Inc.*,
962 F. Supp. 1162 (S.D. Ind. 1997) ...................................................... 12, 19

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ......................................... 21, 22, 23, 24, 25

*Levine Inc. v. 9 Net Ave., Inc.*,
2001 N.J. Super. Unpub. LEXIS 1 (N.J. Super. June 7, 2001) .................22

*Levitt v. Fax.com*,
No. WMN-05-949, 2007 U.S. Dist. LEXIS 83143 (D. Md. May 25, 2007) ..........................................................................................................12

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ..................................................... 21, 24, 25

*Mad Rhino, Inc. v. Best Buy Co., Inc.*,
2008 U.S. Dist. LEXIS 8619 (C.D. Cal. Jan. 14, 2008)...............................19

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
471 F.3d 24 (2d Cir. 2006) ...........................................................................8

*Murray v. Auslander*,
244 F.3d 807 (11th Cir. 2001)...................................................................10

*Newton v. Southern Wood Piedmont Co.*,
163 F.R.D. 625 (S.D. Ga. 1995), *aff'd* 95 F.3d 59 (11th Cir. 1996)............19

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
213 F.R.D. 619 (N.D. Ga. 2003) ..................................................................18

*Ross v. Bank South, N.A.*,
837 F.2d 980 (11th Cir. 1988), *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988)..............................................................................................11

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ........................................................ 9, 15, 16

*Soualian v. Int'l Coffee & Tea LLC*,
2007 U.S. Dist. LEXIS 44208 (C.D. Cal. June 11, 2007) ...........................22

*Valley Drug Co. v. Geneva Pharms., Inc.*,
350 F.3d 1181 (11th Cir. 2003) ..................................................................8, 9

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ......................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
No. 10-277, 2011 U.S. LEXIS 4567 (June 20, 2011).......................... 8, 9, 10

*Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*,
247 F.3d 1262 (11th Cir. 2001) ......................................................................9

**Statutes**

47 U.S.C. § 227..........................................................................................11

47 U.S.C. § 227(a)(1)(A) ..................................................................................6

47 U.S.C. § 227(b)(1)(A) ........................................................................... 5, 18

Fed. R. Civ. P. 23(a)(3) ..................................................................................10

Federal Rule of Civil Procedure 23(a) ............................................ 1, 10, 17, 18

Federal Rule of Civil Procedure 23(b)..............................................................8

Federal Rule of Civil Procedure 23(b)(3) .................................................. passim

## Other Authorities

8 Newberg on Class Actions,
§ 24.17 (4th ed. 2008) .......................................................................... 18

## I. INTRODUCTION

Despite bearing the burden to demonstrate the appropriateness of class certification, Plaintiff Kimberly Bartlett's Motion for Class Certification is utterly devoid of *any* case-specific facts and, as a consequence, fails. First, Plaintiff is not a member of her own class and does not have standing to pursue class claims. Second, because her class definition is dependent on multiple, individualized questions of fact—most notably the question of prior express consent—the elements required under Federal Rule of Civil Procedure 23(a) are defeated. Third, Plaintiff's ever-evolving class definition, a now-proverbial moving target, requires not only that class members prove liability before they can be deemed members of the class, but also that the court attempt to ascertain a wide range of individualized circumstances, many of which are also based on the putative class members' contracts with their original creditors.

## II. FACTS

Presently, Plaintiff seeks certification under Rule 23(b)(3) for a class of:

> All persons within the State of Georgia who, on or after October 28, 2010 . . . received a non-emergency telephone call from PRA to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed and wherein the cellular telephone number was obtained by PRA LLC through its skip tracing process.

(Pl. Mem. 3.)[1]

**A. Plaintiff has presented no facts in support of her motion for class certification.**

Despite it being her clear burden, Plaintiff has set forth no case-specific facts in support of her motion: no facts support her claim that any other Georgia resident received calls from PRA on his cell phone; no facts support her claim that *any* Georgia resident received a call from PRA in which an artificial or prerecorded voice was used. Indeed, the parties' have only just begun discovery, through which PRA intends to demonstrate that its actions with regard to Plaintiff and members of the putative class were lawful.

**B. Individualized circumstances, including varying contractual terms and conditions, prevent Plaintiff from meeting her burden under Fed. R. Civ. P. 23.**

Portfolio Recovery Associates' ("PRA") primary business is the purchase and collection of unpaid consumer debt. (Robbins Decl.[2] Ex. A (PRA's 2010

---

1 Plaintiff's class definition differs from that alleged in her Second Amended Complaint in that Plaintiff now specifies *an additional requirement* that class members' cellular telephone numbers be obtained by PRA through "skip tracing." (*Compare* Pl. Mem. 3 *with* Compl. ¶ 28.) Skip tracing is a term used to describe the various ways in which a person's whereabouts and contact information may be located. It includes the use of phone books, telephone databases, services such as LexisNexis, credit reports, public tax information, or simply asking neighbors, employers, or known contacts for information. Further, in her motion, Plaintiff seeks to represent a class that includes "corporations, partnerships, associations, or other business entities." (Pl. Mem. 3.) But these entities are not specified in her class definition and only further emphasize Plaintiff's inability to meet her Rule 23 burdens. (*See id.*)

Annual Report (10-K), at 4).) The contracts underlying each individual's debt were entered into at varying times and contain differing terms and conditions related to: mandatory, binding arbitration; class-action waivers; consent to be contacted on a cellular telephone; and use of an automated telephone dialing system ("ATDS"). Plaintiff's own contract is through Bank of America and likely contains similar provisions—raising questions as to Plaintiff's standing to represent the class.

A chart showing examples of the wide-ranging terms and conditions contained in agreements for just some of the original creditors from which PRA has purchased consumer debt is attached at Robbins Decl. Ex. B. Some of these terms and conditions implicate mandatory or voluntary arbitration. For instance, a contract may include language in which the debtor "agree[d] that any dispute, regardless of when it arose, shall be resolved by the following arbitration process." (Warren Decl.[3] Ex. 1(p), ¶ 34; *see also* Warren Decl. Ex. 1(h) ("[E]ither you or we may, at either party's sole election, require that any Claim . . . be resolved by binding arbitration."); *but see* Warren Decl. Ex. 1(e) (no arbitration provision); Warren Decl. Ex. 1(d) (same).

---

2 Citations to "Robbins Decl." refer to the Declaration of Jennifer M. Robbins submitted in support of PRA's Opposition to Plaintiff's Motion for Class Certification.

3 Citations to "Warren Decl." refer to the Declaration of Kelly Warren submitted in support of PRA's Opposition to Plaintiff's Motion for Class Certification.

Other contracts contain prohibitions on participating in class actions, such as one version of MBNA's contract that states, in relevant part: "You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim." (Warren Decl. Ex. 1(o); *see also* Warren Decl. Ex. 1(j) at 9 ("Claims and remedies . . . are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis."); *but see* Warren Decl. Ex. 1(e) (no class action waiver); Warren Decl. Ex. 1(d) (same).

Consent to be contacted on a cellular telephone is similarly addressed in multiple contracts affecting the claims of putative class members. For example, 1st Financial Bank and Capital One include similar provisions:

> Where you have provided a cell phone number directly to us or placed a cell phone call to us, or we have otherwise obtained your cell phone number, you consent and agree to accept collection and other calls to your cell phone from us. For any telephone or cell phone calls we place to you, you consent and agree that those calls may be automatically dialed and/or use recorded messages.

(Warren Decl. Ex. 1(a); *see also* Warren Decl. Ex. 1(i), at Communications ("For example, we may contact you . . . on your mobile telephone . . . ."); Warren Decl. Ex. 1(p), at ¶ 31 (the bank "may from time to time make calls . . . through the use of an automatic dialing device, at any telephone number associated with your account, including wireless telephone numbers that could result in charges to

you."); *but see* Warren Decl. Ex. 1(e) (no provision addressing consent to be contacted); Warren Decl. Ex. 1(d) (same).

**C. Plaintiff's class definition relies upon proof of PRA's liability, but she has presented no facts or evidence to support such a finding.**

In order to satisfy her own class definition, Plaintiff must demonstrate that PRA uses an automatic telephone dialing system ("ATDS"). Plaintiff has presented no facts in support of this central issue, and PRA disputes that it uses an ATDS as statutorily defined.

**1. The purpose of the Telephone Consumer Protection Act is to restrict activities of telemarketers—not debt collectors such as PRA.**

The Telephone Consumer Protection Act ("TCPA") was designed to restrict "commercial telemarketing solicitations." 137 Cong. Rec. H-11307-01, 1-2 (daily ed. Nov. 26, 1991) (finding, *inter alia*, an "increased use of cost-effective telemarketing techniques," "[o]ver 30,000 businesses actively telemarket goods and services," and consumer outrage over "calls to their homes from telemarketers"). To the extent the statute was intended to apply to industries outside of telemarketing, the TCPA focuses on preventing seizure of "emergency or medical assistance telephone line[s]" or preventing an "inordinate burden on the consumer." *Id.* The statutory language requiring the use of an ATDS (47 U.S.C. § 227(b)(1)(A)) is logical in the telemarketing context because an ATDS is defined to require the "capacity" to do as telemarketers do: "store or produce

telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1)(A).

**2. PRA does not use—and has no incentive to use—an ATDS because it does not make business sense for PRA to dial telephone numbers randomly or sequentially.**

As discussed in detail in the Declaration of Joshua Cherkasly (*see* Robbins Decl. Ex. C), rather than using its dialers to store or produce telephone numbers randomly or sequentially, PRA "uses its dialers strategically to target debtors that have a higher likelihood of paying their past-due debts." (*Id.* at ¶ 12.) The telephone numbers that PRA uses to target such debtors "are not, and never have been, provided to the PRA agent using a random or sequential number generator." (*Id.* at ¶ 13.) "Indeed, PRA's agents do not even call debtors in sequential order. In fact, PRA goes to great lengths to call debtors at particular times of the day rather than in sequential order to comply with federal laws and to maximize the chances that PRA will be able to reach the debtor and collect the applicable debt." (*Id.* at ¶ 16.) Plaintiff has provided no evidence that PRA has the capacity to store or produce random or sequential numbers as required under the TCPA. Nor has Plaintiff provided any evidence that PRA engages in random or sequential dialing.

**D. The *Meyer* Court noted that Plaintiff Meyer failed to meet Fed. R. Civ. P. 23 for the purposes of a preliminary injunction.**

In support of her motion, Plaintiff relies on an action pending in Southern District of California. (Pl. Mem. 11 (citing *Meyer v. Portfolio Recovery Associates, LLC*, Case No. 11-cv-1008.) Last week, however, the *Meyer* Court ruled in PRA's favor on Meyer's Motion for Preliminary Injunction and addressed Meyer's failure to meet Rule 23's typicality requirement. Specifically, Judge Battaglia noted:

> Well, in looking at the motion for class certification, we need to find, of course, under Rule 23, the numerosity, ie [sic], the class is so numerous the joinder of all members is impractical in a lawsuit[,] commonality of questions of law and fact, typicality, where there is a class represented as typical. And then the adequacy of the representative to protect the class interests.
>
> And here I have a problem with the typicality arm in terms of the fact that we have got these issues out there of consent or not through some contractual means when people signed up in the process. I don't think there has been an adequate showing of evidence that warrants class treatment even on a limited basis.

(Robbins Decl. Ex. D, June 23, 2011 Hr'g. Tr. 30:7-19.) An analysis similar to that of Judge Battaglia regarding Plaintiff's ability to satisfy Rule 23's requirements is warranted here.

## III. ARGUMENT

The burden of proving that a class action is appropriate rests with the plaintiff. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). This burden requires proof by a preponderance of the evidence that all requirements of Rule 23 have been satisfied. *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 39-42 (2d Cir. 2006). Plaintiff fails to meet this burden and presents *no* evidence related to her proposed class, instead relying only on speculation.[4]

Class litigation is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277, 2011 U.S. LEXIS 4567, at *17 (June 20, 2011) (internal quotations omitted). And because "*Rule 23* does not set forth a mere pleading standard," Plaintiff "must affirmatively demonstrate" all four requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy—and one of the three requirements of Rule 23(b). *Id.* at **12, 21. "[T]hat is, [Plaintiff] must be prepared to prove that there are *in fact* sufficiently

---

4 To date, neither party has produced documents nor taken depositions. Indeed, Plaintiff's deposition of PRA pursuant to Rule 30(b)(6) has been postponed until July 26. Thus, it is unsurprising that Plaintiff's "Statement of Facts" consists of citations only to the TCPA, two rulings by the Federal Communications Commission ("FCC"), and PRA's 2010 Form 10K filing with the Securities and Exchange Commission. (*See generally*, Pl. Mem. 4-8.)

numerous parties, common questions of law or fact, etc." *Id.* at *21 (emphasis in original); *accord Valley Drug Co.*, 350 F.3d at 1187-88.

In determining whether to certify a class, the Court conducts a "rigorous analysis," and grants certification only if the plaintiff demonstrates that Rule 23's requirements have been met. *Dukes*, 2011 U.S. LEXIS 4567, at *21; *accord Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010). Plaintiff Bartlett has failed to meet this burden, and class certification must be denied.

**A. Plaintiff is not a member of the class that she seeks to represent and she does not have standing to pursue class claims.**

Plaintiff is not a member of the class that she asks the Court to certify: "all persons within the State of Georgia who . . . received a . . . call from PRA to a cellular telephone through the use of [1] an automatic telephone dialing system or [2] an artificial or prerecorded voice." (Pl. Mem. 3.) Plaintiff has submitted no evidence that she was contacted through the use of an ATDS or through an artificial or prerecorded voice. Thus, she cannot be a plaintiff under the TCPA (*see* 47 U.S.C. § 227), she is not a member of the proposed class, and she does not have standing to pursue class claims. *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001) (standing); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 97 (2d Cir. 2007) (requiring call representatives to be members of the classes they seek to represent).

**B. Plaintiff cannot meet Rule 23(a)'s commonality and typicality requirements or Rule 23(b)(3)'s predominance requirement.**

Plaintiff's proposed class fails to meet the commonality, typicality, and predominance requirements of Rule 23 because determining membership in the class varies case-by-case depending on numerous factors, not the least of which is each individual's consent to be called on their cellular telephone.

To prove commonality, Plaintiff must identify questions of fact or law common to the class such that "issues [. . .] are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). But "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 2011 U.S. LEXIS 4567, at *20 (internal quotations omitted). Rule 23(a)'s typicality and commonality requirements "tend to merge," *Dukes*, 2011 U.S. LEXIS 4567, at *20 n.5, but named plaintiffs must still demonstrate that their claims or defenses are "typical of claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009).

Similarly, predominance under Rule 23(b)(3) requires Plaintiff to prove that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ.

P. 23(b)(3). But "[t]he predominance inquiry . . . is far more demanding than *Rule 23(a)*'s commonality requirement." *Vega,* at 1270 (internal quotations omitted).

**1. The individual question of consent defeats class certification.**

As the Eleventh Circuit has noted, "[t]he existence of a unique defense. . .is relevant to the certification decision." *Ross v. Bank South, N.A.*, 837 F.2d 980, 990 (11th Cir. 1988), *vacated on other grounds*, 848 F.2d 1132, 1133 (11th Cir. 1988)*; see also Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S. D. Fla. 2006) (quoting *Ross*, 837 F.2d at 990). The fact that some class members consented to be contacted on their cellular telephones is just such a defense.

The term "prior express consent" is undefined in the text of the TCPA. *Cf.* 47 U.S.C. § 227, *et seq.* The legislative history of the TCPA, however, provides that consent may be "given orally, in writing, electronically, or by any other means . . . . Such consent could be obtained, for instance, by including a clause in a contract or purchase agreement indicating that signing the agreement constitutes the purchaser's express consent to receive a computerized call concerning that service or product." 137 Cong. Rec. 30822 (Nov. 7, 1991).

Because "consent" can take many forms, courts have held that proof of consent is "an essential individual issue," making class certification inappropriate. *Hicks v. Client Services, Inc.*, No. 07-61822-CIV, 2008 U.S. Dist. LEXIS 101129, at *19-21 (S.D. Fla. Dec. 11, 2008); *see also, e.g., Gene & Gene LLC,*

541 F.3d 318, 327 (5th Cir. 2008), *aff'd* 624 F.3d 698 (5th Cir. 2010); *Levitt v. Fax.com*, No. WMN-05-949, 2007 U.S. Dist. LEXIS 83143, at *11-13 (D. Md. May 25, 2007); *Kenro Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997) (consent issue made class certification inappropriate for lack of typicality, commonality, and predominance); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995). In *Hicks*, as here, the plaintiff sought to certify a class of citizens who received telephone calls on their cell phones from a debt collector. 2008 U.S. Dist. LEXIS 101129, at *3. Hicks urged certification, arguing that "[t]he common issue of receiving the call at a wireless number predominates other individual issues," and to the extent consent is an issue, "Defendant has the burden of producing evidence that there had been consent." *Id.* at *18-19. The Court flat-out rejected this argument, stating:

> Plaintiff claims that she will be able to show at trial the lack of express consent by herself and the class members. *She does not, however, describe how she intends to do so without the trial degenerating into mini-trials on consent of every class member.*

*Id.* at *20 (emphasis added). In the end, "[w]hether the burden is on the Plaintiff or the Defendant, ultimately *consent is an issue that would have to be determined on an individual basis* at trial." *Id.* (emphasis added).[5] Because consent could not be

---

5 Other courts have held that individual issues on "affirmative defenses" may preclude class certification. *See, e.g.*, *Gene & Gene LLC*, 541 F.3d at 327 ("Whether established . . . as an affirmative defense or . . . as an element of the cause of action, the issue of consent will entirely determine how the proposed

determined on a class-wide basis, the court held that class certification would be improper for lack of commonality under Fed. R. Civ. P. 23(a) and predominance under Fed. R. Civ. P. 23(b)(3). *Id*. Here, as in *Hicks*, individual questions on consent preclude findings of both commonality and predominance.

Under Plaintiff's proposed class definition, to determine if a putative class member provided "prior express consent" to call her cell phone, the Court would first have to ascertain whether that class member provided her cell phone number to the original creditor through a "voluntary transaction." This will entail individual examination of each potential class member's credit application and all other written and oral communication between each potential class member and the original creditor. This determination will require, at a minimum, examination of all of PRA's records, as well as the original creditor's records that are not in PRA's possession, any of which may reflect consent.

In addition—and not contemplated by Plaintiff's class definition—even if the debtor did not provide PRA or the original creditor with the phone number called by PRA, there may be evidence that the debtor *expressly agreed* that a creditor could call him at *any* phone number. Indeed, various creditors have, for a number of years, included consent provisions in their applications. For example, the Visa and Mastercard Agreements through 1st Financial Bank

---

class-action trial will be conducted on the merits.") Thus, it is no defense that because PRA bears the burden to prove consent, a class should be certified.

include consent provisions allowing calls to cell phone numbers "[w]here you have provided a cell phone number directly to us or placed a cell phone call to us, or we have otherwise obtained your cell phone number" and that such calls "may be automatically dialed and/or use recorded messages." (Warren Decl. Ex. 1(a).) Credit cards provided through Wells Fargo contains similar language. (Warren Decl. Ex. 1(p), ¶ 31 (the bank "may from time to time make calls [using] [ . . .] an automatic dialing device, [to] any telephone number associated with your account, including wireless telephone numbers that could result in charges to you.").) Thus, Plaintiff's argument that "details of the purported underlying Debt are irrelevant" is unavailing. (Pl. Mem. 13 n.7.)[6] (*See generally* Robbins Decl. Ex. B; Warren Decl. Ex. 1(a)-(q) (example account agreements).)

Accordingly, to determine consent will require "mini-trials" as to each class member and additionally that the Court review each credit agreement and its amendments—evidence not available on a common basis due to the number of original creditors from whom PRA purchases debt—to determine if that putative class member authorized contact at *any* phone number. *See Gene & Gene LLC*, 541 F.3d at 328-29 (where consent was gleaned from a variety of sources, no

---

[6] To date, Plaintiff has not produced documents responsive to PRA's document request related to her underlying credit agreement and for which PRA intends to move to compel if necessary. As discovery continues, PRA expects that further evidence of the variation between class members' credit agreements will surface, and the predominance of individual questions of law and fact over common questions will become even more compelling.

class-wide proof was possible). Thus, determination of this "essential individual issue" on liability would predominate over common questions.

**2. In addition to consent, other case-by case-defenses based on the wide-ranging contracts between creditors and putative class members impede Rule 23(b)(3)'s predominance requirement.**

Certification of Plaintiff's proposed class would require the Court to focus solely on PRA's conduct and overlook the substantial variation in each class member's agreements and communications with creditors, making certification improper under Rule 23(b)(3). "Common issues of fact and law predominate if they have a *direct impact* on every class member's effort to establish liability *that is more substantial than the impact of individualized issues* in resolving the claim or claims of each class member." *Sacred Heart*, 601 F.3d at 1170 (citing *Vega*, 564 F.3d at 1270) (reversing district court's grant of class certification) (emphasis in original; internal quotations omitted). In determining predominance, the Court must "examine not only the defendant's course of conduct towards the class members, but also the class members' legal rights and duties." *Sacred Heart*, at 1170. Thus, "if fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed, or if the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones." *Id.* (citing, *inter alia*, *Gene & Gene*, 541

F.3d at 326-29); *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F. 3d 999, 1006 (11th Cir. 1997).

The Eleventh Circuit's reasoning in *Sacred Heart* is instructive on the issue of predominance. In *Sacred Heart*, the Eleventh Circuit noted that where claims are "driven by the terms of the parties' agreement [ . . . ] common questions rarely will predominate if the relevant terms vary in substance among the contracts." *Id.* at 1171. Thus, the court reversed class certification because the district court "focus[ed] solely on the defendant's course of conduct" and "overlooked the substantial variation in the contracts and the corresponding rights and duties they provide the plaintiffs." *Id.* at 1176 (citing *Vega*, 564 F.3d at 1272).

Here, Plaintiff's proposed class under the TCPA is similarly dependent on terms of the class members' agreements with their original creditors because, as discussed *supra* at Section III.B.1., consent is likely to have been given in many instances. It is also likely that some underlying credit agreements prohibit potential class members from being part of a class action related to their debt—another unique defense that PRA would assert on a case-by-case basis. (Robbins Decl. Ex. B; Warren Decl. Ex. 1(a)-(q) (example account agreements).)

### C. Plaintiff has presented no evidence of numerosity.

A plaintiff must make *some* showing of numerosity in order to satisfy the requirements of Rule 23. Fed. R. Civ. P. 23(a). A "mere allegation[] of numerosity [is] insufficient." *Vega*, 564 F.3d at 1267 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)).

In *Vega*, the Eleventh Circuit rejected the district court's finding of numerosity because it was based on speculation and not actual evidence:

> Vega has not cited, and we cannot locate in the record, any evidence whatsoever (or even an allegation) of the number of retail sales associates T-Mobile employed during the class period in Florida who would comprise the membership of the class, as certified by the district court.
>
> Yes, T-Mobile is a large company, with many retail outlets and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1). *However, a plaintiff still bears the burden of establishing every element of Rule 23, and a district court's factual findings must find support in the evidence before it. In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation*.

*Id*. (emphasis added). Here, Plaintiff's numerosity argument is entirely dependent on two pieces of information: (1) the number of Georgia accounts PRA holds as recorded in PRA's SEC filings; and (2) a declaration submitted by David Parisi, counsel in a putative *California-specific* class action. (Pl. Mem. 11.) Mr. Parisi's declaration does not reference Georgia in *any* way. (Pl. Ex. A to Dkt. No. 45-1.) And, PRA's 10-K does not reference cellular telephones—let alone

provide such information on a Georgia-specific level. Because this Court cannot infer a finding of numerosity without any factual support (*Vega*, 564 F.3d at 1267), Plaintiff's motion for certification should be denied.

**D. Plaintiff's class definition renders the putative class unascertainable.**

"Whether a proposed class is ascertainable is fundamental to certification." *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006). "Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries." *Id.; accord Fluellen v. Wetherington*, 2003 U.S. Dist. LEXIS 21712, at *29 (N.D. Ga. Mar. 21, 2003) (citing *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). Rule 23(a)'s numerosity requirement also requires that a class be ascertainable. *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 674 (N.D. Ga. 2003) ("A second element of the numerosity requirement is that the proposed class meet a minimal standard of identifiability."). A class is unascertainable where the class definition requires the court to determine the ultimate issue of liability to define class members. Such classes are "self-defeating" due to the court's "inability to define who belongs in it before there has been a full trial." 8 Newberg on Class Actions, § 24.17 (4th ed. 2008). The TCPA prohibits calls using an ATDS to a cell phone *only if* they are made without the party's express consent. 47 U.S.C. § 227(b)(1)(A). Whether putative class members consented is "the central issue of

liability" that requires the court to undertake a detailed analysis of each class member's individual circumstances—a fact-intensive inquiry that does not lend itself to resolution on a class-wide basis. *Kenro,* 962 F. Supp. at 1169; *see also Gene & Gene,* 541 F.3d at 327. Here, Plaintiff's purported class is unascertainable for the same reason that Plaintiff fails to demonstrate predominance: identification of the class members would require a fact-intensive inquiry into each and every individual.

Courts outside of the TCPA context, including in Georgia, have also denied class certification where the plaintiffs' proposed class definition was untenable because it required a finding of liability. In *Newton v. Southern Wood Piedmont Co.*, for example, plaintiffs sought to certify a class of individuals who were exposed to chemicals who "have specifically evidenced a keratosis." 163 F.R.D. 625, 632 (S.D. Ga. 1995), *aff'd* 95 F.3d 59 (11th Cir. 1996). The court denied certification, holding that the plaintiffs' class definition was "fundamentally defective" where it required a finding of a medical diagnosis to determine who was in the class. *Id.*[7]

[7] *See also, Heffelfinger v. Electronic Data Systems*, 2008 U.S. Dist LEXIS 5296, *45 (C.D. Cal. Jan. 7, 2008) ("fail safe" classes, where the class members either win or are not in the class, have been held to be improper); *Mad Rhino, Inc. v. Best Buy Co., Inc.,* 2008 U.S. Dist. LEXIS 8619, *12 (C.D. Cal. Jan. 14, 2008) (denying certification on allegations of price discrimination, where "individual issues of competition prevented the court from determining who is or is not in the class without evaluating the merits"); *Hagen v. Winnemucca*, 108 F.R.D. 61, 63-64 (D.

The proposed class here is similarly flawed. The class definition includes individuals "who did not provide prior express consent" for calls received from PRA. But the issue of whether consent was provided goes directly to the issue of liability in this case. To determine class membership, Plaintiff's class definition would require this Court to consider the merits of each potential class member's claim, making this class untenable and denial of Plaintiff's Motion proper.

**E. Plaintiff fails to establish superiority under Rule 23(b)(3).**

Even setting aside the failure to establish predominance, Plaintiff fails to establish that her proposed class is the superior method of litigating her claims due to the disproportionate nature of potential damages when compared to the harm alleged and the conduct at issue. Congress intended TCPA claims to be brought individually in small-claims court, not as class actions. *See* 137 Cong. Rec. S30821-22 (1991). When debating the TCPA, Senator Hollings stated that the intent of the TCPA is to allow plaintiffs "to appear before [a small-claims court] without an attorney." *Id.* Further, as previously held by the Eleventh Circuit, superiority is not met where: (1) the conduct at issue relates to an alleged failure to follow the requirements of a complex regulatory scheme that is subject to

---

Nev. 1985) (denying certification where court would be required to consider the merits of the controversy to determine who was in the class); *Bledsoe v. Combs*, 2000 U.S. Dist. LEXIS 7434, *11-13 (S.D. Ind. Mar. 14, 2000) (denying certification where the court could not determine class members without hearing evidence on merits of each person's claim).

different reasonable interpretations; (2) the potential damages are grossly disproportionate to the conduct at issue; or (3) the violations are unintentional and the plaintiff suffers no actual harm. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003); *Hillis v. Equifax Consumer Svcs., Inc.,* 237 F.R.D. 491, 504-05 (N.D. Ga. 2006); *Helms v. Consumerinfo.com, Inc.*, 236 F.R.D. 561, 568 (N.D. Ala. 2005).

**1. Because PRA's liability to a class would be disproportionate to the conduct of which it is accused, class certification should be denied.**

The United States District Court for the Northern District of Alabama denied class certification under facts similar to those here. *See Helms v. Consumerinfo.com, Inc.*, 236 F.R.D. 561 (N.D. Ala. 2005). In *Helms*, the plaintiff sought damages under the Credit Repair Organizations Act ("CROA"). The court relied on *Klay* and *London* (discussed *infra* at III. E.2.) in finding that "the unnamed class members could indeed proceed on their own and achieve a more equitable result." *Id.* at 568. In addition, "[c]ertification of this class action would likely lead to damages that 'are grossly disproportionate to the conduct at issue.'" *Id.* (quoting *Klay*, 382 F.3d at 1271). The court further found that "the damages resulting would be devastating and largely out of proportion with the culpability of Defendant's conduct." *Id.* at 569. Therefore, "given that Defendant does not offer fraudulent services, considering that Plaintiff has exhibited little if

any actual damages, and with an eye to the likelihood that class damages would be disproportionately large when compared to Defendant's actual conduct," the superiority requirement was not satisfied. *Id.* at 569-70; *see also Klay*, 382 F.3d at 1271 (courts must "assess whether the potential damages available in a class action are grossly disproportionate to the conduct at issue").

Due to the disparity between the potential damages in this case and any actual injury, class certification should be denied. *See Levine Inc. v. 9 Net Ave., Inc.,* 2001 N.J. Super. Unpub. LEXIS 1, at *16 (N.J. Super. June 7, 2001) (upholding denial of class certification in TCPA case because, inter alia, "the $500 damage award is attractively disproportionate to the extent of the actual injury."); *Soualian v. Int'l Coffee & Tea LLC*, 2007 U.S. Dist. LEXIS 44208, at *13 (C.D. Cal. June 11, 2007) (denying class certification under the Fair and Accurate Credit Transactions Act "[w]here massive damage awards would be disproportionate to any actual damage caused by the alleged violations, class action is not the superior method of adjudicating class members' claims"). PRA's affirmative defense of unclean hands represents an additional reason that a class action is not a superior vehicle to resolve this claim: if an individual refused to pay an outstanding debt and subsequently attempted to evade collection efforts by cancelling all non-cellular telephone accounts, that individual should not be entitled to recover a windfall.

Moreover, Plaintiff's reliance on *Hinman v. M & M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) is misplaced. *Hinman* arose in the context of fax advertisements, and the court relied on the "en masse" nature of the contact to support a finding of commonality and thus superiority. *See id*. at 807. Here, calls are not placed "en masse" and, as with the issue of consent, each interaction with a debtor is unique to the debt owed by that person and his ability and willingness to enter into a payment arrangement. It is unsurprising, therefore, that PRA *does not* dial numbers sequentially or randomly. (Robbins Decl. Ex. C, ¶¶ 12-16.) To do so would be nonsensical given PRA's goal of contacting specific debtors on a targeted basis according to the likelihood that they will pay their past-due debts. (*Id.*)

Last, PRA anticipates that Plaintiff will argue that the damages she seeks are not massive when compared to PRA's assets taken as a whole, but this is not the proper measure of comparison. Rather, courts deny class certification when, as here, the damages sought are disproportionate to the defendant's conduct compared to the harm suffered by the plaintiff. *Klay*, 382 F.3d at 1271-72; *Hillis,* 237 F.R.D. at 505-06.

**2. Efforts to seek disproportionate, windfall damages based on alleged technical violations fail with regard to superiority.**

Eleventh Circuit authority establishes that class certification should be denied where, as here, potential damages are disproportionate to an alleged

injury or conduct. *Klay,* 382 F.3d at 1271; *London*, 340 F.3d at 1255; *Hillis*, 237 F.R.D. at 504; *Helms,* 236 F.R.D. at 568.

In *London*, 340 F.3d 1246, plaintiff sought certification for alleged violations of the Truth in Lending Act. In reversing the district court's grant of class certification on other grounds, the court expressed "doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement," because "the alleged illegality of the contracts at issue [in *London*] occurred through the Appellants' failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations. In addition, *the plaintiffs suffered no economic harm*." *London*, 340 F.3d at 1255 n.5 (emphasis added).

In *Klay*, 382 F.3d 1241, plaintiff sought certification on several claims, including RICO. The court held that superiority was satisfied for the RICO claims only because plaintiffs suffered actual harm and the violations were intentional. "[B]ecause RICO violations are predicated upon serious federal criminal acts, this is not a case where the plaintiffs are attempting to obtain a windfall based on minor or technical violations of a complex regulatory scheme." *Id*. at 1272. The court was clear that different facts would render a different result, noting courts must "assess whether the potential damages available in a class action are grossly disproportionate to the conduct at issue." *Id*. at 1271. This is particularly true "where damages are being sought for technical violations of a

'complex regulatory scheme, subject to different reasonable interpretations.'" *Id.* (citing *London*). "In cases where the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff, [ . . . ] individual suits, rather than a single class action, are the superior method of adjudication." *Id.*

## IV. CONCLUSION

Because Plaintiff cannot meet her burden of proving the requirements of Rule 23, PRA respectfully requests that this Court deny Plaintiff's motion for class certification.

Dated this 29th day of June, 2011.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: *s/Jennifer M. Robbins*
Jennifer M. Robbins
MN Reg. No. 387745, admitted pro hac vice

Christopher W. Madel
MN Reg. No. 230297, admitted pro hac vice
Denise S. Rahne
MN Reg. No. 331314, admitted pro hac vice
Jennifer M. Robbins
MN Reg. No. 387745, admitted pro hac vice
Barry M. Landy
MN Reg. No. 391307, admitted pro hac vice

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

E-mail: cwmadel@rkmc.com
Email: dsrahne@rkmc.com
E-mail: jmrobbins@rkmc.com
E-mail: bmlandy@rkmc.com

Lisa L. Heller
Georgia Bar Number 344109
One Atlantic Center
1201 W. Peachtree Street, Suite 2200
Atlanta, GA 30309
404-760-4300
Fax: 404-233-1267
Email: llheller@rkmc.com

*Attorneys for Defendant*
*Portfolio Recovery Associates, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| KIMBERLY BARTLETT on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>Defendant. | Case No.:<br>**1:11-CV-0624-JOF**<br><br>CLASS ACTION<br><br>**CERTIFICATE OF SERVICE** |
|---|---|

I hereby certify that on June 29, 2011, I electronically filed this **Response Memorandum in Opposition to Plaintiff Kimberly Bartlett's Motion for Class Certification** using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Henry A. Turner
TURNER LAW OFFICES, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, GA 30030
Telephone: (404) 261-7787
hturner@tloffices.com

Samuel M. Hill
THE LAW OFFICES OF SAM HILL, LLC
265 Riverchase Parkway East Suite 202
Hoover, AL 35244
Telephone: (205) 250-7776
Facsimile: (205) 250-7675
sam@samhilllawofcs.com

Dated this 29th day of June, 2011.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: *s/Jennifer M. Robbins*

Jennifer M. Robbins
MN Reg. No. 387745, admitted pro hac vice

Christopher W. Madel
MN Reg. No. 230297, admitted pro hac vice
Denise S. Rahne
MN Reg. No. 331314, admitted pro hac vice
Jennifer M. Robbins
MN Reg. No. 387745, admitted pro hac vice
Barry M. Landy
MN Reg. No. 391307, admitted pro hac vice

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181
E-mail: cwmadel@rkmc.com
Email: dsrahne@rkmc.com
E-mail: jmrobbins@rkmc.com
E-mail: bmlandy@rkmc.com

Lisa L. Heller
Georgia Bar Number 344109
One Atlantic Center
1201 W. Peachtree Street, Suite 2200
Atlanta, GA 30309
404-760-4300
Fax: 404-233-1267
Email: llheller@rkmc.com

*Attorneys for Defendant*
*Portfolio Recovery Associates, LLC*