# EXHIBIT A

1

1      UNITED STATES DISTRICT COURT

2      FOR THE NORTHERN DISTRICT OF GEORGIA

3           Atlanta Division

4

5  KIM BARTLETT, on behalf of   )

6  herself and all others       )

7  similarly situated,          )  CIVIL ACTION NO.

8           Plaintiff,          )  1:11-CV-0624-JOF

9      v.                       )

10 PORTFOLIO RECOVERY           )

11 ASSOCIATES, INC.,            )

12           Defendant.         )

13

14

15    30(b)(6) DEPOSITION UPON ORAL EXAMINATION

16       OF PORTFOLIO RECOVERY ASSOCIATES

17       TAKEN ON BEHALF OF THE PLAINTIFF

18           Norfolk, Virginia

19           August 10, 2011

20

21    _____

22         TAYLOE ASSOCIATES, INC.

23      Registered Professional Reporters

24       Telephone: (757) 461-1984

25           Norfolk, Virginia

2

```
1    APPEARANCES:

2         On behalf of the Plaintiff:

3              SAMUEL M. HILL, ESQUIRE

4              The Law Offices of Sam Hill, LLC

5              265 Riverchase Parkway East, Suite 202

6              Hoover, Alabama 35244

7              (205) 985-5099

8              HENRY A. TURNER, ESQUIRE

9              Turner Law Offices, LLC

10             403 W. Ponce De Leon Avenue, Suite 207

11             Decatur, Georgia 30030

12             (404) 261-7787

13        On behalf of the Defendant:

14             CHRISTOPHER MADEL, ESQUIRE

15             JENNIFER M. ROBBINS, ESQUIRE

16             Robins, Kaplan, Miller & Ciresi LLP

17             2800 LaSalle Plaza, 800 LaSalle Avenue

18             Minneapolis, Minnesota 55402-2015

19             (612) 349-8500

20             STEVEN R. ZAHN, ESQUIRE

21             Portfolio Recovery Associates, Inc.

22             140 Corporate Boulevard

23             Norfolk, Virginia 23502

24             (757) 321-2512

25        Also Present:  Josh Cherkasly
```

Tayloe Associates, Inc.

3

```
 1                      I  N  D  E  X

 2                        WITNESS

 3     On behalf of the Plaintiff:  Examination by:  Page

 4     Neal Stern                   Mr. Hill              4

 5

 6

 7

 8

 9

10                        EXHIBITS

11     No.          Description                    Page

12     1            7/27/11 E-mail from Ms. Robbins    8

13     2            Phone Number spreadsheet          12

14     3            Exhibit 2                         17

15     4            Declaration of Jennifer Robbins   22

16     5            Form 10-K                         26

17

18

19

20

21

22

23

24

25
```

4

1          30(b)(6) deposition upon oral examination

2     of Portfolio Recovery Associates, taken on behalf of

3     the Plaintiff, before Rebecca L. Braley, RMR, a Notary

4     Public for the Commonwealth of Virginia at Large,

5     commencing at 9:00 a.m., on the 10th day of August,

6     2011, at the offices of Tayloe Associates,

7     Incorporated, 253 West Bute Street, Norfolk, Virginia.

8              NEAL STERN, called as a witness, having

9     been first duly sworn, was examined and testified as

10    follows:

11                    EXAMINATION

12    BY MR. HILL:

13        Q.     Can you state your name for us, please.

14        A.     Sure.  Neal Stern.

15        Q.     And, Mr. Stern, where do you work?

16        A.     At Portfolio Recovery Associates.

17        Q.     And what do you do at Portfolio Recovery

18    Associates?

19        A.     I am the executive vice-president of

20    operations and chief operating officer.

21        Q.     COO?

22        A.     (Witness nodding head.)

23        Q.     You have to answer out loud for her.

24        A.     Yes.

25        Q.     And as COO and executive vice-president

Tayloe Associates, Inc.

```
 1   of operations, what do you do each day?
 2        A.     I oversee our call centers, I oversee our
 3   legal collections and I oversee our strategy
 4   department, decide who to apply what collection
 5   treatment to.  I also oversee the operations of our
 6   subsidiary companies.  There is a subsidiary company
 7   that does government revenue enhancement.  There is a
 8   subsidiary that does automobile location services.
 9   There is some other subsidiary that does class-action
10   claim administration and filing claims for securities
11   companies.
12        Q.     What is your class action claim
13   administration company?
14        A.     It is called CCB.
15        Q.     I thought I heard it all.
16        A.     If you ever have big securities
17   litigation, give us a ring.
18        Q.     Always marketing, this one.  That is why
19   he is COO.
20        A.     If I am in marketing, you should sell
21   your stock in our company.
22        Q.     Where did you go to school, Mr. Stern?
23        A.     University of Minnesota.
24        Q.     When did you graduate?
25        A.     I did not graduate.  I last -- my last
```

1    year in attendance was '91.

2         Q.    What did you study while you were there?

3         A.    Speech communications.

4         Q.    Hence, the debater of your 6th grader.

5         A.    No.  That is my wife's fault.

6         Q.    And you were last there, you said, '91,

7    is that right?

8         A.    That sounds right.

9         Q.    How long -- let me start with your

10   employment at I will call it PRA.  Is that okay?

11        A.    That is good to me.

12        Q.    When did you begin at PRA?

13        A.    January 2nd, 2008.

14        Q.    What did you -- what was your beginning

15   title when you went to work there?

16        A.    Chief operating officer of owned

17   portfolios.

18        Q.    Of owned portfolios?

19        A.    Yes.

20        Q.    Meaning what?

21        A.    Meaning the operations surrounding the

22   portfolios that we own.

23        Q.    Is it a fair summary to say that you

24   supervise the acquisition of the portfolios?

25        A.    No.

1          Q.     What is fair?  What would be a fairer

2     description of what you did?

3               MR. MADEL:  I thought he described it

4     already.

5               THE WITNESS:  Operations, which we just

6     went through, which was the call center, the legal

7     collections and the strategy department.

8     BY MR. HILL:

9          Q.     Have you reviewed the fourth notice of

10    deposition that we filed in this case?

11         A.     Yes.

12         Q.     Are you prepared to answer those areas of

13    inquiry?

14         A.     Yes.

15         Q.     Were you involved in preparing the

16    responses to the plaintiff's requests for discovery,

17    interrogatories?

18               MR. MADEL:  Objection.  Vague.

19    BY MR. HILL:

20         Q.     You can answer.

21         A.     Yes.

22         Q.     Okay.  And the request for production of

23    documents, were you involved in preparing those

24    responses?

25               MR. MADEL:  Same objection.

1    BY MR. HILL:

2         Q.    And you can answer.

3              MR. MADEL:  Go ahead.

4              THE WITNESS:  Yes.

5    BY MR. HILL:

6         Q.    You can answer until he tells you not to.

7    Is that fair?

8         A.    Yes.

9         Q.    What about the responses to the request

10   for admissions?

11             MR. MADEL:  Same objection.

12             THE WITNESS:  Yes.

13             (A document was marked as Plaintiff's

14   Exhibit No. 1.)

15   BY MR. HILL:

16        Q.    Let me show you what I am going to mark

17   as Exhibit 1, Plaintiff's Exhibit 1.  This may help us

18   shortcut things a bit.  I apologize for looking over

19   glasses.  I am old and blind.  And if I don't have

20   them to look down, I just haven't gone the route of

21   bifocals yet.

22             MR. HILL:  This is an e-mail, Guys.  And

23   here is your copy.

24   BY MR. HILL:

25        Q.    And I am really just concerned with that

9

1    very top one right here.  Once you have had a chance

2    to read it, let me know, and I will ask just a couple

3    of questions about it.

4          A.      Okay.  I have read it.

5          Q.      Okay.  We were produced, in July, a

6    replacement CD disk with a database on it.  And my

7    question is about that database.  I understand that

8    the telephone numbers on that database are cell phone

9    numbers, all cell phone numbers.  Am I correct in my

10   assumption?

11               MR. MADEL:  Objection.  You are asking

12   him about a document that you are not putting in front

13   of him.

14               MR. HILL:  No.  It is not a document.  It

15   is a database.

16   BY MR. HILL:

17         Q.      Were you involved in the production of --

18               MR. MADEL:  Okay.  Well, you are asking

19   him about a database that you are not putting in front

20   of him.

21               MR. HILL:  I didn't mean to talk over

22   you.

23   BY MR. HILL:

24         Q.      Were you involved in the production of

25   the database that was given to plaintiff's counsel in

Tayloe Associates, Inc.

10

1    this case?

2         A.    No.

3         Q.    Who did that?

4         A.    Josh Cherkasly.

5              MR. HILL:  Exclude him, please, because I

6    am going to have to ask him those questions.

7              MR. MADEL:  No.  He is the corporate

8    representative.

9              MR. HILL:  Both the corporate

10   representatives?

11             MR. MADEL:  Yes.

12             MR. HILL:  Do you want to swear him now?

13   Because I can shortcut this real quickly.

14             MR. MADEL:  No.  He is not going to be

15   sworn in.  He is the corporate representative

16   attending the deposition.  We are entitled to have

17   somebody --

18             MR. HILL:  Sure.  You are.

19             MR. MADEL:  -- at PRA attend the

20   deposition.  We have a deponent that is here that is

21   going to be talking on the 30(b)(6) topics.  He has

22   already answered that he is prepared to answer on the

23   30(b)(6) topics.

24             MR. HILL:  But he just said he could not.

25             MR. MADEL:  He is a person with

11

1    knowledge.  Just because he is not the person that you

2    think you would like to ask the most of doesn't mean

3    that he doesn't satisfy the rules.  Go ahead and ask

4    your questions.

5              MR. HILL:  We will talk about that later.

6    BY MR. HILL:

7         Q.    Were you involved at all in the assembly

8    of the data that was captured on the CD that was

9    produced to us?

10             MR. MADEL:  Objection.  Ask him what

11   database and CD that you haven't put in front of him

12   and haven't authenticated.

13   BY MR. HILL:

14        Q.    Right.  Well, I tell you what, maybe we

15   will do this, maybe this will make it a little easier.

16   Have you seen any of that data that was captured on

17   the CD?

18             MR. MADEL:  Objection.  You are asking

19   him about data on a CD that you are not putting in

20   front of him.

21             MR. HILL:  I am entitled to ask him

22   anything that I would like and you can object all you

23   like and it will be duly noted.

24             MR. MADEL:  It calls for speculation.

25             MR. HILL:  It will be duly noted.  Let's

12

1    do this one.

2               (The document referred to was marked as

3    Plaintiff's Exhibit No. 2.)

4    BY MR. HILL:

5         Q.    Let me show you what I have pulled out as

6    an excerpt from a page.  How about that?  And see if

7    that helps a little bit with your lawyer's concerns.

8    Take a look at what I have marked as Number 2, and

9    let -- when you are comfortable with it, just let me

10   know.

11        A.    Okay.

12        Q.    Is that familiar to you at all?

13        A.    So this is your format and your

14   production.  You know, I don't know if it is --

15        Q.    Actually, it is yours.

16        A.    -- altered.  I don't know if it has been

17   altered.  We didn't print this page, right?

18        Q.    No.  I will represent to you I printed it

19   right out of your database.

20        A.    If you printed it out of the database,

21   then, yes.

22        Q.    Okay.  All right.  Now, let me ask you

23   these questions.  Are you familiar with the database

24   at all?

25               MR. MADEL:  Objection.  Vague.  What

1    database are you talking about?

2              MR. HILL:  The database, the one that he

3    has in front of him.

4              MR. MADEL:  This isn't a database.  This

5    is a piece of paper.

6              MR. HILL:  It is an excerpt.

7              MR. MADEL:  It is an excerpt of the

8    database --

9              MR. HILL:  This will go much more

10   quicker --

11             MR. MADEL:  -- that you are not putting

12   in front of him.  Sam, what do you want -- what do you

13   want done here?

14             MR. HILL:  I am just asking him --

15             MR. MADEL:  Do you want -- do you want

16   the database authenticated that it came from PRA?

17             MR. HILL:  No.

18             MR. MADEL:  What are you driving at?

19             MR. HILL:  I am asking him if he is

20   familiar with that piece of paper, the information

21   contained on it.

22             MR. MADEL:  He just answered that.

23   BY MR. HILL:

24        Q.    Let me ask you this.  What is your

25   familiarity with the information contained on this

1    piece of paper and the database it was taken from?

2    And I will represent to you I took it from the CD that

3    was produced to me by your lawyers.

4              MR. MADEL:  Objection.  Asked and

5    answered.

6    BY MR. HILL:

7         Q.    You can answer.

8         A.    Yes.  I am familiar.

9         Q.    And let me ask you this.  The telephone

10   numbers that are captured here on Plaintiff's

11   Exhibit 2, are those all cell phone numbers to your

12   understanding?  I am not asking you beyond that.

13             MR. MADEL:  Objection.  Object to the

14   form.  Calls for speculation.  No foundation.

15             MR. HILL:  All I want is what this

16   witness knows.

17             THE WITNESS:  It could be cell phones.

18   BY MR. HILL:

19        Q.    Do you know whether they are or not?

20        A.    Well, there is no way to definitively

21   know.  They are what we thought were cell phones.

22        Q.    That is all I need to know.  Now, with

23   regard to these accounts that are represented on this

24   page and represented on the database, as best you

25   know, Mr. Stern, are those accounts that these cell

1    phone numbers were learned through skiptracing

2    techniques?

3              MR. MADEL:   Objection.   No foundation.

4    Calls for speculation.   Question is vague.   You need

5    to define skiptracing first.

6    BY MR. HILL:

7         Q.      Skiptracing as defined by PRA.

8         A.      Where is it defined by PRA, what context?

9         Q.      In its reports to the SEC.   In its

10   reports to the FCC.

11        A.      If you want to put that in front of me, I

12   will be happy to look at it.

13        Q.      Do you understand -- what is your

14   definition of skiptracing, Mr. Stern?

15        A.      My definition of skiptracing would be

16   information obtained about the location of another

17   through a third party.

18        Q.      Were these telephone numbers captured on

19   Plaintiff's Exhibit 2 learned through skiptracing or

20   do you know?

21              MR. MADEL:   Using his definition.

22   BY MR. HILL:

23        Q.      Sure.

24        A.      Using my definition, yes.

25        Q.      That is very easy.   Going back to

16

1    Plaintiff's Exhibit 1 for just a moment.  That is the

2    e-mail.  Then, is it your understanding that

3    Ms. Robbins' e-mail that we are looking at that is

4    Exhibit 1 is correct that -- and I will read it for

5    you.  Okay.  She writes, "As indicated in PRA's

6    discovery responses, the data produced reflect PRA's

7    records of cellular telephone numbers that were skip

8    traced."  Is that correct as best you know?

9                    MR. MADEL:  Objection.  No foundation.

10   Calls for speculation.

11                   THE WITNESS:  So if we are going to use

12   the definition that I just gave you, which is

13   information obtained from a third party, this would be

14   a subset of that information.

15                   MR. MADEL:  By "this" what are you

16   referring to?

17                   THE WITNESS:  This document.  This.

18                   MR. MADEL:  Exhibit 2.

19                   THE WITNESS:  Whatever this is.

20   BY MR. HILL:

21       Q.     Right.  This page.  Plaintiff's Number 2.

22       A.     Plaintiff's 2.  So what is in Exhibit 2

23   are cell phone numbers that we got by essentially

24   going through directory assistance, calling

25   information.  We go through LexisNexis.  So these are

17

1    phone numbers that came from LexisNexis, Experian or

2    TransUnion most of the places we go to for batch skip

3    information.

4              The definition that I give you was a bit

5    more broad, it is information obtained from any third

6    party.  So what we don't have included here are phone

7    numbers that we might be given from a third party that

8    answers the phone at a number that we call.  So if I

9    call your house and your wife answers the phone and

10   she says, Here is the number to call him at, that

11   would be skiptracing information but would not be

12   contained in this subset because we don't have a way

13   to decipher that.

14        Q.     Got you.  Do you also still use the

15   Accurint system?

16        A.     Accurint is LexisNexis.

17             (A document was marked as Plaintiff's

18   Exhibit No. 3.)

19   BY MR. HILL:

20        Q.     Let me show you what I am going to mark

21   as Plaintiff's Exhibit 3.  There you go, sir.  I gave

22   you two copies.  Good.  Once you have had a chance to

23   look at that, just let me know, Mr. Stern.

24        A.     Okay.  I have looked at it.

25             MR. MADEL:  Is this three pages from a

18

1    multi-page exhibit?

2                    MR. TURNER:  Yes.

3                    MR. HILL:  It is.

4                    MR. MADEL:  So we don't have any of the

5    other additional pages of the FCC admission on behalf

6    of PRA?

7                    MR. HILL:  It is Exhibit 2 to the motion

8    for stay that was filed by PRA in this case.

9                    MR. MADEL:  But I am correct that it is

10   not a complete exhibit.

11                   MR. HILL:  It is not complete.

12                   MR. MADEL:  Is there a reason that you

13   are not providing the witness with a complete exhibit?

14                   MR. HILL:  I am only going to ask

15   questions about -- are you finished?  I am only going

16   to ask what --

17                   MR. MADEL:  No.  I wasn't finished.  You

18   keep cutting me off.  Is there a reason that you are

19   not providing the witness with a complete exhibit?

20                   MR. HILL:  Are you finished?

21                   MR. MADEL:  Yes.  I asked my question.

22                   MR. HILL:  Only going to ask a couple of

23   questions about a couple of pages.  Is that all right

24   with you?

25                   MR. MADEL:  No.  It is not.  In fact, I

19

1    would like to have --

2                    MR. HILL:  I am sorry, then.  It is my

3    deposition, Chris, and we are going to go forward the

4    way I want to go forward.  And if you keep

5    interrupting it will be much longer than it would

6    otherwise need to be.

7                    MR. MADEL:  Can I have a continuing

8    objection.

9                    MR. HILL:  Absolutely.

10                   MR. MADEL:  Great.

11                   MR. HILL:  On whatever you want.

12                   MR. MADEL:  Great.  I will take a

13   continuing objection over all questions to the form

14   and all incomplete exhibits.  Is that okay?

15                   MR. HILL:  Absolutely.

16   BY MR. HILL:

17       Q.    Take a look, if you would, Mr. Stern,

18   at -- let me ask you this, before you look at that

19   exhibit, do you have any -- let me ask it this way.

20   Approximately, what percentage of the calls made by

21   PRA are made through the Avaya dialer management

22   system?

23       A.    The vast majority.

24       Q.    95, 96, 97 percent, is that close?

25                   MR. MADEL:  Objection.  Calls for

Tayloe Associates, Inc.

20

1   speculation.

2                    THE WITNESS:  Yes.

3   BY MR. HILL:

4         Q.     In looking at that document that I have

5   put in front of you, I believe you have Page 5 of the

6   document, don't you?

7         A.     Mine says 11.

8         Q.     It goes straight to Page 11?

9                    MR. MADEL:  You would have 5 if you had a

10  complete document.

11                   MR. HILL:  Yes.  I sure would.

12  BY MR. HILL:

13        Q.     On Page 11, it says -- and I am looking

14  at that part that is highlighted -- that sentence

15  reads, "Indeed, approximately 96 percent of PRA's

16  total dialed calls are autodialed."  And I stopped

17  right there.  Is that about what you recall?

18                   MR. MADEL:  Isn't that what he just said?

19                   THE WITNESS:  Well --

20                   MR. MADEL:  Using the Avaya dialer

21  system.

22                   THE WITNESS:  Those are two different

23  things.

24                   MR. MADEL:  Okay.

25  BY MR. HILL:

21

1    Q.      How is it different?

2    A.      Well, it all depends on context.  And so,

3    you know, this deposition and what we are discussing

4    is within the context of how an autodialer is defined

5    in TCPA, which is, you know, that it has the capacity

6    to dial random or sequential numbers and store them.

7    So our dialers don't do that and don't have that

8    capacity.  So by that definition we don't own an

9    autodialer.

10    Q.      I understand.  Did you review the

11    declaration of Mr. Cherkasly?

12    A.      I did.

13    Q.      And in Paragraphs 9 and 10 of that

14    declaration, he indicates --

15    A.      I didn't memorize it.

16    Q.      I didn't, either.  I didn't, either.  He

17    indicates how the Avaya system could be reconfigured

18    to actually dial random or produce a random or

19    sequential database, doesn't he?

20              MR. MADEL:  Objection.  Document speaks

21    for itself.  He doesn't have it in front of him.

22              MR. HILL:  I am asking for his commentary

23    only.

24              MR. MADEL:  Well, he doesn't have it in

25    front of him.

22

1              MR. TURNER:  I will get it for him.

2    BY MR. HILL:

3         Q.    You can answer if you recall.

4              MR. MADEL:  Do you remember what 9 and 10

5    said?

6              THE WITNESS:  No.

7    BY MR. HILL:

8         Q.    I am not going to mark this right this

9    minute.  Well, I will.  I will go ahead and make it 4,

10   how about that, and make it a little easier for us.

11             (The document referred to was marked as

12   Plaintiff's Exhibit No. 4.)

13   BY MR. HILL:

14        Q.    Let me show you what I have marked as

15   Exhibit 4.  Look at Paragraphs 9 and 10.

16             MR. MADEL:  Have you got another copy?

17             MR. HILL:  There is one.

18             MR. MADEL:  Sorry.

19             THE WITNESS:  Okay.

20   BY MR. HILL:

21        Q.    Doesn't Paragraph 9 and 10 describe the

22   technique that would have to be adopted to make the

23   system able to create a list of random or sequential

24   numbers?

25        A.    It describes what Josh thinks would be a

23

1    proper way to go about that.  There are any number of

2    ways one could go about that.  I sent -- I sent these

3    guys an e-mail last night.  There is a product made by

4    Apple that you can buy for any Mac computer or iPad

5    and if you hold the speaker of the computer up to the

6    telephone receiver it emanates a tone from the

7    computer and that will dial the phone number so you

8    could literally convert any phone, even a rotary-dial

9    from the 1800s, into an autodialer if you held the

10   speaker from your Mac computer up to the receiver.  So

11   there is any number of ways one could go about doing

12   this.

13        Q.    Sure.  Which is more sophisticated, the

14   Avaya dialer management system or a phone?

15             MR. MADEL:  Or a what?

16             MR. HILL:  Or a telephone that he was

17   talking about.

18             THE WITNESS:  Well, the phone that I

19   described was a phone from the 1800s, what I just gave

20   you.  In that case, I would say it is a more difficult

21   question because the way -- the thing that I just

22   described was that you can dial a phone number through

23   tones played through any telephone.  And so anywhere

24   you get a dial tone, you have that capability.  So in

25   terms of getting a phone number dialled, I don't know

24

1    that one is more advanced than the other.

2                    The thing that is unique about the Avaya

3    dialer is that allows you to program other

4    restrictions.  So, for example, we don't want to call

5    people before 8 o'clock in the morning so we can

6    program the dialer to not allow those calls to be

7    made.  In that respect, the dialer is more

8    sophisticated.

9    BY MR. HILL:

10        Q.      Okay.  Fair enough.  Does PRA also use

11   recorded messages?

12        A.      We do.

13        Q.      Any notion of what percentages of the

14   calls, the outbound calls, that PRA makes use those

15   types of messages?

16        A.      I don't -- I don't know that number off

17   the top of my head.

18        Q.      Is it less than -- would that be a subset

19   of the number of calls that are autodialed?

20        A.      So if we are going to say the word

21   "autodialed" we are going to go round and round in

22   this circle.

23        Q.      That are dialed by the Avaya dialer

24   management system, is that better?

25        A.      That will be much better.

25

1    Q.    Help me out, Mr. Stern.

2    A.    That will save us about two hours today.

3    Q.    Thank you, sir.

4    A.    So I can tell you it is less than

5    75 percent if that is helpful.

6    Q.    I am trying to get my hands around what

7    we are talking about.  Thank you, sir.

8    A.    So we won't leave an automated message

9    when we are calling a cell phone and about 25 percent

10   of our calls is a cell phone.

11   Q.    Let me ask you -- let me ask it this way.

12   Of what relevance, Mr. Stern, is the age of the

13   consumer receivable that PRA is buying in a portfolio?

14            MR. MADEL:  Objection.  Vague.

15            THE WITNESS:  I wouldn't even know.  I am

16   not sure I am following you.

17   BY MR. HILL:

18   Q.    Let me ask you this.  Is the age of a

19   consumer receivable in a portfolio relevant to the

20   price that PRA pays for that receivable portfolio?

21   A.    It could be.  I mean, it is one of

22   literally thousands of variables.  In isolation, any

23   one variable means nothing.

24   Q.    I am going to -- I am going to show you

25   what I am going to mark as Plaintiff's Number 5.

1          (The document referred to was marked as

2     Plaintiff's Exhibit No. 5.)

3     BY MR. HILL:

4          Q.    Plaintiff's Number 5.  You read -- are

5     you familiar with what I marked as Plaintiff's

6     Number 5?

7          A.    Yes, sir.

8               MR. MADEL:  Another incomplete exhibit.

9     BY MR. HILL:

10         Q.    It is.  It shows up as Page 8, I believe.

11         A.    That is also cut off on this side.

12         Q.    It is.  It carries over to the next page

13    unfortunately.  What is that?

14         A.    It looks like part of a page from part of

15    our 10-K filing.

16         Q.    What is a 10-K?

17         A.    It is a filing with the Securities and

18    Exchange Commission.

19         Q.    And it is signed under requirements of

20    the Sarbanes-Oxley Act, is that right?

21              MR. MADEL:  Object to form.  No

22    foundation.  Speculation.  I don't think he can be

23    established as a lawyer or a Sarbanes-Oxley --

24    BY MR. HILL:

25         Q.    No.  I am not.  Let me ask you this, Mr.

1    Stern.  Did you actually sign this 10-K?

2         A.      I did.

3         Q.      Do you have any understanding as to the

4    requirements of the Sarbanes-Oxley Act with regard to

5    this document?

6         A.      I do.

7         Q.      Did you sign it pursuant to the

8    requirements of Sarbanes-Oxley?

9         A.      Yes.

10        Q.      In signing this document, do you recall

11   the language that I have pulled out on Page 8 there

12   that is highlighted?  And I will read it, just that

13   paragraph that -- that is the fourth paragraph that

14   says -- I will read the first sentence -- "The age of

15   a defaulted consumer receivables portfolio (the time

16   since an account has been charged-off) is an important

17   factor in determining the price at which we will

18   purchase the portfolio."

19             First question.  Did I read that

20   correctly?

21        A.      Yes.

22        Q.      Is that true?

23        A.      That you read it correctly?  Yes.

24        Q.      Is the statement that is contained that I

25   read true?

```
1          A.      Yes.

2          Q.      Age is an important factor?

3          A.      Yes.

4          Q.      Is it also true that in its due

5   diligence -- and that is -- in reviewing a portfolio

6   to purchase, for example, PRA would want to know the

7   age of the portfolio, the receivables in the

8   portfolio, correct?

9                  MR. MADEL:   Talking about portfolio debt.

10  BY MR. HILL:

11         Q.      Debt.  Yes.  A receivables portfolio.

12  PRA would want to know the age of that debt?

13         A.      Yes.

14         Q.      So PRA has a way of learning the age of

15  the receivables in that portfolio, right?

16         A.      Yes.

17         Q.      Okay.  It is in -- it is in your business

18  documents?

19                 MR. MADEL:   What is in your business

20  documents?

21  BY MR. HILL:

22         Q.      The age of the receivables in that

23  portfolio.

24         A.      It is in some.

25         Q.      Okay.  That is what I need.  I am
```

29

1    learning how your business works, Mr. Stern.

2          A.      I am sorry to hear that.

3          Q.      You didn't hear me say, You really are.

4    In response to Interrogatory Number 2 or 3 -- I am

5    going to have to look it up.  I can't tell you from

6    memory.

7          A.      Me, neither.

8          Q.      I just can't do it.  In response to

9    Interrogatory Number 2 -- and since neither one of us

10   can remember I might just read it to you.  How about

11   that?

12         A.      Good.

13         Q.      Interrogatory Number 2.

14               MR. MADEL:  Do you need some water?

15               THE WITNESS:  I will need some more

16   coffee.

17               MR. TURNER:  Give me a second.

18               MR. ZAHN:  I will get it.  Just keep

19   going.

20               MR. TURNER:  You want Number 2.  I don't

21   have Number 2.  Sorry.

22               MR. HILL:  This is quick enough.

23   BY MR. HILL:

24         Q.      Interrogatory Number 2.  And I will read

25   it so we don't have to worry about my paraphrasing.

1    How about that?   Interrogatory Number 2 asks, "For

2    each person you listed in response to Interrogatory

3    Number 1, identify those persons for which you contend

4    that you had received such persons' prior expressed

5    consent to place a nonemergency telephone call to

6    their cellular telephone through the use of an ATDS

7    predicted dialer or artificial or prerecorded voice."

8    That was the question.

9              PRA objected for various reasons and then

10   said, "It has" -- I am reading from the response.  "It

11   has insufficient knowledge or information to respond

12   to this interrogatory and asserts that it has made a

13   reasonable and good-faith effort to obtain the

14   information but that this information is likely in the

15   possession of third parties and can only be obtained

16   through third-party discovery."  And that is the end

17   of the quote.

18              This is my question after hearing the

19   answer and the question and the response.

20              MR. MADEL:  Not a complete response but

21   go on.

22              MR. HILL:  Admitted.

23   BY MR. HILL:

24        Q.    What efforts has PRA made to undertake

25   discovery from third parties to learn this

31

1      information, if any?

2                      MR. MADEL:   Learn what information?

3      BY MR. HILL:

4          Q.      That is referred to in response to

5      Interrogatory Number 2.

6                      MR. MADEL:   Object to the form.

7                      THE WITNESS:   We have thought about it.

8      BY MR. HILL:

9          Q.      Okay.   Have you done it?

10         A.      Well, it is not possible to do but we

11     certainly tried to conceive of ways to do it.

12         Q.      And that would be the same response with

13     regard to Interrogatory Number 3 where the response

14     again --

15                     MR. MADEL:   You are not putting the

16     document in front of him.

17                     MR. HILL:   No.   I am not.   I am not.

18                     MR. MADEL:   It is impossible for him to

19     answer questions of off a document that you are not

20     putting in front of him.

21                     THE WITNESS:   Maybe I can just help you

22     out and tell you what the thought process was and then

23     we can --

24     BY MR. HILL:

25         Q.      Sure.   Just tell me the process.   That is

1     the better thing.

2          A.      -- go from there.  Is that okay?

3                  MR. MADEL:  Go ahead.

4     BY MR. HILL:

5          Q.      That is the better thing.

6          A.      We buy from a number of different

7     sellers, literally thousands of different sellers, and

8     each of those sellers has different terms and

9     conditions associated with all of their products and

10    all of those sellers have multiple products.  We might

11    have a, you know, a regular card, a platinum card, a

12    gold card.  You have all of the different sellers.

13    You have terms and conditions across a great many

14    portfolios.

15                 Within those terms and conditions,

16    permission to call a cell phone is often part of the

17    terms and conditions.  To calculate whether or not

18    each consumer would have given that consent in their

19    original application would require us to go back and

20    get all of those original documents and go through a

21    very complicated matrix across all of the portfolios

22    and all of the products and all of the different terms

23    and conditions associated with those products to come

24    to that conclusion.

25          Q.      Mr. Stern, what you are saying in that,

33

1    if I hear you right, and tell me if I am wrong, I want

2    to hear you right, PRA doesn't have those documents,

3    they are in the possession of somebody else?

4         A.    We have some of those documents.

5         Q.    What percentage?

6         A.    I don't know the answer to that question.

7    I can help you out again if you want it.

8         Q.    Help me out.  Help me out.  He is having

9    a heart attack but go ahead.

10             MR. MADEL:  No.  I am not.  My heart is

11    pretty good, actually.

12             THE WITNESS:  So we have the rights to go

13    obtain documents from sellers, generally speaking,

14    when we acquire a portfolio.  For the vast, vast, vast

15    majority of accounts, that documentation is not

16    necessary.  When we have an account that is disputed,

17    when we are forced to file a lawsuit to try and

18    collect the account, we then will make arrangements to

19    obtain those documents.

20             MR. HILL:  One second.  I want to ask

21    him.  Be right back.

22             MR. MADEL:  Sure.

23             (Recess taken.)

24    BY MR. HILL:

25         Q.    Let me go back to one thing.  And I do

34

1    apologize for being repetitive.  But I want to ask

2    your understanding of the telephone numbers that were

3    captured in Exhibit 2, I believe it is, were obtained

4    through skiptracing techniques undertaken by PRA, is

5    that right?  That.

6            A.      Yes.

7                    MR. HILL:  I am done.  Thank you.  Have

8    you got any questions?

9                    MR. MADEL:  No.  None.  We will read and

10   sign.

11                   MR. HILL:  Chris, otherwise, usual

12   stipulations.

13                   MR. MADEL:  Yes.

14                   (The proceedings were concluded at

15   9:34 a.m.)

16

17

18

19

20

21

22

23

24

25

35

1                    C E R T I F I C A T E

2

3              I, the undersigned, NEAL STERN, do

4    hereby certify that I have read the foregoing

5    deposition and that, to the best of my knowledge,

6    said deposition is true and accurate (with the

7    exception of the following corrections listed

8    below):

9    Page          Line        Correction

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

1                  C E R T I F I C A T E  (Continued)

2

3        Page            Line        Correction

4

5

6

7

8

9

10

11      _____        _____

12           Date                        Signature

13

14

15      STATE OF:_____)

16      CITY OF:_____)   To wit:

17

18

19                  Subscribed and sworn to before me this

20      _____ day of _____, 2011 at

21      _____, _____.

22                              _____

23                              Notary Public

24

25      My commission expires:  _____

1   COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

2        I, Rebecca L. Braley, RMR, a Notary Public for

3   the Commonwealth of Virginia at Large, of

4   qualification in the Circuit Court of the City of

5   Virginia Beach, Virginia, and whose commission expires

6   April 30, 2015, do hereby certify that the within

7   deponent, NEAL STERN, appeared before me at Norfolk,

8   Virginia, as hereinbefore set forth; and after being

9   first duly sworn by me, was thereupon examined upon

10  his oath by counsel; that his examination was recorded

11  in Stenotype by me and reduced to typescript under my

12  direction; and that the foregoing transcript

13  constitutes a true, accurate, and complete transcript.

14       I further certify that I am not related to nor

15  otherwise associated with any party or counsel to this

16  proceeding, nor otherwise interested in the event

17  thereof.

18       Given under my hand and notarial seal at

19  Norfolk, Virginia, this _____ day of _____,

20  2011.

21

22                    _____

23                    Rebecca L. Braley, RMR

24                    Commissioned as Rebecca L. Banks

25                    Notary Public, 7097551

Tayloe Associates, Inc.

1

## A

able 22:23
absolutely 19:9,15
account 27:16
  33:16,18
accounts 14:23,25
  33:15
accurate 35:6
  37:13
accurint 17:15,16
acquire 33:14
acquisition 6:24
act 26:20 27:4
action 1:7 5:12
additional 18:5
administration
  5:10,13
admission 18:5
admissions 8:10
admitted 30:22
adopted 22:22
advanced 24:1
age 25:12,18 27:14
  28:2,7,12,14,22
ahead 8:3 11:3 22:9
  32:3 33:9
alabama 2:6
allow 24:6
allows 24:3
altered 12:16,17
answer 4:23 7:12
  7:20 8:2,6 10:22
  14:7 22:3 30:19
  31:19 33:6
answered 10:22
  13:22 14:5
answers 17:8,9
apologize 8:18 34:1
appearances 2:1
appeared 37:7
apple 23:4
application 32:19
apply 5:4
approximately
  19:20 20:15
april 37:6
areas 7:12
arrangements

33:18
artificial 30:7
asked 14:4 18:21
asking 9:11,18
  11:18 13:14,19
  14:12 21:22
asks 30:1
assembly 11:7
asserts 30:12
assistance 16:24
associated 32:9,23
  37:15
associates 1:11,16
  1:22 2:21 4:2,6,16
  4:18
assumption 9:10
atds 30:6
atlanta 1:3
attack 33:9
attend 10:19
attendance 6:1
attending 10:16
august 1:19 4:5
authenticated
  11:12 13:16
autodialed 20:16
  24:19,21
autodialer 21:4,9
  23:9
automated 25:8
automobile 5:8
avaya 19:21 20:20
  21:17 23:14 24:2
  24:23
avenue 2:10,17

## B

b 1:15 4:1 10:21,23
back 15:25 32:19
  33:21,25
banks 37:24
bartlett 1:5
batch 17:2
beach 37:5
beginning 6:14
behalf 1:5,17 2:2
  2:13 3:3 4:2 18:5
believe 20:5 26:10

34:3
best 14:24 16:8
  35:5
better 24:24,25
  32:1,5
beyond 14:12
bifocals 8:21
big 5:16
bit 8:18 12:7 17:4
blind 8:19
boulevard 2:22
braley 4:3 37:2,23
broad 17:5
business 28:17,19
  29:1
bute 4:7
buy 23:4 32:6
buying 25:13

## C

c 35:1,1 36:1,1
calculate 32:17
call 5:2 6:10 7:6
  17:8,9,10 24:4
  30:5 32:16
called 4:8 5:14
calling 16:24 25:9
calls 11:24 14:14
  15:4 16:10 19:20
  19:25 20:16 24:6
  24:14,14,19 25:10
cant 29:5,8
capability 23:24
capacity 21:5,8
captured 11:8,16
  14:10 15:18 34:3
card 32:11,11,12
carries 26:12
case 7:10 10:1 18:8
  23:20
ccb 5:14
cd 9:6 11:8,11,17
  11:19 14:2
cell 9:8,9 14:11,17
  14:21,25 16:23
  25:9,10 30:6
cellular 16:7 30:6
center 7:6

centers 5:2
certainly 31:11
certify 35:4 37:6,14
chance 9:1 17:22
chargedoff 27:16
cherkasly 2:25 10:4
  21:11
chief 4:20 6:16
chris 19:3 34:11
christopher 2:14
circle 24:22
circuit 37:4
ciresi 2:16
city 36:16 37:4
civil 1:7
claim 5:10,12
claims 5:10
class 5:12
classaction 5:9
close 19:24
coffee 29:16
collect 33:18
collection 5:4
collections 5:3 7:7
come 32:23
comfortable 12:9
commencing 4:5
commentary 21:22
commission 26:18
  36:25 37:5
commissioned
  37:24
commonwealth 4:4
  37:1,3
communications
  6:3
companies 5:6,11
company 5:6,13,21
complete 18:10,11
  18:13,19 20:10
  30:20 37:13
complicated 32:21
computer 23:4,5,7
  23:10
conceive 31:11
concerned 8:25
concerns 12:7
concluded 34:14

conclusion 32:24
conditions 32:9,13
  32:15,17,23
consent 30:5 32:18
constitutes 37:13
consumer 25:13,19
  27:15 32:18
contained 13:21,25
  17:12 27:24
contend 30:3
context 15:8 21:2,4
continued 36:1
continuing 19:7,13
convert 23:8
coo 4:21,25 5:19
copies 17:22
copy 8:23 22:16
corporate 2:22
  10:7,9,15
correct 9:9 16:4,8
  18:9 28:8
correction 35:9
  36:3
corrections 35:7
correctly 27:20,23
counsel 9:25 37:10
  37:15
couple 9:2 18:22,23
court 1:1 37:4
create 22:23
cut 26:11
cutting 18:18

## D

d 3:1
data 11:8,16,19
  16:6
database 9:6,7,8,15
  9:19,25 11:11
  12:19,20,23 13:1
  13:2,4,8,16 14:1
  14:24 21:19
date 36:12
day 4:5 5:1 36:20
  37:19
de 2:10
debater 6:4
debt 28:9,11,12

2

decatur 2:11
decide 5:4
decipher 17:13
declaration 3:15
21:11,14
defaulted 27:15
defendant 1:12
2:13
define 15:5
defined 15:7,8 21:4
definition 15:14,15
15:21,24 16:12
17:4 21:8
definitively 14:20
department 5:4 7:7
depends 21:2
deponent 10:20
37:7
deposition 1:15 4:1
7:10 10:16,20
19:3 21:3 35:5,6
describe 22:21
described 7:3 23:19
23:22
describes 22:25
description 3:11
7:2
determining 27:17
dial 21:6,18 23:7,22
23:24
dialed 20:16 24:23
dialer 19:21 20:20
23:14 24:3,6,7,23
30:7
dialers 21:7
dialled 23:25
didnt 9:21 12:17
21:15,16,16 29:3
different 20:22
21:1 32:6,7,8,12
32:22
difficult 23:20
diligence 28:5
direction 37:12
directory 16:24
discovery 7:16 16:6
30:16,25
discussing 21:3

disk 9:6
disputed 33:16
district 1:1,2
division 1:3
document 8:13
9:12,14 12:2
16:17 17:17 20:4
20:6,10 21:20
22:11 26:1 27:5
27:10 31:16,19
documentation
33:15
documents 7:23
28:18,20 32:20
33:2,4,13,19
doesnt 11:2,3 21:19
21:21,24 22:21
33:2
doing 23:11
dont 8:19 12:14,16
17:6,12 18:4 20:6
21:7,7,8 23:25
24:4,16,16 26:22
29:20,25 33:6
driving 13:18
due 28:4
duly 4:9 11:23,25
37:9

E
e 3:1 35:1,1 36:1,1
easier 11:15 22:10
east 2:5
easy 15:25
effort 30:13
efforts 30:24
either 21:16,16
email 3:12 8:22
16:2,3 23:3
emanates 23:6
employment 6:10
enhancement 5:7
entitled 10:16
11:21
esquire 2:3,8,14,15
2:20
essentially 16:23
established 26:23

event 37:16
examination 1:15
3:3 4:1,11 37:10
examined 4:9 37:9
example 24:4 28:6
exception 35:7
excerpt 12:6 13:6,7
exchange 26:18
exclude 10:5
executive 4:19,25
exhibit 3:14 8:14
8:17,17 12:3
14:11 15:19 16:1
16:4,18,22 17:18
17:21 18:1,7,10
18:13,19 19:19
22:12,15 26:2,8
34:3
exhibits 3:10 19:14
experian 17:1
expires 36:25 37:5
expressed 30:4

F
f 35:1 36:1
fact 18:25
factor 27:17 28:2
fair 6:23 7:1 8:7
24:10
fairer 7:1
familiar 12:12,23
13:20 14:8 26:5
familiarity 13:25
fault 6:5
fcc 15:10 18:5
file 33:17
filed 7:10 18:8
filing 5:10 26:15,17
finished 18:15,17
18:20
first 4:9 15:5 27:14
27:19 37:9
following 25:16
35:7
follows 4:10
forced 33:17
foregoing 35:4
37:12

form 3:16 14:14
19:13 26:21 31:6
format 12:13
forth 37:8
forward 19:3,4
foundation 14:14
15:3 16:9 26:22
fourth 7:9 27:13
front 9:12,19 11:11
11:20 13:3,12
15:11 20:5 21:21
21:25 31:16,20
further 37:14

G
generally 33:13
georgia 1:2 2:11
getting 23:25
give 5:17 17:4
29:17
given 9:25 17:7
32:18 37:18
glasses 8:19
go 5:22 8:3 11:3
13:9 16:25 17:2
17:21 19:3,4 22:9
23:1,2,11 24:21
30:21 32:2,3,19
32:20 33:9,12,25
goes 20:8
going 8:16 10:6,14
10:21 15:25 16:11
16:24 17:20 18:14
18:15,22 19:3
22:8 24:20,21
25:24,24,25 29:5
29:19
gold 32:12
good 6:11 17:22
29:12 33:11
goodfaith 30:13
government 5:7
grader 6:4
graduate 5:24,25
great 19:10,12
32:13
guys 8:22 23:3

H
hand 37:18
hands 25:6
happy 15:12
havent 8:20 11:11
11:12
head 4:22 24:17
hear 29:2,3 33:1,2
heard 5:15
hearing 30:18
heart 33:9,10
held 23:9
help 8:17 25:1
31:21 33:7,8,8
helpful 25:5
helps 12:7
henry 2:8
hereinbefore 37:8
highlighted 20:14
27:12
hill 2:3,4 3:4 4:12
7:8,19 8:1,5,15,22
8:24 9:14,16,21
9:23 10:5,9,12,18
10:24 11:5,6,13
11:21,25 12:4
13:2,6,9,14,17,19
13:23 14:6,15,18
15:6,22 16:20
17:19 18:3,7,11
18:14,20,22 19:2
19:9,11,15,16
20:3,11,12,25
21:22 22:2,7,13
22:17,20 23:16
24:9 25:17 26:3,9
26:24 28:10,21
29:22,23 30:22,23
31:3,8,17,24 32:4
33:20,24 34:7,11
hold 23:5
hoover 2:6
hours 25:2
house 17:9

I
identify 30:3
important 27:16

3

28:2
**impossible** 31:18
**included** 17:6
**incomplete** 19:14
26:8
**incorporated** 4:7
**indicated** 16:5
**indicates** 21:14,17
**information** 13:20
13:25 15:16 16:13
16:14,25 17:3,5
17:11 30:11,14,14
31:1,2
**inquiry** 7:13
**insufficient** 30:11
**interested** 37:16
**interrogatories**
7:17
**interrogatory** 29:4
29:9,13,24 30:1,2
30:12 31:5,13
**interrupting** 19:5
**involved** 7:15,23
9:17,24 11:7
**ipad** 23:4
**isnt** 13:4 20:18
**isolation** 25:22

**J**

**january** 6:13
**jennifer** 2:15 3:15
**josh** 2:25 10:4
22:25
**july** 9:5

**K**

**kaplan** 2:16
**keep** 18:18 19:4
29:18
**kim** 1:5
**know** 9:2 12:10,14
12:14,16 14:19,21
14:22,25 15:20
16:8 17:23 21:3,5
23:25 24:16 25:15
28:6,12 32:11
33:6
**knowledge** 11:1

30:11 35:5
**knows** 14:16

**L**

**l** 4:3 37:2,23,24
**language** 27:11
**large** 4:4 37:1,3
**lasalle** 2:17,17
**law** 2:4,9
**lawsuit** 33:17
**lawyer** 26:23
**lawyers** 12:7 14:3
**learn** 30:25 31:2
**learned** 15:1,19
**learning** 28:14 29:1
**leave** 25:8
**legal** 5:3 7:6
**leon** 2:10
**lexisnexis** 16:25
17:1,16
**line** 35:9 36:3
**list** 22:23
**listed** 30:2 35:7
**literally** 23:8 25:22
32:7
**litigation** 5:17
**little** 11:15 12:7
22:10
**llc** 2:4,9
**llp** 2:16
**location** 5:8 15:16
**long** 6:9
**longer** 19:5
**look** 8:20 12:8
15:12 17:23 19:17
19:18 22:15 29:5
**looked** 17:24
**looking** 8:18 16:3
20:4,13
**looks** 26:14
**loud** 4:23

**M**

**m** 2:3,15 4:5 34:15
**mac** 23:4,10
**madel** 2:14 7:3,18
7:25 8:3,11 9:11
9:18 10:7,11,14

10:19,25 11:10,18
11:24 12:25 13:4
13:7,11,15,18,22
14:4,13 15:3,21
16:9,15,18 17:25
18:4,9,12,17,21
18:25 19:7,10,12
19:25 20:9,18,20
20:24 21:20,24
22:4,16,18 23:15
25:14 26:8,21
28:9,19 29:14
30:20 31:2,6,15
31:18 32:3 33:10
33:22 34:9,13
**majority** 19:23
33:15
**management** 19:21
23:14 24:24
**mark** 8:16 17:20
22:8 25:25
**marked** 8:13 12:2,8
17:17 22:11,14
26:1,5
**marketing** 5:18,20
**matrix** 32:21
**mean** 9:21 11:2
25:21
**meaning** 6:20,21
**means** 25:23
**memorize** 21:15
**memory** 29:6
**message** 25:8
**messages** 24:11,15
**miller** 2:16
**mine** 20:7
**minneapolis** 2:18
**minnesota** 2:18
5:23
**minute** 22:9
**moment** 16:1
**morning** 24:5
**motion** 18:7
**multipage** 18:1
**multiple** 32:10

**N**

**n** 3:1

**name** 4:13
**neal** 3:4 4:8,14 35:3
37:7
**necessary** 33:16
**need** 14:22 15:4
19:6 28:25 29:14
29:15
**neither** 29:7,9
**night** 23:3
**nodding** 4:22
**nonemergency**
30:5
**norfolk** 1:18,25
2:23 4:7 37:7,19
**northern** 1:2
**notarial** 37:18
**notary** 4:3 36:23
37:2,25
**noted** 11:23,25
**notice** 7:9
**notion** 24:13
**number** 3:13 12:8
16:21 17:8,10
23:1,7,11,22,25
24:16,19 25:25
26:4,6 29:4,9,13
29:20,21,24 30:1
30:3 31:5,13 32:6
**numbers** 9:8,9,9
14:10,11 15:1,18
16:7,23 17:1,7
21:6 22:24 34:2

**O**

**oath** 37:10
**object** 11:22 14:13
26:21 31:6
**objected** 30:9
**objection** 7:18,25
8:11 9:11 11:10
11:18 12:25 14:4
14:13 15:3 16:9
19:8,13,25 21:20
25:14
**obtain** 30:13 33:13
33:19
**obtained** 15:16
16:13 17:5 30:15

34:3
**oclock** 24:5
**officer** 4:20 6:16
**offices** 2:4,9 4:6
**okay** 6:10 7:22 9:4
9:5,18 12:11,22
16:5 17:24 19:14
20:24 22:19 24:10
28:17,25 31:9
32:2
**old** 8:19
**once** 9:1 17:22
**operating** 4:20 6:16
**operations** 4:20 5:1
5:5 6:21 7:5
**oral** 1:15 4:1
**original** 32:19,20
**outbound** 24:14
**oversee** 5:2,2,3,5
**owned** 6:16,18

**P**

**page** 3:3,11 12:6,17
14:24 16:21 20:5
20:8,13 26:10,12
26:14 27:11 35:9
36:3
**pages** 17:25 18:5
18:23
**paper** 13:5,20 14:1
**paragraph** 22:21
27:13,13
**paragraphs** 21:13
22:15
**paraphrasing**
29:25
**parkway** 2:5
**part** 20:14 26:14,14
32:16
**parties** 30:15,25
**party** 15:17 16:13
17:6,7 37:15
**pays** 25:20
**people** 24:5
**percent** 19:24
20:15 25:5,9
**percentage** 19:20
33:5

4

percentages 24:13
permission 32:16
person 10:25 11:1
  30:2
persons 30:3,4
phone 3:13 9:8,9
  14:11 15:1 16:23
  17:1,6,8,9 23:7,8
  23:14,18,19,22,25
  25:9,10 32:16
phones 14:17,21
piece 13:5,20 14:1
place 30:5
places 17:2
plaintiff 1:8,17 2:2
  3:3 4:3
plaintiffs 7:16 8:13
  8:17 9:25 12:3
  14:10 15:19 16:1
  16:21,22 17:17,21
  22:12 25:25 26:2
  26:4,5
platinum 32:11
played 23:23
plaza 2:17
please 4:13 10:5
ponce 2:10
portfolio 1:10,16
  2:21 4:2,16,17
  25:13,19,20 27:15
  27:18 28:5,7,8,9
  28:11,15,23 33:14
portfolios 6:17,18
  6:22,24 32:14,21
possession 30:15
  33:3
possible 31:10
pra 6:10,12 10:19
  13:16 15:7,8 18:6
  18:8 19:21 24:10
  24:14 25:13,20
  28:6,12,14 30:9
  30:24 33:2 34:4
pras 16:5,6 20:15
predicted 30:7
prepared 7:12
  10:22
preparing 7:15,23

prerecorded 30:7
present 2:25
pretty 33:11
price 25:20 27:17
print 12:17
printed 12:18,20
prior 30:4
proceeding 37:16
proceedings 34:14
process 31:22,25
produce 21:18
produced 9:5 11:9
  14:3 16:6
product 23:3
production 7:22
  9:17,24 12:14
products 32:9,10
  32:22,23
professional 1:23
program 24:3,6
proper 23:1
providing 18:13,19
public 4:4 36:23
  37:2,25
pulled 12:5 27:11
purchase 27:18
  28:6
pursuant 27:7
put 11:11 15:11
  20:5
putting 9:12,19
  11:19 13:11 31:15
  31:20

Q
qualification 37:4
question 9:7 15:4
  18:21 23:21 27:19
  30:8,18,19 33:6
questions 9:3 10:6
  11:4 12:23 18:15
  18:23 19:13 31:19
  34:8
quick 29:22
quicker 13:10
quickly 10:13
quote 30:17

R
r 2:20 35:1 36:1
random 21:6,18,18
  22:23
read 9:2,4 16:4
  26:4 27:12,14,19
  27:23,25 29:10,24
  34:9 35:4
reading 30:10
reads 20:15
real 10:13
really 8:25 29:3
reason 18:12,18
reasonable 30:13
reasons 30:9
rebecca 4:3 37:2,23
  37:24
recall 20:17 22:3
  27:10
receivable 25:13,19
  25:20
receivables 27:15
  28:7,11,15,22
received 30:4
receiver 23:6,10
recess 33:23
reconfigured 21:17
recorded 24:11
  37:10
records 16:7
recovery 1:10,16
  2:21 4:2,16,17
reduced 37:11
referred 12:2 22:11
  26:1 31:4
referring 16:16
reflect 16:6
regard 14:23 27:4
  31:13
registered 1:23
regular 32:11
related 37:14
relevance 25:12
relevant 25:19
remember 22:4
  29:10
repetitive 34:1
replacement 9:6

reporters 1:23
reports 15:9,10
represent 12:18
  14:2
representative 10:8
  10:15
representatives
  10:10
represented 14:23
  14:24
request 7:22 8:9
requests 7:16
require 32:19
requirements
  26:19 27:4,8
respect 24:7
respond 30:11
response 29:4,8
  30:2,10,19,20
  31:4,12,13
responses 7:16,24
  8:9 16:6
restrictions 24:4
revenue 5:7
review 21:10
reviewed 7:9
reviewing 28:5
right 6:7,8 9:1
  11:14 12:17,19,22
  16:21 18:23 20:17
  22:8 26:20 28:15
  33:1,2,21 34:5
rights 33:12
ring 5:17
riverchase 2:5
rmr 4:3 37:2,23
robbins 2:15 3:12
  3:15 16:3
robins 2:16
rotarydial 23:8
round 24:21,21
route 8:20
rules 11:3

S
sam 2:4 13:12
samuel 2:3
sarbanesoxley

26:20,23 27:4,8
satisfy 11:3
save 25:2
saying 32:25
says 17:10 20:7,13
  27:14
school 5:22
seal 37:18
sec 15:9
second 29:17 33:20
securities 5:10,16
  26:17
see 12:6
seen 11:16
sell 5:20
sellers 32:7,7,8,10
  32:12 33:13
sent 23:2,2
sentence 20:14
  27:14
sequential 21:6,19
  22:23
services 5:8
set 37:8
shortcut 8:18 10:13
show 8:16 12:5
  17:20 22:14 25:24
shows 26:10
side 26:11
sign 27:1,7 34:10
signature 36:12
signed 26:19
signing 27:10
similarly 1:7
sir 17:21 25:3,7
  26:7
situated 1:7
skip 16:7 17:2
skiptracing 15:1,5
  15:7,14,15,19
  17:11 34:4
somebody 10:17
  33:3
sophisticated 23:13
  24:8
sorry 19:2 22:18
  29:2,21
sounds 6:8

speaker 23:5,10
speaking 33:13
speaks 21:20
speculation 11:24
    14:14 15:4 16:10
    20:1 26:22
speech 6:3
spreadsheet 3:13
start 6:9
state 4:13 36:15
statement 27:24
states 1:1
stay 18:8
stenotype 37:11
stern 3:4 4:8,14,15
    5:22 14:25 15:14
    17:23 19:17 25:1
    25:12 27:1 29:1
    32:25 35:3 37:7
steven 2:20
stipulations 34:12
stock 5:21
stopped 20:16
store 21:6
straight 20:8
strategy 5:3 7:7
street 4:7
study 6:2
subscribed 36:19
subset 16:14 17:12
    24:18
subsidiary 5:6,6,8
    5:9
suite 2:5,10
summary 6:23
supervise 6:24
sure 4:14 10:18
    15:23 20:11 23:13
    25:16 31:25 33:22
surrounding 6:21
swear 10:12
sworn 4:9 10:15
    36:19 37:9
system 17:15 19:22
    20:21 21:17 22:23
    23:14 24:24

                T

t 35:1,1 36:1,1
take 12:8 19:12,17
taken 1:17 4:2 14:1
    33:23
talk 9:21 11:5
talking 10:21 13:1
    23:17 25:7 28:9
tayloe 1:22 4:6
tcpa 21:5
technique 22:22
techniques 15:2
    34:4
telephone 1:24 9:8
    14:9 15:18 16:7
    23:6,16,23 30:5,6
    34:2
tell 11:14 25:4 29:5
    31:22,25 33:1
tells 8:6
terms 23:25 32:8
    32:13,15,17,22
testified 4:9
thank 25:3,7 34:7
thereof 37:17
thing 23:21 24:2
    32:1,5 33:25
things 8:18 20:23
think 11:2 26:22
thinks 22:25
third 15:17 16:13
    17:5,7 30:15,25
thirdparty 30:16
thought 5:15 7:3
    14:21 31:7,22
thousands 25:22
    32:7
three 17:25
time 27:15
title 6:15
today 25:2
tone 23:6,24
tones 23:23
top 9:1 24:17
topics 10:21,23
total 20:16
traced 16:8
transcript 37:12,13
transunion 17:2

treatment 5:5
tried 31:11
true 27:22,25 28:4
    35:6 37:13
try 33:17
trying 25:6
turner 2:8,9 18:2
    22:1 29:17,20
two 17:22 20:22
    25:2
types 24:15
typescript 37:11

                U

undersigned 35:3
understand 9:7
    15:13 21:10
understanding
    14:12 16:2 27:3
    34:2
undertake 30:24
undertaken 34:4
unfortunately
    26:13
unique 24:2
united 1:1
university 5:23
use 16:11 17:14
    24:10,14 30:6
usual 34:11

                V

v 1:9
vague 7:18 12:25
    15:4 25:14
variable 25:23
variables 25:22
various 30:9
vast 19:23 33:14,14
    33:14
vicepresident 4:19
    4:25
virginia 1:18,25
    2:23 4:4,7 37:1,3
    37:5,5,8,19
voice 30:7

                W

w 2:10
want 10:12 13:12
    13:13,15,15 14:15
    15:11 19:4,11
    24:4 28:6,12
    29:20 33:1,7,20
    34:1
wasnt 18:17
water 29:14
way 14:20 17:12
    19:4,19 23:1,21
    25:11 28:14
ways 23:2,11 31:11
went 6:15 7:6
west 4:7
wife 17:9
wifes 6:5
wit 36:16 37:1
witness 3:2 4:8,22
    7:5 8:4,12 14:16
    14:17 16:11,17,19
    18:13,19 20:2,19
    20:22 22:6,19
    23:18 25:15 29:15
    31:7,21 33:12
wont 25:8
word 24:20
work 4:15 6:15
works 29:1
worry 29:25
wouldnt 25:15
writes 16:5
wrong 33:1

                X

x 3:1

                Y

year 6:1

                Z

zahn 2:20 29:18

                0

00 4:5

                1

1 1:8 3:12 8:14,17
    8:17 16:1,4 30:3

10 1:19 21:13 22:4
    22:15,21
10k 3:16 26:15,16
    27:1
10th 4:5
11 3:12 20:7,8,13
11cv0624jof 1:8
12 3:13
140 2:22
17 3:14
1800s 23:9,19

                2

2 3:13,14 12:3,8
    14:11 15:19 16:18
    16:21,22,22 18:7
    29:4,9,13,20,21
    29:24 30:1 31:5
    34:3
2008 6:13
2011 1:19 4:6 36:20
    37:20
2015 37:6
202 2:5
205 2:7
207 2:10
22 3:15
23502 2:23
25 25:9
253 4:7
26 3:16
2617787 2:12
265 2:5
27 3:12
2800 2:17
2nd 6:13

                3

3 3:14 17:18,21
    29:4 31:13
30 1:15 4:1 10:21
    10:23 37:6
30030 2:11
3212512 2:24
34 34:15
3498500 2:19
35244 2:6

**4**

**4** 3:4,15 22:9,12,15
**403** 2:10
**404** 2:12
**4611984** 1:24

**5**

**5** 3:16 20:5,9 25:25
    26:2,4,6
**554022015** 2:18

**6**

**6** 1:15 4:1 10:21,23
**612** 2:19
**6th** 6:4

**7**

**7** 3:12
**7097551** 37:25
**75** 25:5
**757** 1:24 2:24

**8**

**8** 3:12 24:5 26:10
    27:11
**800** 2:17

**9**

**9** 4:5 21:13 22:4,15
    22:21 34:15
**91** 6:1,6
**95** 19:24
**96** 19:24 20:15
**97** 19:24
**9855099** 2:7