# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIMBERLY BARTLETT on
behalf of herself and all
others similarly situated,

       Plaintiff,        CIVIL ACTION FILE
                          NO. 1:11-CV-0624-JOF
vs.

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

       Defendant.


DEPOSITION OF

KIMBERLY BARTLETT

August 24th, 2011

9:40 A.M.

Robins, Kaplan, Miller & Ciresi, LLP

One Atlantic Center

1201 West Peachtree Street, Suite 200

Atlanta, Georgia

Lisa Brantly, RPR, CCR-2666

```
 1                DESCRIPTION OF EXHIBITS

 2

 3    EXHIBIT    DESCRIPTION

 4

 5    #1         Second Amended Complaint

 6    #2         T-Mobile phone bills

 7    #3         Plaintiff's Response

 8    #4         Notice of filing of class action lawsuit

 9

10

11                         oOo

12                INDEX OF EXAMINATIONS

13    EXAMINATION BY                 PAGE

14    Jennifer Robbins, Esq.          5

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL:

 2   On behalf of the Plaintiffs:

 3          SAMUEL M. HILL

 4        Attorney at Law

 5         The Law Offices of Sam Hill, LLC

 6          265 Riverchase Parkway East

 7        Suite 202

 8        Hoover, Alabama 35224

 9        205.985.5099

10          -and-

11        ANNE H. WALLACE

12        (Paralegal to Henry Turner, Esq.)

13        Turner Law Offices, LLC

14        403 Ponce De Leon Avenue, #207

15        Decatur, Georgia 30030

16        404.377.4790

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL: (CONTINUED)

 2   On behalf of the Defendant:

 3            JENNIFER M. ROBBINS

 4            NICOLE S. FRANK

 5            Attorneys at Law

 6            Robins, Kaplan, Miller & Ciresi, LLP

 7            2800 LaSalle Plaza

 8            800 LaSalle Avenue

 9            Minneapolis, Minnesota 55402

10            612.349.8711

11   Also Present:

12   John Kozak, Legal Video Specialist

13

14            (Pursuant to OCGA 15-14-37 (a) and (b) a

15   written disclosure statement was submitted by the

16   court reporter to all counsel present at the

17   deposition and is attached hereto.)

18

19

20

21

22

23

24

25
```

1        VIDEOGRAPHER:  Stand by, please.  We are on

2     the record.  The time is approximately 9:40 A.M.

3     this is the beginning of tape one of the videotaped

4     deposition of Kimberly Bartlett in the matter of

5     Kimberly Bartlett versus Portfolio Recovery

6     Associates, LLC.  Today's date is August 24th, 2011.

7     My name is John Kozak, legal video specialist.

8        Would counsel present please identify

9     themselves and who they represent for the record.

10        MR. HILL:  Sam Hill for the plaintiff.

11        MS. ROBBINS:  Jennifer Robbins from Robins,

12     Kaplan, Miller and Ciresi, on behalf of Portfolio

13     Recovery Associates.  And with me is Nicole Frank.

14        VIDEOGRAPHER:  Thank you, counsel.  Would

15     the court reporter please swear in the witness.

16                    KIMBERLY BARTLETT,

17     having been duly sworn, was examined and testified

18     as follows:

19                      EXAMINATION

20     BY MS. ROBBINS:

21        Q.   Good morning, Ms. Bartlett.

22        A.   **Hi, how are you.**

23        Q.   All right.  How are you?

24        A.   **Fine.**

25        Q.   Good.  You just heard me introduce myself.

```
 1    I'm Jenny Robbins.
 2         A.    Okay.
 3         Q.    I am here to ask you some questions about
 4    the lawsuit that you've brought against Portfolio
 5    Recovery Associates.
 6         A.    Okay.
 7         Q.    Throughout the day, if it's okay with you,
 8    I'll just go ahead and refer to them as PRA?
 9         A.    Okay.
10         Q.    We have the court reporter here today and
11    so I'm just going to go over a couple of ground
12    rules with you --
13         A.    Okay.
14         Q.    -- pretty quickly.  Hopefully that will
15    make things go a little quicker this morning.
16         A.    Okay.
17         Q.    Because Lisa here is taking down everything
18    we say, please try to answer all of the questions
19    orally.  Please try not to just nod or shake your
20    head so that we can get everything down on the
21    record and it will be clean.
22         A.    Okay.
23         Q.    And then, also, we'll just go ahead and try
24    not to speak over each other as we continue.
25         A.    Yes, ma'am.
```

1    Q.  Do you understand that the oath that you

2  just gave is the same as the one that you would give

3  in a court of law?

4    **A.  Yes, ma'am.**

5    Q.  Do you understand that that oath carries

6  with it the same penalty of perjury that you would

7  have in a court of law?

8    **A.  Yes, ma'am.**

9    Q.  Is there any reason that you can think of

10  why I can't take your deposition today?

11    **A.  No, ma'am.**

12    Q.  Have you ever had your deposition taken

13  before?

14    **A.  No, ma'am.**

15    Q.  Please state your full name for the record.

16    **A.  Kimberly Diane Bartlett.**

17    Q.  What is your date of birth?

18    **A.  February the 9th, 1960.**

19    Q.  What is your current address?

20    **A.  5991 Bayside Drive, that's Acworth,**

21  **Georgia, 30101.**

22    Q.  Where is Acworth, Georgia?

23    **A.  That is north of Atlanta.  It's right**

24  **outside Kennesaw.**

25    Q.  About how far north?  I'm not from around

1  here.

2     **A.    From here, it's probably about 35 miles**

3  **north.**

4     Q.    How long have you been at that address?

5     **A.    It will be two years around the first of**

6  **November.**

7     Q.    Does anybody else live with you there?

8     **A.    Yes.  My daughter, my sister and I have**

9  **another roommate.**

10    Q.    Can you give me their names?

11    **A.    Uh-huh (affirmative).  Gina Lavelle,**

12 **Phillip Poole and my daughter is Amberlee Bartlett**

13 **Netherland.**

14    Q.    What is your current telephone number?

15    **A.    404.784.5634.**

16    Q.    And I think that's a cell phone, is that

17 right?

18    **A.    That is correct.**

19    Q.    Do you have any other phone numbers in your

20 name at this time?

21    **A.    I have another line as of February the 9th**

22 **that I added to my -- to my bill.  But that phone is**

23 **not in my possession.  A friend of mine has the**

24 **phone, and that number -- do you want that number?**

25    Q.    Yeah, if you wouldn't mind.

1        A.    Okay, it's -- I'm sorry.   It's

2    678.200.8178.

3        Q.    And you said February 9th, is that 2011?

4        A.    Yes.   Yes, ma'am.

5        Q.    And -- and that phone line is in your name,

6    though?

7        A.    It's in my name but I do not have

8    possession of the phone.

9        Q.    Okay.   Have you ever used that phone?

10       A.    No.   Um, I may have used it on a time or

11   two but it's not in my possession.   I mean, if my

12   phone wasn't around, I may have used it, but not on

13   an everyday basis.

14       Q.    Okay.   And you think just a couple of

15   times?

16       A.    Yes.

17       Q.    No more than that?

18       A.    Right.

19       Q.    And when you did use that, was that for

20   personal use or for work?

21       A.    I don't really remember.   My phone may not

22   have been beside me and my friend's was.   I'm

23   not -- I don't really know what I used it for.   It

24   was not really a big deal, I don't think.

25       Q.    Okay.   When was the last time you had a

1  landline telephone?

2      **A.     In my name?**

3      Q.   I guess let's go ahead and do first in your

4  name, yeah.

5      **A.    I -- I really don't remember.  I would**

6  **say -- I really don't remember, probably several**

7  **years ago.**

8      Q.   When you say several, can you give just

9  sort of a rough estimate?

10          MR. HILL:  Let me caution you, Kim, do not

11  guess.  If you can -- if you can narrow it down,

12  that's fine.  But don't -- don't guess.

13  BY MS. ROBBINS:

14      Q.   Maybe I can help you out.  Would you say

15  fewer than five years or more than five years?

16      **A.    It's been longer than five years, I would**

17  **say, since I've had a landline --**

18      Q.   Okay.

19      **A.    -- in my name.**

20      Q.   Would you say maybe more than ten?

21      **A.    May -- maybe.  I -- I really -- I really**

22  **don't know.  I believe I've had my, you know, cell**

23  **phone for several years so.**

24      Q.   Okay.  And then when was the last time that

25  you had -- let me think how best to word this.  Did

```
 1    you ever -- was there ever a landline at the place

 2    where you lived that was in somebody else's name

 3    that you used?

 4        A.   Yes.

 5        Q.   And would -- do you remember when the last

 6    time was that that happened?

 7        A.   Well, we have a landline where I live now,

 8    but it's not in my name.  It's in my roommate's

 9    name.

10        Q.   Okay.

11        A.   And I just use it on occasion.

12        Q.   About how often would you say you use it?

13        A.   I don't know.  Just -- I usually don't use

14    it.  Most of the time I use my cell phone.  I mean,

15    if it rings and it's someone for my daughter, I may

16    pick it up and say, This is for you Amberlee, or

17    something like that, but mostly I use my cell phone.

18        Q.   Have you given out that -- that landline

19    number to anybody who would -- would people know to

20    call you there, I guess?

21        A.   When I fill out the information for

22    my -- my daughter's school, they ask for the home

23    phone and I give that number and -- as well as my

24    cell number because they, you know, they ask -- ask

25    for it.
```

1    Q.   Have you -- before the -- this landline

2    that you have right now, is that the same number

3    that you've had -- how long has that -- how long

4    have you used that number?

5    **A.   Well, we moved in the house around**

6    **November 1st of 2009, and I think it's been the same**

7    **-- same number.  I'm not positive about that but I**

8    **believe it has been the same number.  Like I say, my**

9    **roommate takes care of that and it has to do with**

10   **the cable and computer and everything, which I'm not**

11   **an expert on that.**

12   Q.   Okay.  Before November of 2009, when you

13   moved into that house?

14   **A.   Uh-huh (affirmative).**

15   Q.   Did you have a different landline that --

16   that you used?

17   **A.   Yes.  And it was under my same roommate's**

18   **name at another address.**

19   Q.   Okay.  And -- but that was a different

20   number from the number that you currently have?

21   **A.   Yes.**

22   Q.   And about how often would people call you

23   on that one?

24   **A.   Not often at all.**

25   Q.   Okay.  Was it the same kind of situation,

```
1    you gave it out, say, for your daughter's school in

2    addition to your cell phone?

3         A.   Yeah, basically, but it's not my main form

4    of communication.

5         Q.   Does anybody else ever use your cell phone

6    number, the phone number 404.784.5634, to make

7    calls?

8         A.   My daughter uses it sometimes.  Sometimes

9    if it's around, my sister may pick it up or my

10   boyfriend, you know, on occasion, but mostly it's --

11   I use it.

12        Q.   Does anybody else ever receive calls on --

13   on that phone number?

14        A.   My daughter gets calls sometimes and my

15   boyfriend on occasion.  If they can't get through to

16   him on the cell phone, they'll call on my cell phone

17   on occasion.

18        Q.   How old is your daughter?

19        A.   She's eight.

20        Q.   So between your roommate, your daughter,

21   you, and then I guess -- did you say that your

22   boyfriend lives with you right now?

23        A.   No.

24        Q.   Okay.  So is it just three of you living at

25   your current address?
```

```
 1        A.    Uh-huh (affirmative).

 2        Q.    Between the three of you, how many

 3   different phone lines do you have?

 4        A.    Are you -- including cell phones or just

 5   the landlines?

 6        Q.    Yeah, both?

 7        A.    Cell phones, well, my roommate has one, my

 8   sister has one and I have one, three.

 9        Q.    What other phone numbers do you give out

10   for people to try to reach you at?

11        A.    Like when I fill out the information for my

12   daughter, they -- they may say, if there's an

13   emergency, who else to contact.  Is that what you're

14   asking?

15        Q.    If somebody was trying to get ahold of

16   you --

17        A.    Uh-huh (affirmative).

18        Q.    -- in particular, what -- what numbers

19   would -- would they try?  So, for instance, you have

20   your home number, possibly, and your cell phone

21   number.  Is there any other number in addition to

22   those two that they would try?

23        A.    Basically those two numbers.  Like, I mean,

24   I may put my mom's number for an emergency situation

25   if it concerns my daughter.
```

1    Q.   Uh-huh (affirmative).

2    **A.   But, you know, basically just those two**

3    **numbers.  I think that's what you're asking me.**

4    Q.   Do you also have a work number?

5    **A.   No, that would be my cell number.**

6    Q.   Okay.

7    **A.   Uh-huh (affirmative).**

8    Q.   What -- what's the highest degree that you

9    received in school?

10   **A.   I graduated from high school.**

11   Q.   When was that?

12   **A.   1978.**

13   Q.   And what have you -- after high school, did

14   you work right away or?

15   **A.   Yes, I worked at Steak and Ale as a**

16   **waitress for I guess three or four years.  And then**

17   **I started working as a floral designer, and I did**

18   **that for 20-plus years.**

19   Q.   Was that your own business or?

20   **A.   No.**

21   Q.   Where -- where did you work?

22   **A.   I -- I worked for Marcy Imports for I think**

23   **about five or six years.  I worked for Silk**

24   **Greenhouse, I believe for three years.  And I also**

25   **worked for Stacy's for maybe around two-and-a-half**

1    or three years.

2        Q.    Where are you working right now?

3        A.    **Right now, I have a small cleaning service**

4    **and I work for myself.**

5        Q.    How long have you done that?

6        A.    **I would probably say around ten years.**

7        Q.    And so that's why your cell is your work

8    number so people can contact you for the cleaning

9    service at that number?

10       A.    **Yes, I use the phone number for personal**

11   **and business, for all of -- basically all of my**

12   **needs.**

13       Q.    Do you ever give out your home line for

14   your business at all?

15       A.    **No.**

16       Q.    In your own words, what's this case about?

17       A.    **It's about the unauthorized phone calls**

18   **from Portfolio Recovery Associates to me, phone**

19   **calls of harassment and phone calls that I did not**

20   **give Portfolio Recovery Associates -- did not give**

21   **them permission to call me concerning a debt that is**

22   **over ten years old.**

23       Q.    You said phone calls, is that all phone

24   calls or just phone calls to your cell phone?

25       A.    **Just phone calls to my cell phone.**

1       Q.   And you brought this case as a class

2    action?

3       **A.   Yes.**

4       Q.   What -- in your own words, what does it

5    mean to act as a class representative?

6       **A.   That is a group lawsuit, and there is a**

7    **named plaintiff or named representative and that**

8    **person leads the group with, of course, the help of**

9    **my attorneys.**

10       Q.   Before you got involved in the lawsuit, did

11   you do anything, and -- and I'm not looking for any

12   communications with your attorneys about this, but

13   did you do anything on your own to learn more about

14   what it would mean to be a class representative?

15       **A.   No, I just consulted with my attorneys.**

16       Q.   About how much time do you expect this case

17   to take out of -- as it continues on through -- out

18   of your life?

19       **A.   I really don't know that answer.**

20           MR. HILL:   I would help her but I don't

21   want to scare her.

22   BY MS. ROBBINS:

23       Q.   Did you have --

24           MR. HILL:   I see her put that in here.

25   BY MS. ROBBINS:

1      Q.   Do you any general idea coming into this

2   about how much time you would be investing into this

3   case?

4      A.   **Not really, not specifically.  I -- I knew**

5   **that, you know, it -- it could take some time.   I**

6   **really did not know exactly how much time.**

7      Q.   When did you first decide that you were

8   going to bring a lawsuit against PRA?

9      A.   **I don't know the exact date, but I**

10  **continued to get phone calls, and so I called my**

11  **attorney just to find out my rights.  I believe we**

12  **documented calls.  Our documentation started on**

13  **October 28th, of 2010, but I don't know, off the top**

14  **of my head, the exact date that I decided to do**

15  **that.**

16     Q.   Do you remember if it was before

17  October 28th, of 2010, that you decided that you

18  would sue?

19     A.   **I don't believe I had decided at that -- at**

20  **that particular point to sue, to the best of my**

21  **memory.**

22     Q.   And then you said that you continued to

23  receive phone calls.  Did you -- I just want to

24  clear up the time frame a little bit.

25     A.   **Okay.**

1      Q.    Did you -- do you mean that you continued

2  to receive phone calls today from PRA or?

3      **A.    Not -- not today.**

4      Q.    Okay.   So you just meant that at that time

5  when you were considering it, you were receiving

6  phone calls and that's why you considered filing a

7  lawsuit, is that right?

8      **A.    As I continued to get the phone calls, I**

9  **didn't really know my rights and so that's when I**

10  **contacted the attorney, you know, to find out what**

11  **my rights were.**

12      Q.    Well, who did you first contact?

13      **A.    Henry Turner.**

14      Q.    How did you decide to contact Henry Turner?

15      **A.    My mom actually cleans for him, and several**

16  **years ago I had helped her in her cleaning business,**

17  **and I had helped her clean, and I had met Henry**

18  **then.**

19      Q.    Do you know about when that was?

20      **A.    Let's see, I would probably say that was**

21  **around maybe 2001, some -- I -- I -- I don't know**

22  **exactly.   But I would say 2000 to 2001, something**

23  **like that.**

24      Q.    And do you remember the first time -- when

25  the first time was that you contacted Mr. Turner,

1   specifically about -- and I don't want you to give

2   any substance of any communications you had with

3   him, but specifically about the potential lawsuit

4   that you would be interested in filing?

5      **A.    I do not remember the exact date of that.**

6          MR. HILL:  You're talking about this case?

7          MS. ROBBINS:  Right, correct.

8   BY MS. ROBBINS:

9      Q.   Do you know about how many times you met

10  with Mr. Turner before you ended up filing the

11  lawsuit?

12     **A.    In person?**

13     Q.   I guess, let's do in person first, yeah.

14     **A.    One time.**

15     Q.   And then did you then speak over the phone

16  as well?

17     **A.    Yes.**

18     Q.   Do you know about how many times before the

19  lawsuit was filed you spoke over the phone?

20     **A.    Several.**

21     Q.   And you can't give me an estimate as to

22  when the communications first began?

23     **A.    I know they started before October 28th,**

24  **but that is just when we went back about three**

25  **months because there were several more than the ones**

 1   that we actually submitted.

 2       Q.    There were several more phone calls you

 3   mean?

 4       A.    Prior to that.

 5       Q.    Okay.  But you -- you all decided not to

 6   submit those as part of your claims here in this

 7   lawsuit?

 8       A.    I guess that is correct.

 9       Q.    Have you ever served as a class

10   representative before?

11       A.    No.

12       Q.    Did you ever consider bringing this lawsuit

13   as an individual instead of as a class

14   representative?

15       A.    No.

16       Q.    You've already alluded to this a little

17   bit.  You allege in your complaint that PRA first

18   began calling you on your cell phone on

19   October 28th, 2010, is that right?

20       A.    That we have documented, yes.

21       Q.    But now, it sounds like there were calls

22   before that as well?

23       A.    To the best of my memory.

24       Q.    Okay.  But you're not seeking relief on the

25   basis of the calls before October 28th, 2010?

```
 1              MR. HILL:  The truth is, I don't want to
 2    answer for her, but we just got to figure out which
 3    calls were made when.  Our class definition starts
 4    on the 28th, so for the purposes of class
 5    definition, that's right.
 6    BY MS. ROBBINS:
 7         Q.   Do you remember how far back the rec -- the
 8    calls were that you could potentially assert claims
 9    about, before October 28, 2010?
10              MR. HILL:  Let me say, she's -- she's not a
11    lawyer so she doesn't understand statutes of
12    limitations and how far we can reach back and all of
13    that, so.
14              MS. ROBBINS:  Right.
15              MR. HILL:  As best you can, you answer.
16    But she's not holding you to be a lawyer.
17              MS. ROBBINS:  Right.
18         A.   Yeah.  Did I -- I think a couple months or
19    so off the top of my head.  I really wasn't
20    documenting it, you know, at -- at that -- that
21    point.
22    BY MS. ROBBINS:
23         Q.   Okay.  So -- and then in your complaint,
24    you allege that the purpose of the calls from PRA
25    was to collect a purported credit card debt, is that
```

1    right?

2        **A.    Yes.**

3        Q.    What credit card debt are you referring to

4    there?

5        **A.    Well, now I know it's MBNA.**

6        Q.    Before -- like, well, first, when did you

7    find out it was MBNA?

8        **A.    I had forgotten who the credit card was**

9    **until I guess my attorneys got that in the**

10   **discovery.**

11       Q.    What -- before you found out throughout

12   this case in discovery that it was MBNA, what did

13   you think of -- think the credit card was related

14   to?

15       **A.    I -- I wasn't -- I didn't remember if it**

16   **was MasterCard or I -- I didn't really remember what**

17   **the name of the card was.**

18       Q.    So --

19       **A.    It had been, you know, a long time ago.**

20       Q.    If I refer to it as the MBNA credit card,

21   then we'll understand that it's -- the credit card

22   is that -- it's that -- that is the underlying debt

23   that relates to this action, is that okay with you?

24       **A.    Yes.**

25       Q.    When did you first apply for the MBNA

1   credit card?

2       **A.    I really could not tell you.**

3       Q.   Do you remember how it came about?

4          MR. HILL:  Jennifer, let me interrupt for

5   one second.  Can I have a standing objection to all

6   of the questions as to underlying debt as to the

7   relevance, and I won't object every time that way.

8          MS. ROBBINS:  Certainly.

9          MR. HILL:  I'll just give you that standing

10  objection.

11         MS. ROBBINS:  Okay.

12  BY MS. ROBBINS:

13      Q.   Do you remember how you first came to apply

14  for the credit card at all?

15      **A.    No.**

16      Q.   You don't remember if you received

17  something in the mail that you sent in or?

18      **A.    That's very possible, but I do not remember**

19  **specifically.  Like I say, it's been several years**

20  **ago.**

21      Q.   Do you remember what your address was at

22  the time that you applied for that credit card?

23      **A.    No.**

24      Q.   Do you remember what your phone number was

25  at the time that you applied for that credit card?

```
1      A.   No.  No.  It's hard to remember mine now.

2      Q.   Do you -- do you remember how many phone

3  numbers you had at that time?

4      A.   I -- I know I didn't have a cell phone at

5  that time.  I -- I assume I probably had a house

6  phone.

7           MR. HILL:  Don't guess.

8      A.   Okay.  So the ans -- so I would say, no, I

9  don't remember.  Because I want to give a for sure

10 answer.

11 BY MS. ROBBINS:

12     Q.   So is it fair to say that whatever phone

13 number you may have had at that time is different

14 from any of the phone numbers you have right now?

15     A.   Yes, ma'am.

16     Q.   Do you remember any of the terms from the

17 credit card agreement for that MBNA credit card?

18     A.   No, ma'am.

19     Q.   Do you remember whether you received the

20 credit card in the mail after you applied for it?

21 How you came to actually hold it in your hand?

22     A.   There is very big possibility it came in

23 the mail.  I don't remember.  I don't want to say

24 something that I'm not sure about.

25     Q.   And I understand.  Sometimes when people
```

```
 1  ask me sort of small details a little bit more comes
 2  back to me so that's why.
 3      A.   Yeah, I would say that's a very big
 4  possibility that I received it in the mail.  I just
 5  want to be as honest as I can.
 6      Q.   I appreciate that.  About how long did you
 7  have that credit card?
 8      A.   I don't really remember, exactly.
 9      Q.   Do you remember about when you stopped
10  using it?
11      A.   I don't remember the exact date.  Possibly
12  in the late '90s.
13      Q.   And were you just using it for your own --
14  for personal use?
15      A.   I -- I would say, yes.
16      Q.   It was -- was -- I mean were you ever using
17  it for work at all or anything like that?
18      A.   Not to my memory.
19      Q.   Do you remember why you stopped using it?
20      A.   That was a really bad time in my life.  My
21  husband had committed suicide in 1998.
22      Q.   I'm sorry to hear that.
23      A.   Thank you.  I don't really remember all of
24  the details during that time.
25      Q.   Do you remember about how often you used it
```

```
1   when you did have it?
2       A.   No.
3       Q.   Do you -- do you remember whether you paid
4   it off each month as bills came in?
5       A.   I -- I don't think I paid all of it off.  I
6   think I made partial payments, to the best of my
7   memory.
8       Q.   Uh-huh (affirmative).  Do you remember
9   whether you tended to make minimum payments each
10  month?
11      A.   I -- I don't remember if it was minimum or
12  over.  I -- I don't remember.
13      Q.   Do you remember whether your credit card
14  statements came in the mail to you?
15      A.   Yes, I believe they did.
16      Q.   Do you remember ever receiving notices from
17  MBNA about your credit card balance, related -- I
18  mean, related to a fail -- a failure to pay off that
19  credit card?
20      A.   Like I say, it was a really bad, rough time
21  in my life.  I -- I don't really remember.
22      Q.   Do you remember whether you ever tried to
23  make any changes to the credit card agreement?
24      A.   No.  I don't -- I don't remember.
25      Q.   You don't remember either way?
```

1    A.    No.

2    Q.    So you don't remember whether you maybe

3  called the credit card company up and asked them to

4  make any changes to your agreement?

5    A.    Not to my knowledge, not to my memory.

6    Q.    Do you remember whether you ever wrote in

7  to the credit card company and asked to make any

8  changes to your agreement?

9    A.    No, I don't remember doing that.

10   Q.    Do you remember when the last time was that

11 you made a -- a payment on that credit card balance?

12   A.    No, I don't remember that exact date.  I

13 would assume it was in the late -- to the best of my

14 memory in the late '90s.

15   Q.    And after that payment, you would agree,

16 then, there was still a balance remaining on that

17 credit card?

18   A.    Yes.

19   Q.    And to date, then, would you agree that you

20 never paid off that debt in full?

21   A.    Yes.

22   Q.    Did you ever try to pay off that debt?

23   A.    No.

24   Q.    Why not?

25   A.    I just wasn't financially able to do that.

1    **My life was a mess.  It was just a really sad time.**

2         Q.    I'm sorry.  Do you remember when -- whether

3    you ever started receiving notices, not from MBNA

4    but from a debt collector, about that debt?

5         **A.    No, I don't -- I don't remember any of that**

6    **specifically.**

7         Q.    Okay.  Do you -- do you -- and I forget, I

8    might have asked you when.  Do you remember if you

9    have ever received any notices from a debt collector

10   about that debt?

11        **A.    I'm not saying I didn't.  I just don't**

12   **remember specifically because it has been so -- so**

13   **long ago.**

14        Q.    Do you remember when you got your first

15   cell phone number?

16        **A.    My very first cell phone number?**

17        Q.    Uh-huh (affirmative).

18        **A.    I believe it was -- and the only reason I**

19   **know this is because I've been getting information**

20   **on my cell phone, I believe if my memory serves me,**

21   **it was like December of 2001, I believe, to the best**

22   **of my memory.**

23        Q.    And that one was in your name?

24        **A.    Yes.**

25        Q.    Do you remember what that cell phone number

```
 1    was?

 2        A.    No.

 3        Q.    I have to ask.

 4        A.    I have to keep saying no, but I just don't.

 5              MR. HILL:  I'm seriously thinking, I

 6    wouldn't either.

 7    BY MS. ROBBINS:

 8        Q.    Before that, do you remember whether you

 9    ever used anybody else's cell phone number at all?

10        A.    Just to casually use their cell phone or?

11        Q.    Would you ever have given out say -- say

12    you had a boyfriend or somebody at the time, would

13    you have ever given out another person's cell phone

14    number as a way for you to be contacted?

15        A.    I -- no, I don't think so.

16        Q.    When you got your first cell phone, did you

17    also have a landline at that time as well?

18        A.    It -- it was at my mother's house.  My

19    mother had a landline.

20        Q.    Do you know what that phone number was?

21        A.    It may still be the same number.  I -- I

22    believe it's still the same number, and I do know

23    her home number now.

24        Q.    Could you give it to me?

25        A.    Yes, it's 770.996.8623.
```

1      Q.    The cell phone number that you have now, do

2   you -- who do you give that out to, and I'm not

3   looking for specific names but just categories of

4   people, so say, for instance, family members,

5   friends?

6      A.    **Friends, family.**

7      Q.    Any other groups of people?

8      A.    **My daughter's school.  The people I work**

9   **for.  That's basically it.**

10     Q.    Do you ever use it on any credit card

11  applications now?

12     A.    **I have a credit card now, and I'm sure I**

13  **gave them my number, to the best of my memory.**

14          MR. HILL:  Don't guess.

15     A.    Okay.  Repeat the question so I can make

16  sure I'm answering correctly.

17  BY MS. ROBBINS:

18     Q.    That's fine.  That's fine.  Do you know

19  whether you give out your cell phone number to

20  credit card companies now, as you're applying for

21  new credit cards?

22     A.    **I haven't applied for a new one in quite**

23  **some time.  I would assume that the credit card I**

24  **have now, has -- has my cell phone number.  I'm --**

25  **I'm pretty sure.**

1    Q.   Do you know about when you applied for that

2  credit card?

3    A.   **To the best of my memory, I believe I've**

4  **had it four or five years.**

5    Q.   Do you remember ever calling MBNA about the

6  credit -- the MBNA credit card that we've been

7  talking about?

8    A.   **Specifically?**

9    Q.   Uh-huh (affirmative).

10   A.   **No.**

11   Q.   Do you -- so you don't remember whether or

12  not you ever called MBNA about that?

13   A.   **No.**

14   Q.   Do you remember whether you ever called

15  PRA?

16   A.   **If I may -- if I had possibly gotten a**

17  **phone call and I didn't know who the number was, I**

18  **may have dialed it back and it could have been PRA,**

19  **but as far as just calling PRA to talk to them, no.**

20  **I'm just trying to --**

21        MR. HILL:  Now, that's an honest answer

22  right there.

23   A.   I'm trying to be honest.

24  BY MS. ROBBINS:

25   Q.   Do you remember -- do you remember ever

```
 1    actually doing that?  Do you remember any times

 2    where you called -- you called the phone number not

 3    knowing who it was and it was PRA?

 4         A.    That is a possibility.  I -- I don't know

 5    for 100 percent, but that is a possibility.

 6         Q.    Do you remember, outside of MBNA or PRA,

 7    ever calling a debt collector?

 8         A.    No, not to my memory.

 9         Q.    Do you remember when you first received a

10    call from a debt collector about your MBNA credit

11    card?

12         A.    No, I do not.

13         Q.    Do you remember what company that might

14    have been.  I know -- I just -- let me just break

15    that down a little bit because I think I just asked

16    you whether you knew when that happened and you said

17    no, is that right?

18         A.    When?

19         Q.    When -- let me just start over.  My -- so

20    my first question is, do you remember when you first

21    received a call from a debt collector about your

22    MBNA credit card balance?

23         A.    No, I do not remember the -- the date.

24         Q.    Do you remember whether a debt collector

25    ever called you about your MBNA credit card balance?
```

1     **A.    Recently or before?**

2     Q.    At any time that you can remember.

3     **A.    I think in the past I may have talked to**

4     **someone possibly.  I don't remember the exact time**

5     **or date.**

6     Q.    So -- and in -- in debt collector, I am

7     including PRA, so?

8     **A.    Oh.**

9     Q.    So do you remember receiving calls, then,

10    from PRA about that MBNA credit card balance?

11    **A.    I believe it was PRA.  I -- I -- like I**

12    **say, it's been many, many years ago.**

13    Q.    Uh-huh (affirmative).

14    **A.    I believe that's the only debt collector**

15    **that I've had, to the best of my memory.**

16    Q.    And so, in -- so in your complaint, you're

17    alleging at least ten calls, so far you're alleging

18    ten calls, and I guess it's to be determined as to

19    whether you're alleging more earlier than

20    October 28th, 2010; is that fair?

21    **A.    We're alleging ten -- ten calls.**

22         MR. HILL:  Uh-huh (affirmative), uh-huh

23    (affirmative).  That's fine.

24    BY MS. ROBBINS:

25    Q.    So do you remember any of those calls?

```
 1        A.    I think I talked to -- to people a couple

 2   times.

 3        Q.    And -- so of those ten calls, you have a

 4   specific memory about only a couple of them?

 5        A.    Yes, maybe two or three times.  I wasn't

 6   really doc -- you know, documenting it at that time,

 7   but that would be accurate, to the best of my

 8   memory.

 9        Q.    Do you remember whether on any of those

10   calls you ever spoke about whether you were going to

11   try to pay that MBNA credit card balance off?

12        A.    I had spoke to a person once, and I had

13   told them that, to the best of my memory, that if I

14   could, I -- that I maybe could send $20 a month.

15        Q.    Do you remember about when that happened,

16   that conversation?

17        A.    I could not tell you the exact date.

18        Q.    Do you have a -- a general idea about when

19   that was?

20        A.    No, I really don't.  I mean, I've got a

21   daughter and animals and I -- I -- I remember that

22   particular day there was a lot, you know, going on,

23   you know, going on.

24        Q.    Uh-huh (affirmative).  Do you remember

25   whether that was in the last year?
```

1      A.    Yes.

2      Q.    Do you remember whether that was in the

3   last six months?

4      A.    Let's see.  No, I -- I would think it was

5   prior to six months.

6      Q.    So longer than six months ago.  Somewhere

7   between six months and a year, you think?

8      A.    Yes, that would be my -- to the best of my

9   memory.

10      Q.    And you said that you spoke to a person

11   once, did -- did you -- in addition to that instance

12   that we've just been talking about, did you -- do

13   you ever remember speaking to somebody at PRA,

14   again, about your MBNA credit card?

15      A.    Yes, I talked to someone after that and I

16   don't remember the exact conversation.  And to the

17   best of my memory, I had told him that I had spoken

18   to an attorney, and to the best of my memory, I told

19   him not to call me anymore.  And that -- that was

20   within my legal rights because the debt was 10 or

21   12 years old.

22      Q.    You --

23      A.    Like I say, I'm not an attorney.  I didn't

24   write all this down, but to the best of my memory,

25   it was -- that was the nature of the phone call.

```
 1        Q.   And you said that you asked them not to
 2   call you anymore?
 3        A.   To the best of my memory, I -- I did.
 4        Q.   Did you -- did you ever write to them and
 5   ask them not to contact you anymore?
 6        A.   No.
 7        Q.   Did you ever -- after you spoke with them
 8   that one time, do -- do you remember when -- when
 9   that was?
10             MR. HILL:  Hold on one second.  Let me have
11   it, if you would, it will save us some time.  Give
12   me a standing objection as to any -- any calls or
13   letters or e-mails with regard to litigation.
14             MS. ROBBINS:  Okay.
15   BY MS. ROBBINS:
16        Q.   Do you -- do you remember when the second
17   time you spoke with somebody about your MBNA credit
18   card was, where you asked them not to call you
19   anymore, do you remember about when that was?
20        A.   Longer than six months ago, but less than a
21   year.
22        Q.   So, we're still longer than six months, but
23   -- but after the -- the first call that you had with
24   them where you --
25        A.   Yes.
```

1      Q.   -- thought you might be able to pay
2    something?
3      **A.   Yes.  Yes.**
4      Q.   Okay.  Do you know whether you ever
5    received calls from PRA on any phone other than your
6    cell phone?
7      **A.   I don't recall any phone calls, other than**
8    **my cell phone.**
9          MS. ROBBINS:  I think this might be a good
10   place to take a break.
11         VIDEOGRAPHER:  Stand by please.  The time
12   is approximately 10:25 A. M.  We are off the record.
13         (A brief recess was taken.)
14         (Defendant's Exhibits-1 through 4 were
15   marked for the record.)
16         VIDEOGRAPHER:  Stand by, please.  The time
17   is approximately 10:38 A. M.  We are on the record.
18   BY MS. ROBBINS:
19     Q.   Welcome back, Ms. Bartlett.
20     **A.   Thank you.**
21     Q.   I was just taking some notes during our
22   break and I wanted to make sure that I have
23   everything clear before we move on.  You said that
24   you thought you got your first cell phone in about
25   2001, is that right?

1    **A.    Yes.**

2         Q.    Do you know about how many different cell

3    phone numbers you've had between 2001 and 2008?

4         **A.    Maybe three different numbers, to the best**

5    **of my memory.  I'm not sure if that's exactly**

6    **correct, but.**

7         Q.    Okay.  And so you would -- by three

8    different, you mean -- so the first one that you had

9    in 2001, a second one?

10        **A.    Oh, I don't know how many different phones**

11   **that I've had.  Just sometimes -- one time I dropped**

12   **one in the water.**

13        Q.    Well, I know you -- it's just so -- just as

14   far as the telephone number itself?

15        **A.    I -- I think I've had about three**

16   **different --**

17        Q.    Okay.

18        **A.    -- numbers.  Pos -- possibly three.**

19        Q.    Okay.  And that does not count, then,

20   the -- the current phone number you've had since

21   about 2008?

22        **A.    Yeah.  I've had the same number since 2008.**

23        Q.    Okay.  So then counting the one that you

24   have right now that you've had since 2008, do you

25   think you've had, then, about four or so different

1    telephone -- cell phone numbers since 2001?

2        **A.    To the best of my memory, maybe three**

3    **different numbers besides this one.  I -- I'm not**

4    **100 percent sure, but I -- I know there's been a**

5    **couple of different numbers.**

6        Q.    Okay.  And you said that you think that the

7    credit card that you used -- that you currently use

8    right now, that you have probably had that since

9    about 2006, is that right?

10       **A.    Yeah.  It's '11, so four or five, yeah.  I**

11   **don't really remember but I know I've had it**

12   **probably four or five years, something like that.**

13       Q.    And you said that, to the best of your

14   knowledge, you think that that credit card company

15   does have your cell phone number, is that right?

16       **A.    Well, it would depend on if I got that cell**

17   **phone before January 4th of 2008 or not.**

18       Q.    Before January 4th of 2008, is there --

19   what -- what's the distinction there that are you're

20   drawing, why do you think?

21       **A.    Because I'm not sure if I've had this**

22   **credit card for four or five years, and I've had**

23   **this number since January 4th of 2008.  Because I**

24   **don't know the exact date that I got the card.  I**

25   **don't owe anything on it.  I just mostly keep it for**

1    an emergency.

2         Q.   Would you -- you would have provided your

3    cell phone number with that credit card application,

4    though, is that right?

5         A.   If they asked for it, I would have.

6         Q.   Do you always provide your cell phone

7    number if it's asked for on an application?

8         A.   To the best of my memory, I -- I would say

9    yes.

10        Q.   I'm going to hand you -- during the break

11   we were productive and we marked some of the

12   exhibits.  Hopefully it will help us speed through

13   and get Sam on his way.

14        MR. HILL:  That's fine.  I feel important

15   now.

16   BY MS. ROBBINS:

17        Q.   I'm going to hand you what's been marked as

18   Exhibit Number 1.

19        A.   Okay.

20        MR. HILL:  Is there a copy for me?

21        MS. ROBBINS:  Yes, I have some for you.

22   BY MS. ROBBINS:

23        Q.   Have you ever seen that document before,

24   Ms. Bartlett?

25        A.   Yes, I -- I believe this is the document

1    that my attorneys have submitted to me.

2        Q.    And you can see on the front there it says

3    second amended complaint.  Do you see that?

4        A.    Yes.

5        Q.    Do you remember seeing the first amended

6    complaint as well?

7        A.    Yes, I -- I -- I believe so.  I believe

8    there was another amended complaint, I believe.

9        Q.    And then do you remember seeing an original

10   complaint with something without the word amended in

11   it?

12       A.    Yes, uh-huh (affirmative).

13       Q.    All right.

14       A.    Uh-huh (affirmative).

15       Q.    Did you participate in preparing this

16   second amended complaint?  Oh, yes, and take your

17   time and look through it.

18       A.    Yeah, I --

19            MR. HILL:  Let me ask you to help explain

20   what you mean by participate.

21   BY MS. ROBBINS:

22       Q.    Well, I guess if -- if there's a question

23   in your mind about what that means, then you can

24   tell me what you think participate means.  Did you

25   have any -- any part in preparing this document, to

1   the best of your recollection?

2       **A.    My attorneys prepared the document.   I'm --**

3   **I'm just -- I'm not sure what -- my -- the question**

4   **is.**

5       Q.   Did you supply, and I guess -- let's see.

6   Maybe it would help if we go back to the first

7   complaint that was ever filed in this action.   Did

8   -- did you -- did you participate at all in --

9   in the -- in preparing that complaint?

10      **A.   Well, they would ask me questions and I**

11  **would give them my answers, is that...**

12      Q.   Okay.   Did that same -- did -- did that

13  same process occur for the -- for this second

14  amended complaint, then, as far as you remember?

15      **A.   I would say, yes.   Anything they asked me,**

16  **I gave them the answer to the best of my knowledge.**

17      Q.   Do you know -- were you given the

18  opportunity to -- to read the second amended

19  complaint before it was filed in this action?

20      **A.   Yes.   I -- I -- I would -- I would say yes,**

21  **to the best of my knowledge.**

22      Q.   Did you -- did you then review it before it

23  was filed?

24      **A.   Yes, I've -- I've read over it.**

25      Q.   And you believe everything in here is

1    entirely accurate?

2        **A.    To the best of my knowledge, yes.**

3        Q.    And you can take your time, you know, and

4    look through it.  Are -- sitting here today, are

5    there any changes that you would make to this?

6            MR. HILL:  And if you start talking about

7    my typing skills.

8        A.    To the best of my knowledge, everything is

9    accurate.  I -- I don't know if I need to -- to the

10   best of my knowledge, everything is accurate.

11   BY MS. ROBBINS:

12       Q.    About how many calls do you make to --

13   every day on your cell phone?

14       **A.    Oh, gracious.  Oh, my goodness.  I don't**

15   **know.  10, 12, 15.  I don't know.  Sometimes more,**

16   **sometimes less.**

17       Q.    How -- about how many do you -- calls do

18   you receive on your cell phone every day?

19       **A.    I don't know.  Eight or 10, sometimes more,**

20   **sometimes less.**

21       Q.    And you receive those calls sometimes while

22   you are at home, is that right?

23       **A.    Sometimes when I'm at home.**

24       Q.    Sometimes while you're at work?

25       **A.    Sometimes.**

1      Q.    Sometimes in the car?

2      **A.    Correct.**

3      Q.    Are you sometimes surprised to receive a

4  call on your cell phone?

5      **A.    Let me see here, if this is a trick**

6  **question.   I'm not surprised because that's how**

7  **everybody contacts me is on my cell phone.**

8      Q.    Would you say that -- I guess, let's turn

9  to -- at the back of this first exhibit, there is

10  a -- there's an Exhibit B in here that is some pages

11  from your cell phone bills, I think.   Do you see

12  that?

13      **A.    Is it the very first one, says --**

14      Q.    It should say Exhibit B at some point in

15  here.

16           MR. HILL:   There you go.

17  BY MS. ROBBINS:

18      Q.    Yeah.   Okay.   And then following that, you

19  will see, yep, some pages there.   Do you -- do you

20  recognize the documents that comprise this Exhibit

21  B?

22      **A.    Yes, they're calls from my cell phone -- to**

23  **my cell phone number.**

24      Q.    Are these, then, bills that -- that you

25  remember receiving from your cell phone provider?

1      A.    Yes.

2      Q.    And that's from T-Mobile, is that right?

3      A.    That is correct.

4      Q.    It looks on here like some phone numbers

5   were underlined.  Do you see that on some of these

6   pages?

7      A.    Yes.

8      Q.    Did you underline those?

9      A.    I know when I submitted the documents to my

10   attorneys, that I had underlined the numbers from

11   PRA, to the best of my memory.

12      Q.    So you -- so you do think, then, that --

13   that you underlined these?

14      A.    I'm -- I'm not positive if these are the

15   exact ones that I sent or if this is a copy.  I -- I

16   don't remember if I underlined them or circled them,

17   but I know that when I submitted them to my

18   attorney, that I had made some reference to the

19   phone calls from PRA.

20      Q.    And it looks like there are ten different

21   underlinings in there, ten different incoming calls.

22   Would you agree with that?

23           MR. HILL:  You mean ten calls are

24   underlined?

25           MS. ROBBINS:  Ten calls are underlined.

```
 1        A.   I believe I just -- I just count eight that
 2   are underlined.  One, two, three, four, five, six,
 3   seven, eight -- oh, nine -- I believe I'm counting
 4   nine.  Is that correct?
 5             MR. HILL:  We're getting there.
 6        A.   I'm not supposed to ask the question, am I?
 7   BY MS. ROBBINS:
 8        Q.   No, it's fine.  I mean, are you counting
 9   the one on the very last page because that one is
10   kind of lightly underlined?
11        A.   Oh, probably not, okay.
12        Q.   Thank you.
13        A.   Sorry.
14        Q.   Do these, then -- that corresponds to the
15   ten calls that you allege are violations then?
16        A.   To the best of my knowledge, these were the
17   same -- I -- I don't know.  I would have to get -- I
18   mean, I didn't memorize the calls.  I'm assuming
19   that these are the calls that my lawyer submitted,
20   you know, from PRA.  I mean, that's what I'm
21   assuming, yes.  I mean, I don't know those numbers
22   off the top of my head.  There are several numbers.
23        Q.   When -- when you turned these -- you said
24   that you turned the documents over to your -- to
25   your lawyers.  When you did turn those over, did you
```

1    only give them these -- these pages?  And I ask you

2    this, and you can take a look here, it looks like,

3    you know, so the first page of Exhibit B says Page 2

4    of 11, you know, and then it jumps ahead to Page 4

5    of 11, and -- and -- and through the course of this

6    exhibit, it goes through several different months.

7    So I was just wondering, when you handed over your

8    bills to your attorneys, did you hand over the

9    entire bills or just -- just these pages, do you

10    remember?

11        A.    Just these pages initially.  I sent them to

12    him.

13        Q.    And you said initially, did you later on

14    send additional pages from your bills?

15        A.    No.  We -- no, I didn't send, initially --

16    after that send any more bills.  We obtained the

17    other bills for the court, but I did not send them

18    to him.

19        Q.    When -- when did you obtain the other bills

20    for the court?

21        A.    Of all the cell -- of all the documentation

22    from several months ago, I obtained that last

23    Saturday.

24        Q.    Okay.  And I think I have those marked as

25    the next exhibit.

1        MR. HILL:  Funny you should mention that.

2    BY MS. ROBBINS:

3      Q.  So I'm going to hand you what's been marked

4    as Exhibit 2.  It's -- you can -- you can look

5    through it, but I believe, then, this includes --

6    I -- the bills from October, 2010, through 10 months

7    worth there.  And you can check me if I'm wrong.

8    And thank you again for providing March this

9    morning.

10        MR. HILL:  What were the dates on it you

11    just said?

12        MS. ROBBINS:  Looks like it goes from

13    October 25th, 2010, that's the date of the bill.

14        MR. HILL:  Right.

15        MS. ROBBINS:  Through the last one is

16    July 25th, 2011.

17        MR. HILL:  Okay.  Thank you.

18        MS. ROBBINS:  Yep.

19      A.  I mean, do I need to --

20    BY MS. ROBBINS:

21      Q.  You -- I just want -- are -- are those

22    the -- the documents that you just referenced that

23    you obtained last Saturday from T-Mobile?

24      **A.  Yeah -- I'm -- yes.  I mean, to -- yes, to**

25    **the best of my knowledge.  I mean, I haven't looked**

1  **through every single one of these, but.**

2        MR. HILL:  We'll take your representation,

3  how about that.  You're giving us back what we gave

4  you.

5  BY MS. ROBBINS:

6     Q.   I just want to make sure we're all on the

7  same page.

8     **A.   Okay.**

9     Q.   So if you could just -- I won't take the

10  time to go through all these, don't worry.  But if

11  you could turn to the first one, from October 25th,

12  2010.

13     **A.   Okay.**

14     Q.   And in the second page there, the very

15  first line says county 911.  Do you see that on the

16  top left?

17     **A.   Uh-huh (affirmative).**

18     Q.   And if -- if you need to, you -- you can

19  undo that clip there.  I'm trying to get a sense for

20  your cell phone plan, and so I'm wondering -- I

21  guess, first, if you can just sort of tell me, what

22  -- what -- what is your cell phone plan that you --

23  that you know of?

24        MR. HILL:  And if I can get a standing

25  objection as to the relevance of this line.

1          MS. ROBBINS:  Uh-huh (affirmative).

2      A.   Are -- are you saying from this particular,

3  or --

4  BY MS. ROBBINS:

5      Q.   What -- what -- like, how many minutes are

6  you given per month, you know, that kind of thing?

7      **A.   Okay.  Unlimited.**

8      Q.   Okay.  So I was confused.  So you're given

9  unlimited minutes to anybody, is that right, you can

10  call anybody you want and it doesn't count against

11  your minutes?

12      **A.   That is correct.**

13      Q.   Okay.  And you can receive calls from

14  anybody and it doesn't count against your minutes at

15  all?

16      **A.   No, it doesn't.**

17      Q.   Okay.  So then -- so then you pay just one

18  fee per month, is that right?

19      **A.   Yes.**

20      Q.   Okay.  Have you ever had a family plan that

21  you remember?

22      **A.   On May the 1st, when I added a line on**

23  **February the 9th, another line, and then May 1st, we**

24  **changed it to the family plan.**

25      Q.   Okay.  May 1st of what year?

1      **A.     This year, 2011.**

2      Q.    Okay.  And then you said February, what

3    happened in February?

4      **A.     February the 9th is when I added another**

5    **line to my plan that I do not have possession of**

6    **that telephone.**

7      Q.    Right.  Okay.  So the 1st of February you

8    added the -- you added the other telephone --

9      **A.     Right.**

10     Q.    -- number?  Okay.  And then May 1st, 2011,

11   you added the family plan?

12     **A.     Yeah.  Then we changed it to the family**

13   **plan.**

14     Q.    Got it.

15     **A.     Because it was a better rate.**

16     Q.    So then before -- before that change in May

17   of 2011 --

18     **A.     Uh-huh (affirmative).**

19     Q.    -- what -- what was the plan?  Is that the

20   plan, then, that it looks like we're looking at here

21   on this -- this first page here, October 25th, 2010?

22     **A.     Yeah.  At one time -- at this particular**

23   **time, it looks like I had the -- the My -- My Favs,**

24   **my minutes -- let's see, was that -- yeah, I -- I**

25   **believe I -- I had unlimited minutes, to the best of**

1    my memory at that time.  Is that -- let's see.  I

2    mean, I don't remember the exact name of -- of the

3    plan.  I know I -- I did have the unlimited minutes,

4    because I've, you know, changed my plans a couple of

5    different times.

6         Q.   Okay.  So, as far as -- as far as you

7    remember, then, from it looks like September 25th,

8    2010, through now, you've always had unlimited

9    minutes?

10        A.   Yes.

11        Q.   Okay.  And I'm just -- I'm hoping, then,

12   that you can help me figure out one thing that I was

13   confused by.  Let's see here.  Make sure I'm going

14   to hand you the right document.  So I'm going to

15   hand you what has been marked as Exhibit Number 3.

16   And do you remember seeing those before?

17        A.   Yes.

18        Q.   It's the responses to the defendant's first

19   set of discovery requests, is that right?

20        A.   Yes, I -- I see, I'm looking at that.

21        Q.   So, if you look at Interrogatory No.11, the

22   question is there, "Identify the costs associated

23   with the wasted or lost cell phone air time from the

24   telephone calls plaintiff allegedly received from

25   PRA."  Do you see that.  Looks like it's on Page 9

```
 1    there?
 2        A.   Uh-huh (affirmative).   At the bottom?
 3        Q.   Yeah.
 4        A.   Uh-huh (affirmative).
 5        Q.   And so then in the response it says, "Each
 6    unlawful call..."   This is after some objections are
 7    made.   "Each unlawful call made by defendant used
 8    minutes and capacity of plaintiff's cellular
 9    telephone number, 404.784.5634.   The minutes so used
10    are set forth in the billing statements annexed to
11    the second amended complaint as Exhibit B.   These
12    unlawful uses by defendant resulted in plaintiff
13    being charged for air time which was unavailable to
14    her for lawful purposes."   Do you see all that?
15        A.   Yes.
16        Q.   Okay.   So, I think we just went over
17    Exhibit B, and -- and you indicated that there is
18    unlimited minutes then?
19        A.   Yes.
20        Q.   And that does seem -- your testimony that
21    they are unlimited minutes does seem consistent with
22    your response to Interrogatory No. 8.
23             MR. HILL:   I'm sorry.   Say that again.
24    BY MS. ROBBINS:
25        Q.   It does seem consistent with the response
```

1    to Interrogatory No. 8, which is on Page 8,

2    conveniently.  It says that plaintiff pays a flat --

3    flat monthly fee for her cellular telephone number?

4       **A.    Yes, that's -- that's right.**

5       Q.   Okay.  So then, to me, I'm confused.  What

6    -- what is meant here then by the response to

7    Interrogatory No. 11, where we're talking about

8    wasted cell phone minutes?

9       **A.    I'm not an attorney, but I assume that that**

10   **means that that is air time that was used to my cell**

11   **phone unlawfully.**

12      Q.   So --

13      **A.    And it did not increase the amount of my**

14   **bill, but it was still air time used.  I think I'm**

15   **saying that correctly.**

16      Q.   So -- yep, so then you were not -- you did

17   not pay extra on your bill as a result of the calls

18   from PRA, is that right?

19      **A.    That is right.**

20      Q.   And -- and you can feel free to look back

21   at Exhibit B if you want, but of those ten calls, I

22   took a look and I counted up the -- the minutes on

23   there for each of those calls, and it looks like

24   there's only a to -- total 11 minutes for those.

25   So, I just want to make sure that I'm clear.  So

1   your case here in your -- your complaint about the

2   wasted or lost cell phone time, we're talking then

3   about 11 minutes, is that right?

4       **A.    Yes.  We're talking about the Telephone**

5   **Consumer Protection Act that that falls under, my**

6   **lawsuit.**

7       Q.   Okay.  And so, over the course of these ten

8   calls, then, we are just talking about 11 minutes of

9   lost cell phone time?

10          MR. HILL:  Let me interpose one objection

11  here.  We are talking about 11 minutes on these

12  T-Mobile statements, but we are also talking about

13  what she just said which is the violation of the

14  Telephone Consumer Protection Act.

15          MS. ROBBINS:  So what -- what is your

16  objection?

17          MR. HILL:  My objection is you're sort of

18  mischaracterizing where -- I -- I don't -- I guess

19  I'm confused.  Maybe it's not an objection, it's a

20  request for clarification.  Are you -- are you going

21  to damages, where is this going?

22          MS. ROBBINS:  I am entitled to ask the

23  questions.

24          MR. HILL:  Sure, but she is entitled to a

25  fair question.  I'm not sure that -- that what

1  you're characterizing is accurate.  That's my

2  objection.

3          MS. ROBBINS:  Okay.  So would you say --

4  and you can feel free to count up the -- the minutes

5  that are on those bills.

6          MR. HILL:  I'm not talking about that.  Go

7  ahead.  I'll let you answer.

8  BY MS. ROBBINS:

9      Q.  All right.  Where -- over the course of the

10 ten calls that are alleged in the complaint, and you

11 can feel free to check me, but, those calls only

12 relate to -- then to 11 minutes of air time, is that

13 right?

14     **A.  Yes.**

15     Q.  And you were not charged extra for any of

16 those 11 minutes?

17     **A.  That is correct.**

18     Q.  In your own words, what's the class that

19 you're seeking to represent in this case?

20     **A.  It's a class action lawsuit, and I am -- I**

21 **want to represent the -- all the other people that**

22 **have got -- gotten phone calls on their cell phone**

23 **without their permission and I would just like to**

24 **see that stop for myself and for the tens of**

25 **thousands of other people that have gone through**

1   what I've gone through.

2       Q.   And are you talking then about calls just

3   from PRA?

4       A.    Of harassment?

5       Q.   When I ask who it is that you're seeking to

6   represent, all right, and you said that you're --

7   you're trying to represent all of the people who

8   have received calls on their cell phones without

9   their consent, is that right?

10      A.    Under the class action.

11      Q.    Okay.

12      A.    Uh-huh (affirmative).

13      Q.   And are you, then, limiting that just to

14  people who received calls from PRA?  And, you

15  know --

16          MR. HILL:  Yeah, are you asking about the

17  sub of the class?  It's just a PRA class, that's it.

18  We're not suing any other debt collector.

19  BY MS. ROBBINS:

20      Q.   And that's your understanding as well?

21      A.    Yes.

22          MR. HILL:  Good question.

23  BY MS. ROBBINS:

24      Q.   So, in your mind, can you just take me

25  through the -- what you consider to be the criteria

1    that any person would have to meet to be a member of

2    the class that you're trying to represent?

3            MR. HILL:  Wait a minute.  I'm going to

4    object to that question.  That's -- that's asking

5    for a legal conclusion.  She's not qualified to

6    answer that.

7    BY MS. ROBBINS:

8        Q.   Just under your understanding?

9            MR. HILL:  I'm going to object.

10           MS. ROBBINS:  Okay.  And you can answer.

11           MR. HILL:  You're asking her to identify

12   criteria of Rule 23?

13           MS. ROBBINS:  No.

14           MR. HILL:  She can't do that.

15   BY MS. ROBBINS:

16       Q.   I'm not asking about the criteria of Rule

17   23, I'm just asking for what kinds of factors do you

18   think would make somebody part of the class that you

19   seek to represent?

20       A.   I'm not a lawyer, but to the best of my

21   understanding, I believe it will qualify people who

22   have had a debt longer than six years, and -- that

23   is outside the statute of limitations, that get

24   phone calls on their cell phone that were not

25   auth -- authorized.

1        MR. HILL:  I just eat my last statement.

2        THE REPORTER:  I'm sorry?

3        MR. HILL:  I said I just eat my last

4    statement.  That was good.

5    MS. ROBBINS:

6        Q.   Do you know of anyone else -- this is just

7    a Georgia class that you're seeking to represent, is

8    that right?

9        A.   Yes.

10       Q.   And do you know of anyone else in Georgia

11   that you think are class members?

12       A.   No.

13       MR. HILL:  You mean, know personally?

14       A.   No, I don't know personally.

15   BY MS. ROBBINS:

16       Q.   Correct.  Okay.  I'm turning back to what

17   was marked as Exhibit Number 1.

18       A.   Okay.

19       Q.   All right.  And I'm just going to go

20   through and ask you some clarifications in here.  If

21   you could turn to -- looks like Page 7, the

22   paragraph numbered 16.  Are you there?

23       A.   Yes.

24       Q.   Before I start asking you questions.  It

25   says, "Plaintiff did not list a cellular phone

```
 1    number in any" -- excuse me, "in or on any documents

 2    at any time during the transaction that resulted in

 3    the purported debt.  Plaintiff also did not verbally

 4    provide defendant or any other party with a cellular

 5    phone number at any time during the transactions

 6    that resulted in the purported debt or thereafter."

 7            So, I'm thinking about that second sentence

 8    there and there are a couple of commas that threw me

 9    off.  I just want to double check with you.  So, did

10    you ever provide, to anyone, your cellular phone

11    number, any time after you entered into the MBNA

12    credit card agreement?

13            MR. HILL:  I'm not going to object but

14    that's a different question than what is stated

15    on -- on the complaint.

16            MS. ROBBINS:  And that's why I'm asking it.

17            MR. HILL:  Okay.  Yeah.  Sure.  You're

18    entitled to that.

19    BY MS. ROBBINS:

20        Q.   Because I think -- because I think -- and I

21    think hopefully you can read -- you can read that

22    paragraph and understand where I'm coming from.

23    I -- I don't think that -- I think that this

24    paragraph could be interpreted to mean that you

25    never provided your cell phone number to anyone
```

1   after your MBNA credit card agreement was entered

2   into.  And I just want to see if that's at all what

3   you understand to be the case?

4       **A.   Okay.  The cell phone number that I have**

5   **right now, that I've had since January 4th of 2008?**

6       Q.   Any cell phone number?

7           MR. HILL:  Okay.  Let me see if I

8   understand the question.  I got lost in there.

9   BY MS. ROBBINS:

10      Q.   I guess maybe -- maybe -- well, let's just

11  do this.  When you read that paragraph, what does

12  that -- what does that mean to you, Ms. Bartlett?

13      **A.   I really don't understand it 100 percent.**

14  **But, you know, I guess, it's saying that I did not**

15  **verbally -- I really don't understand that.**

16      Q.   I'm glad I'm not alone.  So, then, I just

17  want to make sure.  So did you ever -- and I

18  apologize if it feels like we're going a little bit

19  backwards, but I -- this paragraph just threw me off

20  and I want to make sure I understand.  Did you ever

21  provide a cell phone number to MBNA with your credit

22  card application on your MBNA credit card?

23      **A.   No, because I did not have a cell phone at**

24  **that time.**

25      Q.   Okay.  Did you ever provide either PRA or

1    MBNA with your cell phone number after that time?

2           MR. HILL:  Let me interpose an objection.

3    BY MS. ROBBINS:

4       Q.   You can still answer.

5           MR. HILL:  It's a multipart objection.

6    Number one, it's been asked and answered.  Number

7    two, it's a misleading question because it suggests

8    that that provides permission within the meaning of

9    the statute and it does not.  And that's all my

10   objections.

11   BY MS. ROBBINS:

12      Q.   Okay.  So do you need me to ask Lisa to

13   read -- can you read that back?

14           (The reporter read back the requested

15   portion of the transcript.)

16      **A.    After the time of the original debt?**

17   BY MS. ROBBINS:

18      Q.   Yes.

19      **A.    No.  No, not to my knowledge.**

20      Q.   If you will turn to paragraph No. 18.  And

21   then looking at the last part there, on Page 9, it's

22   three lines down.  And then starting with, "In

23   Defendant's calls to Plaintiff's cell phone."  Do

24   you see where I am?

25      **A.    Okay.**

1    BY MS. ROBBINS:

2        Q.    So you see it?   Okay.

3        **A.    Uh-huh (affirmative).**

4        Q.    It says "In Defendant's calls to

5    Plaintiff's cell phone, there was a pause after

6    plaintiff first answered the call and before a live

7    human voice responded."  Do you -- first of all, I

8    guess, is that -- is that accurate as to what you

9    remember from the calls from PRA?

10       **A.    Yes.**

11       Q.    Now, earlier you said you could only

12   remember a couple of calls.  Do you remember about

13   how many times this happened where there was a pause

14   from when you answered to when someone responded?

15       **A.    Each time they called, there was always a**

16   **three to five second pause before anyone came on the**

17   **line.**

18       Q.    There was always a three to five second

19   pause?

20       **A.    Yes, to the best of my memory.  And I would**

21   **have to say hello a time or two.**

22       Q.    Okay.  Do you -- do you remember how many,

23   though, specific times you -- this occurred?

24       **A.    I don't remember exactly how many times**

25   **that it -- it occurred.  You know, sometimes, to the**

1    **best of my memory, I would hang up and they would**

2    **say it was PRA, you know, once they came on the**

3    **line.**

4         Q.   And -- and that was always after a pause or

5    no?

6         A.   **To the best of my memory, it was always**

7    **after a pause.**

8         Q.   So you don't remember any time when there

9    was not a pause between when you said hello and

10   somebody responded?

11        A.   **To the best of my memory, I -- I always**

12   **remember a pause.  To the best of my memory.**

13        Q.   What -- is there a -- a problem with there

14   being a pause in your mind?

15        A.   **Well, from what I understand, PRA uses the**

16   **auto dialing system.  And I'm not an attorney, but**

17   **from my understanding, that is not legal.**

18        Q.   Did you have a -- a reaction, though, when

19   there was a pause, personal reaction, outside of the

20   legal context, just from your personal experience,

21   did you think anything of the pause?

22        A.   **I was just wondering why nobody came on the**

23   **line.**

24        Q.   Would you say that you were injured or

25   harmed in any way by that pause?

1          MR. HILL:  Same objection.

2  BY MS. ROBBINS:

3     Q.   You can answer.

4     **A.   No.**

5     Q.   Would it surprise you to know that, through

6  PRA's customer service practices, they record

7  telephone calls?

8     **A.   No, it wouldn't surprise me.**

9     Q.   And, there are some recordings of the phone

10  calls that you had.  Would it surprise you to know

11  that there is no pause in those recordings?

12    **A.   Yes, it would surprise me.**

13    Q.   I think we covered that paragraph.  If you

14  can turn to Page 11.  In paragraph 28, there is an

15  indent -- indented single-spaced paragraph.  Do you

16  see that?  Do you see where I am?

17    **A.   Uh-huh (affirmative).**

18    Q.   Okay.  And it's the proposed class

19  definition.  Is that your understanding as well?

20    **A.   Yes.**

21    Q.   In the class definition it says that it

22  includes -- it says -- I'll just read it.  There is

23  no easy way to rephrase that.

24          MR. HILL:  No, there isn't.

25  BY MS. ROBBINS:

1      Q.   "All persons within the state of Georgia

2   who, on or after October 28th, 2010, until the final

3   disposition of this case, parentheses, class,

4   period, received a nonemergency telephone call from

5   PRA, LLC, to a cellular telephone, through the use

6   of an automatic telephone dialing system, or an

7   artificial or prerecorded voice, and who did not

8   provide prior express consent for such calls during

9   the transaction that resulted in the debt owed."

10          Now, I'm looking in particular at the part

11  that says or an artificial or prerecorded voice.

12  Did you ever, in your calls that you received from

13  PRA, hear an artificial or prerecorded voice?

14      A.   **Not to my memory.**

15      Q.   Did you ever receive any voice mail

16  messages from PRA on your cell phone?

17      A.   **Not to my memory.**

18      Q.   And you said that you thought you asked PRA

19  one time to stop calling you, is that right?

20      A.   **Yes, to the best of my memory.**

21      Q.   Did -- did you, at that time, ask them --

22  or let me start over.  Did you ever ask -- tell PRA

23  that they were calling your cell phone number?

24      A.   **I don't remember if I told them, You're**

25  **calling my cell phone number.**

1      Q.   Before you contacted Mr. Turner about

2    representing you in this case, had you talked to any

3    other attorneys about this potential case at all?

4      A.   **No, I had not.**

5      Q.   And after you contacted Mr. Turner, did you

6    contact any other attorneys about possibly

7    representing you in this case other than Mr. Hill?

8      A.   **No.**

9      Q.   Earlier you said that you couldn't remember

10   whether you had called PRA, is that right?

11     A.   **I said I wasn't sure.  Sometimes if I got a**

12   **number and I wasn't familiar with the number, if I**

13   **may have called that number back.**

14     Q.   And -- and you said you couldn't remember,

15   then, any particular time where you called a number

16   back and it was PRA, is that right?

17     A.   **I said I possibly -- had possibly done that**

18   **before, because...**

19     Q.   But you have no independent recollection of

20   it?

21     A.   **I guess that would be the right answer.  I**

22   **had a lot of different numbers coming in.**

23     Q.   I'm going to throw out a couple of dates

24   and you let -- you let me know if any of these

25   are -- are ones that you remember may have been to

1   PRA, okay?  Do you remember about November 16th, in

2   the morning calling a phone number and having it be

3   PRA that picked up?

4       A.   No.

5       Q.   How about January 7th, 2011, in the

6   morning?

7       A.   I don't.  I wasn't documenting any of that.

8       Q.   And then, what about -- it looks like on

9   February 19th, in the afternoon, do you remember

10  that?

11      A.   Of?

12      Q.   2011.

13      A.   No, I don't.

14      Q.   It looks like on February 23rd, you called

15  PRA ten times in two hours.  Do you remember any of

16  that?

17      A.   No, I do not.  I called PRA?

18      Q.   Yes.

19      A.   No, I do not remember that.

20           MS. ROBBINS:  If you can just give me two

21  minutes to just walk through my stuff quickly, and

22  we'll just go off the record.

23      A.   Okay.

24           VIDEOGRAPHER:  Stand by, please.  The time

25  is approximately 11:26 A. M.  We are off the record.

```
 1            (A brief recess was taken.)
 2            VIDEOGRAPHER:  Stand by, please.  The time
 3    is approximately 11:34 A. M.  We are on the record.
 4    BY MS. ROBBINS:
 5        Q.  Ms. Bartlett, I think we'll be able to
 6    finish up pretty quickly here.  I'm going to hand
 7    you what has been marked as Exhibit No. 4.  Do you
 8    recognize that document?
 9        A.  Yes, I -- yes, I -- yes.  I'm assuming it's
10    exactly what is in that other documentation.  I
11    mean --
12        Q.  Do you -- do you -- well, what is this
13    document?
14        A.  It is just stating that we are filing a
15    class action lawsuit against Portfolio Recovery
16    Associates.
17        Q.  Do you remember when this -- it says, "For
18    immediate release," there at the top.  Do you
19    remember when this was released?
20        A.  Do I remember what day this was submitted
21    to me?
22        Q.  When -- when it was -- would you agree --
23    so it looks like a -- a press release of some sort,
24    is that right?
25        A.  I don't -- I don't know.
```

```
 1        Q.   Okay.  When -- when you said that this

 2   was -- I think you said announcement or after the

 3   suit was filed, is that the word you used

 4   announcement or?

 5   BY MS. ROBBINS:

 6        Q.   Okay.  So, do you know what this document

 7   was used for?

 8        A.   It's just documentation for the lawsuit for

 9   court purposes.  It is just the viol -- it's just

10   stating the violations --

11             MR. HILL:  Let me caution you -- let me

12   cation you not to guess.

13        A.   Okay.  Okay.  I --

14             MR. HILL:  If you don't know what it's for,

15   you don't know what it's for.  If you do, you do.

16        A.   Okay.

17   BY MS. ROBBINS:

18        Q.   So you don't know what it's for?

19        A.   Yes, it's information about the lawsuit.

20        Q.   Okay.

21             MR. HILL:  Okay.

22   BY MS. ROBBINS:

23        Q.   All right.  Did you participate at all in

24   putting this document together?

25        A.   Are you asking did they ask me questions
```

1    **and I answered?  Did -- you know -- I don't know**

2    **exactly.**

3         Q.   And, well, so, do you -- do you remember

4    ever, with -- with respect to this particular

5    document, ever being involved?  Yes, I guess, if

6    that means to you -- did they ask you questions for

7    this document and you answered, then -- then I guess

8    my question to you is -- is, did that happen?

9         **A.   Yes.  They asked me questions and I**

10   **answered to the best of my memory.**

11        Q.   Okay.  Let's see.  If you take a look at

12   the last sentence of the second paragraph, it says,

13   "The plaintiff never consented to those calls, nor

14   did she provide PRA with her telephone number."  Do

15   you mean you -- you never provided PRA with any

16   telephone number or do you mean you never provided

17   PRA with your cell phone number?

18        **A.   To the best of my knowledge, I never gave**

19   **them any of my phone numbers.  To the best of my**

20   **memory.**

21        Q.   Do you still receive any documents in the

22   mail related to your MBNA credit card account?

23        **A.   No.**

24        Q.   Do you still have in your possession any

25   documents related to your MBNA credit card account?

```
 1       A.   No, I do not.

 2            MS. ROBBINS:  I have no further questions.

 3            MR. HILL:  And I don't have any at all.

 4            One thing while we're still on the record

 5   that I would -- and -- and I don't know right off

 6   the top of my head sitting right here, Jennifer, the

 7   scope of our earlier discovery, but if you have

 8   recordings, this is an official request for me to

 9   listen to them.

10            MS. ROBBINS:  Yeah, if you would just write

11   me an e-mail --

12            MR. HILL:  I'll do that.

13            MS. ROBBINS:  -- about that.

14            MR. HILL:  I'll be happy to do that.

15            MS. ROBBINS:  And then, with regard to the

16   scope of the litigation, if there come to be

17   allegations as to calls before October 28, 2010 --

18            MR. HILL:  Sure.

19            MS. ROBBINS:  -- then we'll be --

20            MR. HILL:  You will be the second one to

21   know.

22            MS. ROBBINS:  Okay.  And to that extent,

23   then, I wouldn't, then, close the deposition of

24   Ms. Bartlett for that purpose.

25            MR. HILL:  Fair enough.
```

```
 1              MS. ROBBINS:  All right.

 2              MR. HILL:  Fair enough.  I would -- I would

 3     understand.

 4              With regard to the tapes, are they in files

 5     that you can e-mail?

 6              MS. ROBBINS:  I can double check.

 7              MR. HILL:  Okay.  Because that would do.

 8     And I'm not going to say 100 percent that you

 9     haven't complied with our discovery, because I don't

10     know if we specifically asked for them, but

11     generally I asked.  But I think those are very

12     relevant and I need to hear them.

13              MS. ROBBINS:  Again, can you just send me

14     an e-mail?

15              MR. HILL:  I'll do that.

16              VIDEOGRAPHER:  Can I conclude?

17              MS. ROBBINS:  Yes.

18              VIDEOGRAPHER:  This concludes the

19     videotaped deposition of Kimberly Bartlett.  The

20     time is approximately 11:40 A. M.  We are off the

21     record.

22              (Deposition concluded at 11:40 A.M.)

23              (Signature reserved.)

24

25
```

```
1                        CERTIFICATE

2

3   STATE OF GEORGIA:

4   COUNTY OF FULTON:

5

6            I hereby certify that the foregoing

7   transcript was taken down, as stated in the caption,

8   and the colloquies, questions, and answers were

9   reduced to typewriting under my direction; that the

10  transcript is a true and correct record of the

11  evidence given upon said proceeding.

12           I further certify that I am not a relative

13  or employee or attorney of any party, nor am I

14  financially interested in the outcome of this

15  action.

16           This the 26th day of August, 2011.

17

18

19

20              Lisa Brantly

21  _____

22          LISA BRANTLY, RPR, CCR-2666

23

24

25
```

Bartlett vs. Portfolio Recovery          Kimberly Bartlett                    8/24/2011

**WORD INDEX**

**< 0 >**
**0624**  1:1

**< 1 >**
**1**  1:1  2:5  38:14
41:18  60:17
**10**  36:20  38:12,
17  44:15, 19  49:6
**100**  33:5  40:4
62:13  74:8
**11**  1:1  40:10
48:4, 5  55:7, 24
56:3, 8, 11  57:12,
16  66:14  69:25
70:3  74:20, 22
**12**  36:21  44:15
**1201**  1:1
**14**  4:14
**15**  4:14  44:15
**16**  60:22
**16th**  69:1
**18**  63:20
**1960**  7:18
**1978**  15:12
**1998**  26:21
**19th**  69:9
**1st**  12:6  51:22,
23, 25  52:7, 10

**< 2 >**
**2**  2:6  48:3  49:4
**20**  15:18  35:14
**200**  1:1
**2000**  19:22
**2001**  19:21, 22
29:21  38:25
39:3, 9  40:1
**2006**  40:9
**2008**  39:3, 21, 22,
24  40:17, 18, 23
62:5
**2009**  12:6, 12
**2010**  18:13, 17
21:19, 25  22:9
34:20  49:6, 13

50:12  52:21
53:8  67:2  73:17
**2011**  1:1  5:6
9:3  49:16  52:1,
10, 17  69:5, 12
75:16
**202**  3:7
**205.985.5099**  3:9
**207**  3:14
**23**  59:12, 17
**23rd**  69:14
**24th**  1:1  5:6
**25**  38:12
**25th**  49:13, 16
50:11  52:21  53:7
**26**  69:25
**265**  3:6
**2666**  1:1  75:22
**26th**  75:16
**28**  22:9  66:14
73:17
**2800**  4:7
**28th**  18:13, 17
20:23  21:19, 25
22:4  34:20  67:2

**< 3 >**
**3**  2:7  53:15
**30030**  3:15
**30101**  7:21
**34**  70:3
**35**  8:2
**35224**  3:8
**37**  4:14
**38**  38:17

**< 4 >**
**4**  2:8  38:14
48:4  70:7
**40**  1:1  5:2
74:20, 22
**403**  3:14
**404.377.4790**  3:16
**404.784.5634**
8:15  13:6  54:9
**4th**  40:17, 18, 23
62:5

**< 5 >**
**5**  2:14
**55402**  4:9
**5991**  7:20

**< 6 >**
**612.349.8711**  4:10
**678.200.8178**  9:2

**< 7 >**
**7**  60:21
**770.996.8623**
30:25
**7th**  69:5

**< 8 >**
**8**  54:22  55:1, 1
**800**  4:8

**< 9 >**
**9**  1:1  5:2  53:25
63:21
**90s**  26:12  28:14
**911**  50:15
**9th**  7:18  8:21
9:3  51:23  52:4

**< A >**
**A.M**  1:1  5:2
74:22
**able**  28:25  38:1
70:5
**account**  72:22, 25
**accurate**  35:7
44:1, 9, 10  57:1
64:8
**act**  17:5  56:5, 14
**ACTION**  1:1  2:8
17:2  23:23  43:7,
19  57:20  58:10
70:15  75:15
**Acworth**  7:20, 22
**added**  8:22
51:22  52:4, 8, 8,
11
**addition**  13:2

14:21  36:11
**additional**  48:14
**address**  7:19
8:4  12:18  13:25
24:21
**affirmative**  8:11
12:14  14:1, 17
15:1, 7  27:8
29:17  32:9
34:13, 22, 23
35:24  42:12, 14
50:17  51:1
52:18  54:2, 4
58:12  64:3  66:17
**afternoon**  69:9
**ago**  10:7  19:16
23:19  24:20
29:13  34:12
36:6  37:20  48:22
**agree**  28:15, 19
46:22  70:22
**agreement**  25:17
27:23  28:4, 8
61:12  62:1
**ahead**  6:8, 23
10:3  48:4  57:7
**ahold**  14:15
**air**  53:23  54:13
55:10, 14  57:12
**Alabama**  3:8
**Ale**  15:15
**allegations**  73:17
**allege**  21:17
22:24  47:15
**alleged**  57:10
**allegedly**  53:24
**alleging**  34:17,
17, 19, 21
**alluded**  21:16
**Amberlee**  8:12
11:16
**Amended**  2:5
42:3, 5, 8, 10, 16
43:14, 18  54:11
**amount**  55:13
**animals**  35:21
**ANNE**  3:11
**annexed**  54:10

Bartlett vs. Portfolio Recovery          Kimberly Bartlett                     8/24/2011

**announcement**
71:2, 4
**ans** 25:8
**answer** 6:18
17:19 22:2, 15
25:10 32:21
43:16 57:7 59:6,
10 63:4 66:3
68:21
**answered** 63:6
64:6, 14 72:1, 7,
10
**answering** 31:16
**answers** 43:11
75:8
**anybody** 8:7
11:19 13:5, 12
30:9 51:9, 10, 14
**anymore** 36:19
37:2, 5, 19
**apologize** 62:18
**APPEARANCES**
3:1  4:1
**application** 41:3,
7 62:22
**applications**
31:11
**applied** 24:22, 25
25:20 31:22 32:1
**apply** 23:25
24:13
**applying** 31:20
**appreciate** 26:6
**approximately**
5:2 38:12, 17
69:25 70:3 74:20
**artificial** 67:7, 11,
13
**asked** 28:3, 7
29:8 33:15 37:1,
18 41:5, 7 43:15
63:6 67:18 72:9
74:10, 11
**asking** 14:14
15:3 58:16 59:4,
11, 16, 17 60:24
61:16 71:25

**assert** 22:8
**associated** 53:22
**ASSOCIATES**
1:1  5:6, 13  6:5
16:18, 20 70:16
**assume** 25:5
28:13 31:23 55:9
**assuming** 47:18,
21 70:9
**Atlanta** 1:1, 1
7:23
**Atlantic** 1:1
**attached** 4:17
**Attorney** 3:4
18:11 19:10
36:18, 23 46:18
55:9 65:16 75:13
**Attorneys** 4:5
17:9, 12, 15 23:9
42:1 43:2 46:10
48:8 68:3, 6
**August** 1:1 5:6
75:16
**auth** 59:25
**authorized** 59:25
**auto** 65:16
**automatic** 67:6
**Avenue** 3:14 4:8

**< B >**
**back** 20:24 22:7,
12 26:2 32:18
38:19 43:6 45:9
50:3 55:20
60:16 63:13, 14
68:13, 16
**backwards** 62:19
**bad** 26:20 27:20
**balance** 27:17
28:11, 16 33:22,
25 34:10 35:11
**BARTLETT** 1:1, 1
5:4, 5, 16, 21
7:16 8:12 38:19
41:24 62:12
70:5 73:24 74:19

**basically** 13:3
14:23 15:2
16:11 31:9
**basis** 9:13 21:25
**Bayside** 7:20
**began** 20:22
21:18
**beginning** 5:3
**behalf** 1:1 3:2
4:2 5:12
**believe** 10:22
12:8 15:24
18:11, 19 27:15
29:18, 20, 21
30:22 32:3
34:11, 14 41:25
42:7, 7, 8 43:25
47:1, 3 49:5
52:25 59:21
**best** 10:25
18:20 21:23
22:15 27:6
28:13 29:21
31:13 32:3
34:15 35:7, 13
36:8, 17, 18, 24
37:3 39:4 40:2,
13 41:8 43:1, 16,
21 44:2, 8, 10
46:11 47:16
49:25 52:25
59:20 64:20
65:1, 6, 11, 12
67:20 72:10, 18,
19
**better** 52:15
**big** 9:24 25:22
26:3
**bill** 8:22 49:13
55:14, 17
**billing** 54:10
**bills** 2:6 27:4
45:11, 24 48:8, 9,
14, 16, 17, 19
49:6 57:5
**birth** 7:17
**bit** 18:24 21:17

26:1 33:15 62:18
**bottom** 54:2
**boyfriend** 13:10,
15, 22 30:12
**Brantly** 1:1
75:22
**break** 33:14
38:10, 22 41:10
**brief** 38:13 70:1
**bring** 18:8
**bringing** 21:12
**brought** 6:4 17:1
**business** 15:19
16:11, 14 19:16

**< C >**
**cable** 12:10
**call** 11:20 12:22
13:16 16:21
32:17 33:10, 21
36:19, 25 37:2,
18, 23 45:4
51:10 54:6, 7
64:6 67:4
**called** 18:10
28:3 32:12, 14
33:2, 2, 25 64:15
68:10, 13, 15
69:14, 17
**calling** 21:18
32:5, 19 33:7
67:19, 23, 25 69:2
**calls** 13:7, 12, 14
16:17, 19, 19, 23,
24, 24, 25 18:10,
12, 23 19:2, 6, 8
21:2, 21, 25 22:3,
8, 24 34:9, 17, 18,
21, 25 35:3, 10
37:12 38:5, 7
44:12, 17, 21
45:22 46:19, 21,
23, 25 47:15, 18,
19 51:13 53:24
55:17, 21, 23
56:8 57:10, 11,
22 58:2, 8, 14
59:24 63:23

64:4, 9, 12  66:7,
10  67:8, 12
72:13  73:17
**capacity**  54:8
**caption**  75:7
**car**  45:1
**card**  22:25  23:3,
8, 13, 17, 20, 21
24:1, 14, 22, 25
25:17, 17, 20
26:7  27:13, 17,
19, 23  28:3, 7, 11,
17  31:10, 12, 20,
23  32:2, 6  33:11,
22, 25  34:10
35:11  36:14
37:18  40:7, 14,
22, 24  41:3
61:12  62:1, 22,
22  72:22, 25
**cards**  31:21
**care**  12:9
**carries**  7:5
**case**  16:16  17:1,
16  18:3  20:6
23:12  56:1
57:19  62:3  67:3
68:2, 3, 7
**casually**  30:10
**categories**  31:3
**cation**  71:12
**caution**  10:10
71:11
**CCR**  1:1  75:22
**cell**  8:16  10:22
11:14, 17, 24
13:2, 5, 16, 16
14:4, 7, 20  15:5
16:7, 24, 25
21:18  25:4
29:15, 16, 20, 25
30:9, 10, 13, 16
31:1, 19, 24  38:6,
8, 24  39:2  40:1,
15, 16  41:3, 6
44:13, 18  45:4, 7,
11, 22, 23, 25
48:21  50:20, 22

53:23  55:8, 10
56:2, 9  57:22
58:8  59:24
61:25  62:4, 6, 21,
23  63:1, 23  64:5
67:16, 23, 25
72:17
**cellular**  54:8
55:3  60:25  61:4,
10  67:5
**Center**  1:1
**Certainly**  24:8
**CERTIFICATE**
75:1
**certify**  75:6, 12
**change**  52:16
**changed**  51:24
52:12  53:4
**changes**  27:23
28:4, 8  44:5
**characterizing**
57:1
**charged**  54:13
57:15
**check**  49:7
57:11  61:9  74:6
**circled**  46:16
**Ciresi**  1:1  4:6
5:12
**CIVIL**  1:1
**claims**  21:6  22:8
**clarification**  56:20
**clarifications**
60:20
**class**  2:8  17:1, 5,
14  21:9, 13  22:3,
4  57:18, 20
58:10, 17, 17
59:2, 18  60:7, 11
66:18, 21  67:3
70:15
**clean**  6:21  19:17
**cleaning**  16:3, 8
19:16
**cleans**  19:15
**clear**  18:24
38:23  55:25

**clip**  50:17
**close**  73:23
**collect**  22:25
**collector**  29:4, 9
33:7, 10, 21, 24
34:6, 14  58:18
**colloquies**  75:8
**come**  73:16
**comes**  26:1
**coming**  18:1
61:22  68:22
**commas**  61:8
**committed**  26:21
**communication**
13:4
**communications**
17:12  20:2, 22
**companies**  31:20
**company**  28:3, 7
33:13  40:14
**Complaint**  2:5
21:17  22:23
34:16  42:3, 6, 8,
10, 16  43:7, 9, 14,
19  54:11  56:1
57:10  61:15
**complied**  74:9
**comprise**  45:20
**computer**  12:10
**concerning**  16:21
**concerns**  14:25
**conclude**  74:16
**concluded**  74:22
**concludes**  74:18
**conclusion**  59:5
**confused**  51:8
53:13  55:5  56:19
**consent**  58:9
67:8
**consented**  72:13
**consider**  21:12
58:25
**considered**  19:6
**considering**  19:5
**consistent**  54:21,
25
**consulted**  17:15

**Consumer**  56:5,
14
**contact**  14:13
16:8  19:12, 14
37:5  68:6
**contacted**  19:10,
25  30:14  68:1, 5
**contacts**  45:7
**context**  65:20
**continue**  6:24
**CONTINUED**  4:1
18:10, 22  19:1, 8
**continues**  17:17
**conveniently**  55:2
**conversation**
35:16  36:16
**copy**  41:20
46:15
**correct**  8:18
20:7  21:8  39:6
45:2  46:3  47:4
51:12  57:17
60:16  75:10
**correctly**  31:16
55:15
**corresponds**
47:14
**costs**  53:22
**COUNSEL**  3:1
4:1, 16  5:8, 14
**count**  39:19
47:1  51:10, 14
57:4
**counted**  55:22
**counting**  39:23
47:3, 8
**county**  50:15
75:4
**couple**  6:11
9:14  22:18  35:1,
4  40:5  53:4
61:8  64:12  68:23
**course**  17:8
48:5  56:7  57:9
**COURT**  1:1  4:16
5:15  6:10  7:3, 7
48:17, 20  71:9
**covered**  66:13

**credit** 22:25
23:3, 8, 13, 20, 21
24:1, 14, 22, 25
25:17, 17, 20
26:7  27:13, 17,
19, 23  28:3, 7, 11,
17  31:10, 12, 20,
21, 23  32:2, 6, 6
33:10, 22, 25
34:10  35:11
36:14  37:17
40:7, 14, 22  41:3
61:12  62:1, 21,
22  72:22, 25
**criteria** 58:25
59:12, 16
**current** 7:19
8:14  13:25  39:20
**currently** 12:20
40:7
**customer** 66:6
**CV** 1:1

**< D >**
**damages** 56:21
**date** 5:6  7:17
18:9, 14  20:5
26:11  28:12, 19
33:23  34:5
35:17  40:24
49:13
**dates** 49:10
68:23
**daughter** 8:8, 12
11:15  13:8, 14,
18, 20  14:12, 25
35:21
**daughter's** 11:22
13:1  31:8
**day** 6:7  35:22
44:13, 18  70:20
75:16
**De** 3:14
**deal** 9:24
**debt** 16:21
22:25  23:3, 22
24:6  28:20, 22
29:4, 4, 9, 10

33:7, 10, 21, 24
34:6, 14  36:20
58:18  59:22
61:3, 6  63:16
67:9
**Decatur** 3:15
**December** 29:21
**decide** 18:7
19:14
**decided** 18:14,
17, 19  21:5
**Defendant** 1:1
4:2  54:7, 12  61:4
**Defendant's**
38:14  53:18
63:23  64:4
**definition** 22:3, 5
66:19, 21
**degree** 15:8
**depend** 40:16
**DEPOSITION** 1:1
4:17  5:4  7:10,
12  73:23  74:19,
22
**DESCRIPTION**
2:1, 3
**designer** 15:17
**details** 26:1, 24
**determined** 34:18
**dialed** 32:18
**dialing** 65:16
67:6
**Diane** 7:16
**different** 12:15,
19  14:3  25:13
39:2, 4, 8, 10, 16,
25  40:3, 5  46:20,
21  48:6  53:5
61:14  68:22
**direction** 75:9
**disclosure** 4:15
**discovery** 23:10,
12  53:19  73:7
74:9
**disposition** 67:3
**distinction** 40:19
**DISTRICT** 1:1, 1

**DIVISION** 1:1
**doc** 35:6
**document** 41:23,
25  42:25  43:2
53:14  70:8, 13
71:6, 24  72:5, 7
**documentation**
18:12  48:21
70:10  71:8
**documented**
18:12  21:20
**documenting**
22:20  35:6  69:7
**documents** 45:20
46:9  47:24
49:22  61:1
72:21, 25
**doing** 28:9  33:1
**double** 61:9  74:6
**drawing** 40:20
**Drive** 7:20
**dropped** 39:11
**duly** 5:17

**< E >**
**earlier** 34:19
64:11  68:9  73:7
**East** 3:6
**easy** 66:23
**eat** 60:1, 3
**eight** 13:19
44:19  47:1, 3
**either** 27:25
30:6  62:25
**else's** 11:2  30:9
**emergency** 14:13,
24  41:1
**employee** 75:13
**ended** 20:10
**entered** 61:11
62:1
**entire** 48:9
**entirely** 44:1
**entitled** 56:22, 24
61:18
**Esq** 2:14  3:12
**estimate** 10:9

20:21
**everybody** 45:7
**everyday** 9:13
**evidence** 75:11
**exact** 18:9, 14
20:5  26:11
28:12  34:4
35:17  36:16
40:24  46:15  53:2
**exactly** 18:6
19:22  26:8  39:5
64:24  70:10  72:2
**EXAMINATION**
2:13  5:19
**EXAMINATIONS**
2:12
**examined** 5:17
**excuse** 61:1
**EXHIBIT** 2:3
41:18  45:9, 10,
14, 20  48:3, 6, 25
49:4  53:15
54:11, 17  55:21
60:17  70:7
**EXHIBITS** 2:1
38:14  41:12
**expect** 17:16
**experience** 65:20
**expert** 12:11
**explain** 42:19
**express** 67:8
**extent** 73:22
**extra** 55:17
57:15

**< F >**
**factors** 59:17
**fail** 27:18
**failure** 27:18
**fair** 25:12  34:20
56:25  73:25  74:2
**falls** 56:5
**familiar** 68:12
**family** 31:4, 6
51:20, 24  52:11,
12
**far** 7:25  22:7, 12
32:19  34:17

| | | | |
|---|---|---|---|
| 39:*14*  43:*14* | **following**  45:*18* | **go**  6:*8, 11, 15, 23* | **harassment** |
| 53:*6, 6* | **follows**  5:*18* | 10:*3*  43:*6*  45:*16* | 16:*19*  58:*4* |
| **Favs**  52:*23* | **foregoing**  75:*6* | 50:*10*  57:*6* | **hard**  25:*1* |
| **February**  7:*18* | **forget**  29:*7* | 60:*19*  69:*22* | **harmed**  65:*25* |
| 8:*21*  9:*3*  51:*23* | **forgotten**  23:*8* | **goes**  48:*6*  49:*12* | **head**  6:*20*  18:*14* |
| 52:*2, 3, 4, 7*  69:*9,* | **form**  13:*3* | **going**  6:*11*  18:*8* | 22:*19*  47:*22*  73:*6* |
| *14* | **forth**  54:*10* | 35:*10, 22, 23* | **hear**  26:*22* |
| **fee**  51:*18*  55:*3* | **found**  23:*11* | 41:*10, 17*  49:*3* | 67:*13*  74:*12* |
| **feel**  41:*14*  55:*20* | **four**  15:*16*  32:*4* | 53:*13, 14*  56:*20,* | **heard**  5:*25* |
| 57:*4, 11* | 39:*25*  40:*10, 12,* | *21*  59:*3, 9*  60:*19* | **hello**  64:*21*  65:*9* |
| **feels**  62:*18* | *22*  47:*2* | 61:*13*  62:*18* | **help**  10:*14*  17:*8,* |
| **fewer**  10:*15* | **frame**  18:*24* | 68:*23*  70:*6*  74:*8* | *20*  41:*12*  42:*19* |
| **figure**  22:*2*  53:*12* | **FRANK**  4:*4*  5:*13* | **Good**  5:*21, 25* | 43:*6*  53:*12* |
| **FILE**  1:*1* | **free**  55:*20*  57:*4,* | 38:*9*  58:*22*  60:*4* | **helped**  19:*16, 17* |
| **filed**  20:*19*  43:*7,* | *11* | **goodness**  44:*14* | **Henry**  3:*12* |
| *19, 23*  71:*3* | **friend**  8:*23* | **gotten**  32:*16* | 19:*13, 14, 17* |
| **files**  74:*4* | **friends**  31:*5, 6* | 57:*22* | **hereto**  4:*17* |
| **filing**  2:*8*  19:*6* | **friend's**  9:*22* | **gracious**  44:*14* | **Hi**  5:*22* |
| 20:*4, 10*  70:*14* | **front**  42:*2* | **graduated**  15:*10* | **high**  15:*10, 13* |
| **fill**  11:*21*  14:*11* | **full**  7:*15*  28:*20* | **Greenhouse** | **highest**  15:*8* |
| **final**  67:*2* | **FULTON**  75:*4* | 15:*24* | **HILL**  3:*3, 5*  5:*10,* |
| **financially**  28:*25* | **Funny**  49:*1* | **ground**  6:*11* | *10*  10:*10*  17:*20,* |
| 75:*14* | **further**  73:*2* | **group**  17:*6, 8* | *24*  20:*6*  22:*1, 10,* |
| **find**  18:*11*  19:*10* | 75:*12* | **groups**  31:*7* | *15*  24:*4, 9*  25:*7* |
| 23:*7* | | **guess**  10:*3, 11,* | 30:*5*  31:*14* |
| **Fine**  5:*24*  10:*12* | **< G >** | *12*  11:*20*  13:*21* | 32:*21*  34:*22* |
| 31:*18, 18*  34:*23* | **general**  18:*1* | 15:*16*  20:*13* | 37:*10*  41:*14, 20* |
| 41:*14*  47:*8* | 35:*18* | 21:*8*  23:*9*  25:*7* | 42:*19*  44:*6* |
| **finish**  70:*6* | **generally**  74:*11* | 31:*14*  34:*18* | 45:*16*  46:*23* |
| **first**  8:*5*  10:*3* | **GEORGIA**  1:*1, 1* | 42:*22*  43:*5*  45:*8* | 47:*5*  49:*1, 10, 14,* |
| 18:*7*  19:*12, 24,* | 3:*15*  7:*21, 22* | 50:*21*  56:*18* | *17*  50:*2, 24* |
| 25  20:*13, 22* | 60:*7, 10*  67:*1* | 62:*10, 14*  64:*8* | 54:*23*  56:*10, 17,* |
| 21:*17*  23:*6, 25* | 75:*3* | 68:*21*  71:*12* | *24*  57:*6*  58:*16,* |
| 24:*13*  29:*14, 16* | **getting**  29:*19* | 72:*5, 7* | *22*  59:*3, 9, 11, 14* |
| 30:*16*  33:*9, 20,* | 47:*5* | | 60:*1, 3, 13*  61:*13,* |
| *20*  37:*23*  38:*24* | **Gina**  8:*11* | **< H >** | *17*  62:*7*  63:*2, 5* |
| 39:*8*  42:*5*  43:*6* | **give**  7:*2*  8:*10* | **half**  15:*25* | 66:*1, 24*  68:*7* |
| 45:*9, 13*  48:*3* | 10:*8*  11:*23*  14:*9* | **hand**  25:*21* | 71:*11, 14, 21* |
| 50:*11, 15, 21* | 16:*13, 20, 20* | 41:*10, 17*  48:*8* | 73:*3, 12, 14, 18,* |
| 52:*21*  53:*18* | 20:*1, 21*  24:*9* | 49:*3*  53:*14, 15* | *20, 25*  74:*2, 7, 15* |
| 64:*6, 7* | 25:*9*  30:*24*  31:*2,* | 70:*6* | **hold**  25:*21*  37:*10* |
| **five**  10:*15, 15, 16* | *19*  37:*11*  43:*11* | **handed**  48:*7* | **holding**  22:*16* |
| 15:*23*  32:*4* | 48:*1*  69:*20* | **hang**  65:*1* | **home**  11:*22* |
| 40:*10, 12, 22* | **given**  11:*18* | **happen**  72:*8* | 14:*20*  16:*13* |
| 47:*2*  64:*16, 18* | 30:*11, 13*  43:*17* | **happened**  11:*6* | 30:*23*  44:*22, 23* |
| **flat**  55:*2, 3* | 51:*6, 8*  75:*11* | 33:*16*  35:*15* | **honest**  26:*5* |
| **floral**  15:*17* | **giving**  50:*3* | 52:*3*  64:*13* | 32:*21, 23* |
| | **glad**  62:*16* | **happy**  73:*14* | **Hoover**  3:*8* |

Bartlett vs. Portfolio Recovery            Kimberly Bartlett                          8/24/2011

Hopefully  6:14
41:12  61:21
hoping  53:11
hours  69:15
house  12:5, 13
25:5  30:18
huh  8:11  12:14
14:1, 17  15:1, 7
27:8  29:17  32:9
34:13, 22, 22
35:24  42:12, 14
50:17  51:1
52:18  54:2, 4
58:12  64:3  66:17
human  64:7
husband  26:21

< I >
idea  18:1  35:18
identify  5:8
53:22  59:11
immediate  70:18
important  41:14
Imports  15:22
includes  49:5
66:22
including  14:4
34:7
incoming  46:21
increase  55:13
indent  66:15
indented  66:15
independent
68:19
INDEX  2:12
indicated  54:17
individual  21:13
information
11:21  14:11
29:19  71:19
initially  48:11, 13,
15
injured  65:24
instance  14:19
31:4  36:11
interested  20:4
75:14

interpose  56:10
63:2
interpreted  61:24
Interrogatory
53:21  54:22
55:1, 7
interrupt  24:4
introduce  5:25
investing  18:2
involved  17:10
72:5

< J >
January  40:17,
18, 23  62:5  69:5
Jennifer  2:14
4:3  5:11  24:4
73:6
Jenny  6:1
JOF  1:1
John  4:12  5:7
July  49:16
jumps  48:4

< K >
Kaplan  1:1  4:6
5:12
keep  30:4  40:25
Kennesaw  7:24
Kim  10:10
KIMBERLY  1:1, 1
5:4, 5, 16  7:16
74:19
kind  12:25
47:10  51:6
kinds  59:17
knew  18:4  33:16
know  9:23  10:22,
22  11:13, 19, 24
13:10  15:2
17:19  18:5, 6, 9,
13  19:9, 10, 19,
21  20:9, 18, 23
22:20  23:5, 19
25:4  29:19
30:20, 22  31:18
32:1, 17  33:4, 14
35:6, 22, 23  38:4

39:2, 10, 13  40:4,
11, 24  43:17
44:3, 9, 15, 15, 19
46:9, 17  47:17,
20, 21  48:3, 4
50:23  51:6  53:3,
4  58:15  60:6, 10,
13, 14  62:14
64:25  65:2  66:5,
10  68:24  70:25
71:6, 14, 15, 18
72:1, 1  73:5, 21
74:10
knowing  33:3
knowledge  28:5
40:14  43:16, 21
44:2, 8, 10  47:16
49:25  63:19
72:18
Kozak  4:12  5:7

< L >
landline  10:1, 17
11:1, 7, 18  12:1,
15  30:17, 19
landlines  14:5
LaSalle  4:7, 8
late  26:12  28:13,
14
Lavelle  8:11
Law  3:4, 5, 13
4:5  7:3, 7
lawful  54:14
lawsuit  2:8  6:4
17:6, 10  18:8
19:7  20:3, 11, 19
21:7, 12  56:6
57:20  70:15
71:8, 19
lawyer  22:11, 16
47:19  59:20
lawyers  47:25
leads  17:8
learn  17:13
left  50:16
Legal  4:12  5:7
36:20  59:5

65:17, 20
Leon  3:14
letters  37:13
life  17:18  26:20
27:21  29:1
lightly  47:10
limitations  22:12
59:23
limiting  58:13
line  8:21  9:5
16:13  50:15, 25
51:22, 23  52:5
64:17  65:3, 23
lines  14:3  63:22
Lisa  1:1  6:17
63:12  75:22
list  60:25
listen  73:9
litigation  37:13
73:16
little  6:15  18:24
21:16  26:1
33:15  62:18
live  8:7  11:7
64:6
lived  11:2
lives  13:22
living  13:24
LLC  1:1  3:5, 13
5:6  67:5
LLP  1:1  4:6
long  8:4  12:3, 3
16:5  23:19  26:6
29:13
longer  10:16
36:6  37:20, 22
59:22
look  42:17  44:4
48:2  49:4  53:21
55:20, 22  72:11
looked  49:25
looking  17:11
31:3  52:20
53:20  63:21
67:10
looks  46:4, 20
48:2  49:12
52:20, 23  53:7,

25  55:23  60:21
69:8, 14  70:23
**lost**  53:23  56:2,
9  62:8
**lot**  35:22  68:22

**< M >**
**ma'am**  6:25  7:4,
8, 11, 14  9:4
25:15, 18
**mail**  24:17  25:20,
23  26:4  27:14
67:15  72:22
73:11  74:5, 14
**mails**  37:13
**main**  13:3
**March**  49:8
**Marcy**  15:22
**marked**  38:15
41:11, 17  48:24
49:3  53:15
60:17  70:7
**MasterCard**  23:16
**matter**  5:4
**MBNA**  23:5, 7, 12,
20, 25  25:17
27:17  29:3  32:5,
6, 12  33:6, 10, 22,
25  34:10  35:11
36:14  37:17
61:11  62:1, 21,
22  63:1  72:22, 25
**mean**  9:11
11:14  14:23
17:5, 14  19:1
21:3  26:16
27:18  35:20
39:8  42:20
46:23  47:8, 18,
20, 21  49:19, 24,
25  53:2  60:13
61:24  62:12
70:11  72:15, 16
**meaning**  63:8
**means**  42:23, 24
55:10  72:6
**meant**  19:4  55:6

**meet**  59:1
**member**  59:1
**members**  31:4
60:11
**memorize**  47:18
**memory**  18:21
21:23  26:18
27:7  28:5, 14
29:20, 22  31:13
32:3  33:8  34:15
35:4, 8, 13  36:9,
17, 18, 24  37:3
39:5  40:2  41:8
46:11  53:1
64:20  65:1, 6, 11,
12  67:14, 17, 20
72:10, 20
**mention**  49:1
**mess**  29:1
**messages**  67:16
**met**  19:17  20:9
**miles**  8:2
**Miller**  1:1  4:6
5:12
**mind**  8:25  42:23
58:24  65:14
**mine**  8:23  25:1
**minimum**  27:9, 11
**Minneapolis**  4:9
**Minnesota**  4:9
**minute**  59:3
**minutes**  51:5, 9,
11, 14  52:24, 25
53:3, 9  54:8, 9,
18, 21  55:8, 22,
24  56:3, 8, 11
57:4, 12, 16  69:21
**mischaracterizing**
56:18
**misleading**  63:7
**Mobile**  2:6  46:2
49:23  56:12
**mom**  19:15
**mom's**  14:24
**month**  27:4, 10
35:14  51:6, 18
**monthly**  55:3

**months**  20:25
22:18  36:3, 5, 6,
7  37:20, 22  48:6,
22  49:6
**morning**  5:21
6:15  49:9  69:2, 6
**mother**  30:19
**mother's**  30:18
**move**  38:23
**moved**  12:5, 13
**multipart**  63:5

**< N >**
**name**  5:7  7:15
8:20  9:5, 7  10:2,
4, 19  11:2, 8, 9
12:18  23:17
29:23  53:2
**named**  17:7, 7
**names**  8:10  31:3
**narrow**  10:11
**nature**  36:25
**need**  44:9  49:19
50:18  63:12
74:12
**needs**  16:12
**Netherland**  8:13
**never**  28:20
61:25  72:13, 15,
16, 18
**new**  31:21, 22
**NICOLE**  4:4  5:13
**nine**  47:3, 4
**No.11**  53:21
**nod**  6:19
**nonemergency**
67:4
**north**  7:23, 25
8:3
**NORTHERN**  1:1
**notes**  38:21
**Notice**  2:8
**notices**  27:16
29:3, 9
**November**  8:6
12:6, 12  69:1
**number**  8:14, 24,
24  11:19, 23, 24

12:2, 4, 7, 8, 20,
20  13:6, 6, 13
14:20, 21, 21, 24
15:4, 5  16:8, 9,
10  24:24  25:13
29:15, 16, 25
30:9, 14, 20, 21,
22, 23  31:1, 13,
19, 24  32:17
33:2  39:14, 20,
22  40:15, 23
41:3, 7, 18  45:23
52:10  53:15
54:9  55:3  60:17
61:1, 5, 11, 25
62:4, 6, 21  63:1,
6, 6  67:23, 25
68:12, 12, 13, 15
69:2  72:14, 16, 17
**numbered**  60:22
**numbers**  8:19
14:9, 18, 23  15:3
25:3, 14  39:3, 4,
18  40:1, 3, 5
46:4, 10  47:21,
22  68:22  72:19

**< O >**
**oath**  7:1, 5
**object**  24:7  59:4,
9  61:13
**objection**  24:5,
10  37:12  50:25
56:10, 16, 17, 19
57:2  63:2, 5  66:1
**objections**  54:6
63:10
**obtain**  48:19
**obtained**  48:16,
22  49:23
**occasion**  11:11
13:10, 15, 17
**occur**  43:13
**occurred**  64:23,
25
**OCGA**  4:14
**October**  18:13,
17  20:23  21:19,

25  22:9  34:20
49:6, 13  50:11
52:21  67:2  73:17
**Offices**  3:5, 13
**official**  73:8
**Oh**  34:8  39:10
42:16  44:14, 14
47:3, 11
**Okay**  6:2, 6, 7, 9,
13, 16, 22  9:1, 9,
14, 25  10:18, 24
11:10  12:12, 19,
25  13:24  15:6
18:25  19:4  21:5,
24  22:23  23:23
24:11  25:8  29:7
31:15  37:14
38:4  39:7, 17, 19,
23  40:6  41:19
43:12  45:18
47:11  48:24
49:17  50:8, 13
51:7, 8, 13, 17, 20,
25  52:2, 7, 10
53:6, 11  54:16
55:5  56:7  57:3
58:11  59:10
60:16, 18  61:17
62:4, 7, 25  63:12,
25  64:2, 22
66:18  69:1, 23
71:1, 6, 13, 13, 16,
20, 21  72:11
73:22  74:7
**old**  13:18  16:22
36:21
**once**  35:12
36:11  65:2
**ones**  20:25
46:15  68:25
**oOo**  2:11
**opportunity**  43:18
**orally**  6:19
**original**  42:9
63:16
**outcome**  75:14
**outside**  7:24

33:6  59:23  65:19
**owe**  40:25
**owed**  67:9

**< P >**
**PAGE**  2:13  47:9
48:3, 3, 4  50:7,
14  52:21  53:25
55:1  60:21
63:21  66:14
**pages**  45:10, 19
46:6  48:1, 9, 11,
14
**paid**  27:3, 5
28:20
**paragraph**  60:22
61:22, 24  62:11,
19  63:20  66:13,
14, 15  72:12
**Paralegal**  3:12
**parentheses**  67:3
**Parkway**  3:6
**part**  21:6  42:25
59:18  63:21
67:10
**partial**  27:6
**participate**  42:15,
20, 24  43:8  71:23
**particular**  14:18
18:20  35:22
51:2  52:22
67:10  68:15  72:4
**party**  61:4  75:13
**pause**  64:5, 13,
16, 19  65:4, 7, 9,
12, 14, 19, 21, 25
66:11
**pay**  27:18  28:22
35:11  38:1
51:17  55:17
**payment**  28:11,
15
**payments**  27:6, 9
**pays**  55:2
**Peachtree**  1:1
**penalty**  7:6
**people**  11:19
12:22  14:10

16:8  25:25  31:4,
7, 8  35:1  57:21,
25  58:7, 14  59:21
**percent**  33:5
40:4  62:13  74:8
**period**  67:4
**perjury**  7:6
**permission**  16:21
57:23  63:8
**person**  17:8
20:12, 13  35:12
36:10  59:1
**personal**  9:20
16:10  26:14
65:19, 20
**personally**  60:13,
14
**persons**  67:1
**person's**  30:13
**Phillip**  8:12
**phone**  2:6  8:16,
19, 22, 24  9:5, 8,
9, 12, 21  10:23
11:14, 17, 23
13:2, 5, 6, 13, 16,
16  14:3, 9, 20
16:10, 17, 18, 19,
23, 23, 24, 24, 25,
25  18:10, 23
19:2, 6, 8  20:15,
19  21:2, 18
24:24  25:2, 4, 6,
12, 14  29:15, 16,
20, 25  30:9, 10,
13, 16, 20  31:1,
19, 24  32:17
33:2  36:25  38:5,
6, 7, 8, 24  39:3,
20  40:1, 15, 17
41:3, 6  44:13, 18
45:4, 7, 11, 22, 23,
25  46:4, 19
50:20, 22  53:23
55:8, 11  56:2, 9
57:22, 22  59:24,
24  60:25  61:5,
10, 25  62:4, 6, 21,
23  63:1, 23  64:5

66:9  67:16, 23,
25  69:2  72:17, 19
**phones**  14:4, 7
39:10  58:8
**pick**  11:16  13:9
**picked**  69:3
**place**  11:1  38:10
**Plaintiff**  1:1  5:10
17:7  53:24
54:12  55:2
60:25  61:3  64:6
72:13
**Plaintiffs**  3:2
**Plaintiff's**  2:7
54:8  63:23  64:5
**plan**  50:20, 22
51:20, 24  52:5,
11, 13, 19, 20  53:3
**plans**  53:4
**Plaza**  4:7
**please**  5:1, 8, 15
6:18, 19  7:15
38:11, 16  69:24
70:2
**plus**  15:18
**point**  18:20
22:21  45:14
**Ponce**  3:14
**Poole**  8:12
**PORTFOLIO**  1:1
5:5, 12  6:4
16:18, 20  70:15
**portion**  63:15
**Pos**  39:18
**positive**  12:7
46:14
**possession**  8:23
9:8, 11  52:5
72:24
**possibility**  25:22
26:4  33:4, 5
**possible**  24:18
**possibly**  14:20
26:11  32:16
34:4  39:18  68:6,
17, 17
**potential**  20:3

Bartlett vs. Portfolio Recovery          Kimberly Bartlett                    8/24/2011

68:3
**potentially** 22:8
**PRA** 6:8 18:8
19:2 21:17
22:24 32:15, 18,
19 33:3, 6 34:7,
10, 11 36:13
38:5 46:11, 19
47:20 53:25
55:18 58:3, 14,
17 62:25 64:9
65:2, 15 67:5, 13,
16, 18, 22 68:10,
16 69:1, 3, 15, 17
72:14, 15, 17
**practices** 66:6
**PRA's** 66:6
**prepared** 43:2
**preparing** 42:15,
25 43:9
**prerecorded** 67:7,
11, 13
**Present** 4:11, 16
5:8
**press** 70:23
**pretty** 6:14
31:25 70:6
**Prior** 21:4 36:5
67:8
**probably** 8:2
10:6 16:6 19:20
25:5 40:8, 12
47:11
**problem** 65:13
**proceeding** 75:11
**process** 43:13
**productive** 41:11
**proposed** 66:18
**Protection** 56:5,
14
**provide** 41:6
61:4, 10 62:21,
25 67:8 72:14
**provided** 41:2
61:25 72:15, 16
**provider** 45:25
**provides** 63:8
**providing** 49:8

**purported** 22:25
61:3, 6
**purpose** 22:24
73:24
**purposes** 22:4
54:14 71:9
**Pursuant** 4:14
**put** 14:24 17:24
**putting** 71:24

**< Q >**
**qualified** 59:5
**qualify** 59:21
**question** 31:15
33:20 42:22
43:3 45:6 47:6
53:22 56:25
58:22 59:4
61:14 62:8 63:7
72:8
**questions** 6:3, 18
24:6 43:10
56:23 60:24
71:25 72:6, 9
73:2 75:8
**quicker** 6:15
**quickly** 6:14
69:21 70:6
**quite** 31:22

**< R >**
**rate** 52:15
**reach** 14:10
22:12
**reaction** 65:18, 19
**read** 43:18, 24
61:21, 21 62:11
63:13, 13, 14
66:22
**really** 9:21, 23,
24 10:5, 6, 21, 21
17:19 18:4, 6
19:9 22:19
23:16 24:2 26:8,
20, 23 27:20, 21
29:1 35:6, 20
40:11 62:13, 15

**reason** 7:9 29:18
**rec** 22:7
**recall** 38:7
**receive** 13:12
18:23 19:2
44:18, 21 45:3
51:13 67:15
72:21
**received** 15:9
24:16 25:19
26:4 29:9 33:9,
21 38:5 53:24
58:8, 14 67:4, 12
**receiving** 19:5
27:16 29:3 34:9
45:25
**recess** 38:13
70:1
**recognize** 45:20
70:8
**recollection** 43:1
68:19
**record** 5:2, 9
6:21 7:15 38:12,
15, 17 66:6
69:22, 25 70:3
73:4 74:21 75:10
**recordings** 66:9,
11 73:8
**RECOVERY** 1:1
5:5, 13 6:5
16:18, 20 70:15
**reduced** 75:9
**refer** 6:8 23:20
**reference** 46:18
**referenced** 49:22
**referring** 23:3
**regard** 37:13
73:15 74:4
**relate** 57:12
**related** 23:13
27:17, 18 72:22,
25
**relates** 23:23
**relative** 75:12
**release** 70:18, 23
**released** 70:19

**relevance** 24:7
50:25
**relevant** 74:12
**relief** 21:24
**remaining** 28:16
**remember** 9:21
10:5, 6 11:5
18:16 19:24
20:5 22:7 23:15,
16 24:3, 13, 16,
18, 21, 24 25:1, 2,
9, 16, 19, 23 26:8,
9, 11, 19, 23, 25
27:3, 8, 11, 12, 13,
16, 21, 22, 24, 25
28:2, 6, 9, 10, 12
29:2, 5, 8, 12, 14,
25 30:8 32:5, 11,
14, 25, 25 33:1, 6,
9, 13, 20, 23, 24
34:2, 4, 9, 25
35:9, 15, 21, 24
36:2, 13, 16 37:8,
16, 19 40:11
42:5, 9 43:14
45:25 46:16
48:10 51:21
53:2, 7, 16 64:9,
12, 12, 22, 24
65:8, 12 67:24
68:9, 14, 25 69:1,
9, 15, 19 70:17,
19, 20 72:3
**Repeat** 31:15
**rephrase** 66:23
**reporter** 4:16
5:15 6:10 60:2
63:14
**represent** 5:9
57:19, 21 58:6, 7
59:2, 19 60:7
**representation**
50:2
**representative**
17:5, 7, 14 21:10,
14
**representing**
68:2, 7

Bartlett vs. Portfolio Recovery          Kimberly Bartlett                    8/24/2011

request 56:20
73:8
requested 63:14
requests 53:19
reserved 74:23
respect 72:4
responded 64:7,
14 65:10
Response 2:7
54:5, 22, 25 55:6
responses 53:18
result 55:17
resulted 54:12
61:2, 6 67:9
review 43:22
right 5:23 7:23
8:17 9:18 12:2
13:22 15:14
16:2, 3 19:7
20:7 21:19 22:5,
14, 17 23:1
25:14 32:22
33:17 38:25
39:24 40:8, 9, 15
41:4 42:13
44:22 46:2
49:14 51:9, 18
52:7, 9 53:14, 19
55:4, 18, 19 56:3
57:9, 13 58:6, 9
60:8, 19 62:5
67:19 68:10, 16,
21 70:24 71:23
73:5, 6 74:1
rights 18:11
19:9, 11 36:20
rings 11:15
Riverchase 3:6
Robbins 2:14
4:3 5:11, 11, 20
6:1 10:13 17:22,
25 20:7, 8 22:6,
14, 17, 22 24:8,
11, 12 25:11
30:7 31:17
32:24 34:24
37:14, 15 38:9,
18 41:16, 21, 22

42:21 44:11
45:17 46:25
47:7 49:2, 12, 15,
18, 20 50:5 51:1,
4 54:24 56:15,
22 57:3, 8 58:19,
23 59:7, 10, 13,
15 60:5, 15
61:16, 19 62:9
63:3, 11, 17 64:1
66:2, 25 69:20
70:4 71:5, 17, 22
73:2, 10, 13, 15,
19, 22 74:1, 6, 13,
17
Robins 1:1 4:6
5:11
roommate 8:9
12:9 13:20 14:7
roommate's 11:8
12:17
rough 10:9 27:20
RPR 1:1 75:22
Rule 59:12, 16
rules 6:12

< S >
sad 29:1
Sam 3:5 5:10
41:13
SAMUEL 3:3
Saturday 48:23
49:23
save 37:11
saying 29:11
30:4 51:2 55:15
62:14
says 42:2 45:13
48:3 50:15 54:5
55:2 60:25 64:4
66:21, 22 67:11
70:17 72:12
scare 17:21
school 11:22
13:1 15:9, 10, 13
31:8
scope 73:7, 16

Second 2:5 24:5
37:10, 16 39:9
42:3, 16 43:13,
18 50:14 54:11
61:7 64:16, 18
72:12 73:20
see 17:24 19:20
36:4 42:2, 3
43:5 45:5, 11, 19
46:5 50:15
52:24 53:1, 13,
20, 25 54:14
57:24 62:2, 7
63:24 64:2
66:16, 16 72:11
seeing 42:5, 9
53:16
seek 59:19
seeking 21:24
57:19 58:5 60:7
seen 41:23
send 35:14
48:14, 15, 16, 17
74:13
sense 50:19
sent 24:17
46:15 48:11
sentence 61:7
72:12
September 53:7
seriously 30:5
served 21:9
serves 29:20
service 16:3, 9
66:6
set 53:19 54:10
seven 47:3
shake 6:19
Signature 74:23
Silk 15:23
similarly 1:1
single 50:1
66:15
sister 8:8 13:9
14:8
sitting 44:4 73:6
situated 1:1

situation 12:25
14:24
six 15:23 36:3, 5,
6, 7 37:20, 22
47:2 59:22
skills 44:7
small 16:3 26:1
somebody 11:2
14:15 30:12
36:13 37:17
59:18 65:10
sorry 9:1 26:22
29:2 47:13
54:23 60:2
sort 10:9 26:1
50:21 56:17
70:23
sounds 21:21
spaced 66:15
speak 6:24 20:15
speaking 36:13
Specialist 4:12
5:7
specific 31:3
35:4 64:23
specifically 18:4
20:1, 3 24:19
29:6, 12 32:8
74:10
speed 41:12
spoke 20:19
35:10, 12 36:10
37:7, 17
spoken 36:17
Stacy's 15:25
Stand 5:1 38:11,
16 69:24 70:2
standing 24:5, 9
37:12 50:24
start 33:19 44:6
60:24 67:22
started 15:17
18:12 20:23 29:3
starting 63:22
starts 22:3
state 7:15 67:1
75:3

stated  61:14
75:7
statement  4:15
60:1, 4
statements  27:14
54:10  56:12
STATES  1:1
stating  70:14
71:10
statute  59:23
63:9
statutes  22:11
Steak  15:15
stop  57:24  67:19
stopped  26:9, 19
Street  1:1
stuff  69:21
sub  58:17
submit  21:6
submitted  4:15
21:1  42:1  46:9,
17  47:19  70:20
substance  20:2
sue  18:18, 20
suggests  63:7
suicide  26:21
suing  58:18
suit  71:3
Suite  1:1  3:7
supply  43:5
supposed  47:6
sure  25:9, 24
31:12, 16, 25
38:22  39:5  40:4,
21  43:3  50:6
53:13  55:25
56:24, 25  61:17
62:17, 20  68:11
73:18
surprise  66:5, 8,
10, 12
surprised  45:3, 6
swear  5:15
sworn  5:17
system  65:16
67:6

< T >

take  7:10  17:17
18:5  38:10
42:16  44:3  48:2
50:2, 9  58:24
72:11
taken  7:12
38:13  70:1  75:7
takes  12:9
talk  32:19
talked  34:3  35:1
36:15  68:2
talking  20:6
32:7  36:12  44:6
55:7  56:2, 4, 8,
11, 12  57:6  58:2
tape  5:3
tapes  74:4
telephone  8:14
10:1  39:14  40:1
52:6, 8  53:24
54:9  55:3  56:4,
14  66:7  67:4, 5,
6  72:14, 16
tell  24:2  35:17
42:24  50:21
67:22
ten  10:20  16:6,
22  34:17, 18, 21
21  35:3  46:20,
21, 23, 25  47:15
55:21  56:7
57:10  69:15
tended  27:9
tens  57:24
terms  25:16
testified  5:17
testimony  54:20
Thank  5:14
26:23  38:20
47:12  49:8, 17
thing  51:6  53:12
73:4
things  6:15
think  7:9  8:16
9:14, 24  10:25
12:6  15:3, 22
22:18  23:13, 13
27:5, 6  30:15

33:15  34:3  35:1
36:4, 7  38:9
39:15, 25  40:6,
14, 20  42:24
45:11  46:12
48:24  54:16
55:14  59:18
60:11  61:20, 20,
21, 23, 23  65:21
66:13  70:5  71:2
74:11
thinking  30:5
61:7
thought  38:1, 24
67:18
thousands  57:25
three  13:24  14:2,
8  15:16, 24  16:1
20:24  35:5  39:4,
7, 15, 18  40:2
47:2  63:22
64:16, 18
threw  61:8  62:19
throw  68:23
time  5:2  8:20
9:10, 25  10:24
11:6, 14  17:16
18:2, 5, 6, 24
19:4, 24, 25
20:14  23:19
24:7, 22, 25  25:3,
5, 13  26:20, 24
27:20  28:10
29:1  30:12, 17
31:23  34:2, 4
35:6  37:8, 11, 17
38:11, 16  39:11
42:17  44:3
50:10  52:22, 23
53:1, 23  54:13
55:10, 14  56:2, 9
57:12  61:2, 5, 11
62:24  63:1, 16
64:15, 21  65:8
67:19, 21  68:15
69:24  70:2  74:20
times  9:15  20:9,
18  33:1  35:2, 5

53:5  64:13, 23,
24  69:15
today  6:10  7:10
19:2, 3  44:4
Today's  5:6
told  35:13  36:17,
18  67:24
top  18:13  22:19
47:22  50:16
70:18  73:6
total  55:24
transaction  61:2
67:9
transactions  61:5
transcript  63:15
75:7, 10
trick  45:5
tried  27:22
true  75:10
truth  22:1
try  6:18, 19, 23
14:10, 19, 22
28:22  35:11
trying  14:15
32:20, 23  50:19
58:7  59:2
turn  45:8  47:25
50:11  60:21
63:20  66:14
turned  47:23, 24
Turner  3:12, 13
19:13, 14, 25
20:10  68:1, 5
turning  60:16
two  8:5  9:11
14:22, 23  15:2,
25  35:5  47:2
63:7  64:21
69:15, 20
typewriting  75:9
typing  44:7

< U >
Uh  8:11  12:14
14:1, 17  15:1, 7
27:8  29:17  32:9
34:13, 22, 22
35:24  42:12, 14

Bartlett vs. Portfolio Recovery                Kimberly Bartlett                                    8/24/2011

50:17  51:1
52:18  54:2, 4
58:12  64:3  66:17
**Um**  9:10
**unauthorized**
16:17
**unavailable**  54:13
**underline**  46:8
**underlined**  46:5,
10, 13, 16, 24, 25
47:2, 10
**underlinings**
46:21
**underlying**  23:22
24:6
**understand**  7:1,
5  22:11  23:21
25:25  61:22
62:3, 8, 13, 15, 20
65:15  74:3
**understanding**
58:20  59:8, 21
65:17  66:19
**undo**  50:19
**UNITED**  1:1
**unlawful**  54:6, 7,
12
**unlawfully**  55:11
**Unlimited**  51:7, 9
52:25  53:3, 8
54:18, 21
**use**  9:19, 20
11:11, 12, 13, 14,
17  13:5, 11
16:10  26:14
30:10  31:10
40:7  67:5
**uses**  13:8  54:12
65:15
**usually**  11:13

**< V >**
**verbally**  61:3
62:15
**versus**  5:5
**Video**  4:12  5:7
**VIDEOGRAPHER**
5:1, 14  38:11, 16

69:24  70:2
74:16, 18
**videotaped**  5:3
74:19
**viol**  71:9
**violation**  56:13
**violations**  47:15
71:10
**voice**  64:7  67:7,
11, 13, 15
**vs**  1:1

**< W >**
**Wait**  59:3
**waitress**  15:16
**walk**  69:21
**WALLACE**  3:11
**want**  8:24  17:21
18:23  20:1  22:1
25:9, 23  26:5
49:21  50:6
51:10  55:21, 25
57:21  61:9  62:2,
17, 20
**wanted**  38:22
**wasted**  53:23
55:8  56:2
**water**  39:12
**way**  24:7  27:25
30:14  41:13
65:25  66:23
**Welcome**  38:19
**Well**  11:7, 23
12:5  14:7  19:12
20:16  21:22
23:5, 6  30:17
39:13  40:16
42:6, 22  43:10
58:20  62:10
65:15  66:19
70:12  72:3
**went**  20:24  54:16
**We're**  34:21
37:22  47:5  50:6
52:20  55:7  56:2,
4  58:18  62:18
73:4

**West**  1:1
**we've**  32:6  36:12
**witness**  5:15
**wondering**  48:7
50:20  65:22
**word**  10:25
42:10  71:3
**words**  16:16
17:4  57:18
**work**  9:20  15:4,
14, 21  16:4, 7
26:17  31:8  44:24
**worked**  15:15, 22,
23, 25
**working**  15:17
16:2
**worry**  50:10
**worth**  49:7
**write**  36:24  37:4
73:10
**written**  4:15
**wrong**  49:7
**wrote**  28:6

**< Y >**
**Yeah**  8:25  10:4
13:3  14:6  20:13
22:18  26:3
39:22  40:10, 10
42:18  45:18
49:24  52:12, 22,
24  54:3  58:16
61:17  73:10
**year**  35:25  36:7
37:21  51:25  52:1
**years**  8:5  10:7,
15, 15, 16, 23
15:16, 18, 23, 24
16:1, 6, 22  19:16
24:19  32:4
34:12  36:21
40:12, 22  59:22
**yep**  45:19  49:18
55:16

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KIMBERLY BARTLETT on behalf of herself and all others similarly situated, | Case No.: **1:11-CV-0624-JOF** |
| Plaintiff, | CLASS ACTION |
| v. | **SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)** |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | |
| Defendant. | **DEMAND FOR <u>JURY TRIAL</u>** |

Plaintiff Kimberly Bartlett (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

### NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable

- 1 -



EXHIBIT
1
Bartlett

remedies, resulting from the illegal actions of Portfolio Recovery Associates, LLC (hereinafter referred to as "PRA LLC" or the "Defendant") in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA").

2.      PRA LLC is a Delaware corporation that maintains its headquarters at 120 Corporate Boulevard, Norfolk, Virginia 23502. PRA LLC is a wholly-owned subsidiary of Portfolio Recovery Associates, Inc. (hereinafter "PRA Inc."). PRA Inc.'s stock shares are publicly traded on the NASDAQ stock exchange and PRA Inc. is required to make filings with the United States Securities and Exchange Commission (hereinafter the "SEC"). According to its SEC filings, the primary business of PRA Inc., both directly and through its subsidiaries (such as Defendant), is "[t]he purchase, collection and management of portfolios of defaulted consumer receivables. These accounts are purchased from sellers of finance receivables and collected by a highly skilled staff whose purpose is to locate and contact customers and arrange payment or resolution of their debts." [PRA Inc.'s SEC Form 10K as of December 31, 2010].

As of December 31, 2010, PRA Inc.'s consolidated Financial Statements showed ownership of 769,000 such accounts, wherein the underlying purported

debt belongs to residents of the State of Georgia. *Id.*

Legal counsel for both PRA LLC and PRA Inc. has attested to Plaintiff's counsel that the ownership of all 769,000 such accounts is titled in the name of Defendant PRA LLC. [Exhibit "A" annexed hereto].

### JURISDICTION AND VENUE

3.    This matter in controversy exceeds $5,000,000, as each member of the proposed Class of tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). *See also* Miedema v. Maytag Corp., 450 F.3d 1322, 1327 (11th Cir. 2006).  Further, there is minimal diversity in that at least one plaintiff and one defendant are from different states. *Id.* Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

4.    Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because Defendant is a corporation that is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction. Venue is also proper in this District because

- 3 -

Plaintiff Bartlett has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

5.     Plaintiff Kimberly Bartlett is, and at all times mentioned herein was, an individual citizen of the State of Georgia who resides in Acworth, Georgia.

6.     On information and belief, Plaintiff alleges that PRA LLC is, and at all times mentioned herein was, a corporation whose primary corporate address and headquarters are in Norfolk, Virginia, and that PRA LLC does business throughout the country, including this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

7.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

8.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of Section

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless

number in the absence of an emergency or the prior express consent of the called

party.[2]

9.      According to findings by the Federal Communication Commission

("FCC"), the agency Congress vested with authority to issue regulations

implementing the TCPA, such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of

privacy than live solicitation calls, and such calls can be costly and inconvenient.

The FCC also recognized that wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used.[3]

10.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it

confirmed that autodialed and prerecorded message calls to a wireless number by a

creditor (or on behalf of a creditor) are permitted only if the calls are made with the

"prior express consent" of the called party.[4] The FCC "emphasize[d] that prior

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

11.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided prior express consent within the meaning of the TCPA. [6]

12.     Auto Dialing systems, also known as Predictive Dialing Technology, are commonly used in the Debt Collection industry. *See e.g.* The Challenges of Change, Federal Trade Commission (2009).

### FACTUAL ALLEGATIONS

13.     At all times relevant, Plaintiff was an individual residing in the State of Georgia. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

14.     Defendant is, and at all times mentioned herein was, a corporation and a "person", as defined by 47 U.S.C. § 153(10).

---

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
*Ruling*, 23 F.C.C.R. at 565(¶ 10).

[6] *Id.*

15.    Beginning on or about October 28, 2010, Defendant began repeatedly contacting Plaintiff on her cellular telephone. The purpose of these calls was to collect a purported credit card debt (hereinafter the "Purported Debt").

Annexed hereto as Exhibit "B" are true and correct copies of Plaintiff's cellular phone billing statements, which conclusively evidence that Defendant made 10 calls to her through the date of filing the Original Complaint in this case (Defendant's Incoming telephone numbers are underlined on each billing statement).

16.    Plaintiff did not list a cellular phone number in or on any documents at any time during the transaction that resulted in the Purported Debt. Plaintiff also did not verbally provide Defendant, or any other party, with a cellular phone number at any time during the transaction that resulted in the Purported Debt, or thereafter.

17.    Defendant routinely utilizes Predictive Dialing Technology in its Debt Collection efforts. In its 2010 Form 10K filing with the SEC, PRA Inc. (which owns and controls Defendant) unambiguously attested (pursuant to 18 U.S.C. § 1350, as adopted under § 906 of the Sarbanes-Oxley Act of 2002):

\*\*\*

*Predictive Dialer Technology*

The Avaya Proactive Contact Dialer ensures that our collection staff focuses on certain defaulted consumer receivables according to our specifications. Its predictive technology takes into account all campaign and dialing parameters and is able to automatically adjust its dialing pace to match changes in campaign conditions and provide the lowest possible wait times and abandon rates, with the highest volume of outbound calls. *Id.* at Page 14.

Legal counsel for both PRA LLC and PRA Inc. has attested to Plaintiff's

counsel that Defendant acts as the Debt Collector for all its owned defaulted

consumer receivables located in the State of Georgia or otherwise. [Exhibit "C"

annexed hereto]. Hence, Defendant is not only the Creditor under the TCPA but is

also the Debt Collector thereunder.

Further, in the same SEC filing, PRA Inc. attests that it is aware of the

TCPA and Predictive Dialing Technology, by stating:

\*\*\*

*Telephone Consumer Protection Act.* In the process of collecting accounts, we use automated predictive dialers and pre-recorded messages to communicate with our consumers. This act and similar state laws place certain restrictions on telemarketers and users of automated dialing equipment and pre-recorded messages who place telephone calls to consumers. *Id.* at Page 16.

\*\*\*

18.    All telephone contact by Defendant to Plaintiff on her cellular

telephone occurred via an "automatic telephone dialing system," as defined by 47

U.S.C. § 227(a)(1), and all calls that are the subject of this Second Amended

Complaint occurred within four years of the filing of this Second Amended

Complaint. In Defendant's calls to Plaintiff's cell phone, there was a pause after

Plaintiff first answered the call and before a live human voice responded. Further,

in most cases Plaintiff had to say "Hello" several times before a live human voice

responded. The foregoing are clear indices of an automatic telephone dialing

system being used to call Plaintiff.

19.     The telephone number that Defendant used to contact Plaintiff, made

via an "automatic telephone dialing system," was assigned to a cellular telephone

service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

20.     The complained of Defendant telephone calls constituted calls not

made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

21.     "During the transaction that resulted in the debt owed," Plaintiff did

not provide a wireless number nor otherwise provide express consent to receive

calls by Defendant, or any other party, on Plaintiff's cellular telephone.[6]

22.     Plaintiff did not own her current cellular telephone at the time  she

engaged in the transaction that resulted in the Purported Debt. She therefore could

---

[6] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

not have given Defendant, or any other party, express consent at that time to contact her on that cellular phone via an automatic telephone dialing system.

23.    Plaintiff did not provide "express consent" allowing Defendant to place telephone calls to Plaintiff's cellular phone utilizing an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

24.    Defendant did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" utilizing an "automatic telephone dialing system," as described in 47 U.S.C. § 227(b)(1)(A).

25.    Defendant's telephone calls to Plaintiff's cellular phone utilizing an an "automatic telephone dialing system" for nonemergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

26.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.[7]

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

---

[7] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

28.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the State of Georgia who, on or after October 28, 2010 until the final disposition of this case (the "Class Period"), received a non-emergency telephone call from PRA LLC to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

Collectively, all these persons will be referred to as "Class Members." Plaintiff represents, and is a member of, the Class. Excluded from the Class are Defendant, PRA Inc. and any entities in which Defendant or PRA Inc. has a controlling interest, Defendant's and PRA Inc.'s respective agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

29.    Plaintiff does not know at this time the exact number of members in the Class, but based upon the official filing of PRA Inc. with the SEC, Plaintiff reasonably believes that Class members number at minimum in the tens of thousands. This Class size includes persons whose purported debt is owned or serviced by Defendant and all other persons whom Defendant or its affiliates dialed.

30.    Plaintiff and all members of the Class have been harmed by the acts of Defendant.

- 11 -

31.    This Class Action Complaint seeks money damages and injunctive relief.

32.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendant.

33.    There are well-defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a.     Whether, beginning on October 28, 2010, Defendant made non-emergency calls to Plaintiff's and Class Members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

    b.     Whether Defendant can meet its burden of showing prior express consent (*i.e.*, consent that is clearly and unmistakably stated) was obtained, during the transaction that resulted in the purported debt owed or thereafter, to make such calls;

    c.     Whether Defendant's conduct was knowing and/or willful;

    d.     Whether Defendant is liable for damages, and the amount of such damages; and

- 12 -

e.     Whether Defendant should be enjoined from engaging in such conduct in the future.

34.     As a person who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without her prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

35.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

36.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all auto-dialed and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

- 13 -

37.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227 *ET SEQ.*

38.     Plaintiff incorporates by reference the foregoing paragraphs of this Second Amended Complaint as if fully set forth herein.

39.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA including, but not limited to, each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

40.     As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

41.     Plaintiff and Class members are also entitled to, and do seek,

- 14 -

injunctive relief prohibiting Defendant's violation of the TCPA in the future.

42.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

43.     Plaintiff incorporates by reference the foregoing paragraphs of this Second Amended Complaint as if fully stated herein.

44.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA including, but not limited to, each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

45.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

46.     Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

47.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

- 15 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A.      As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

B.      As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C.      Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

- 16 -

F.      Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

This the 30th day of March, 2011.

Respectfully submitted,


By:   /s/ Henry A. Turner
      Henry A. Turner
      Georgia Bar No. 719310

TURNER LAW OFFICES, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 261-7787
hturner@tloffices.com               Co-Counsel for Plaintiff


By:   /s/ Samuel M. Hill
      Samuel M. Hill
      Admitted *Pro Hac Vice*

THE LAW OFFICES OF SAM HILL, LLC
265 RIVERCHASE PARKWAY EAST, SUITE 202
HOOVER, AL 35244
TELEPHONE (205) 250-7776
FACSIMILE (205) 250-7675
SAM@SAMHILLLAWOFCS.COM              Co-Counsel for Plaintiff

Case 1:11-cv-00624-JOF   Document 72-1   Filed 08/30/11   Page 1 of 4

**EXHIBIT A**

Case 1:11-cv-00624-JOF   Document 72-1   Filed 08/30/11   Page 2 of 4

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KIMBERLY BARTLETT on behalf of herself
And all others similarly situated,

        Plaintiff,               CASE NO. 1:11-cv-00624-JOF

    v.                           CLASS ACTION

PORTFOLIO RECOVERY ASSOCIATES, INC.,

        Defendant.

---

## AFFIDAVIT OF JUDITH SCOTT

COMMONWEALTH OF VIRGINIA    )
                             ) ss.
CITY OF NORFOLK               )

Judith Scott, being first duly sworn upon oath, deposes and states as follows:

1.     I am over the age of eighteen and competent to testify to the matters contained herein.

2.     I am the Executive Vice President and General Counsel for defendant Portfolio Recovery Associates, Inc., 140 Corporate Boulevard, Norfolk, Virginia 23502, and have personal knowledge of the following facts.

3.     Portfolio Recovery Associates, Inc. is a publicly held corporation incorporated under Delaware law and has its principal place of business in Norfolk, Virginia.

82084948.1

4.      Portfolio Recovery Associates, Inc. is not registered with the Georgia Secretary of State and has no agent for service of process in Georgia.

5.      Portfolio Recovery Associates, Inc. does not purchase, collect or manage portfolios of defaulted consumer receivables or conduct any other business in Georgia.

6.      Although Portfolio Recovery Associates, LLC is a wholly owned subsidiary off Portfolio Recovery Associates, Inc., Portfolio Recovery Associates, Inc. acts only as a holding company of Portfolio Recovery Associates, LLC.

7.      Portfolio Recovery Associates, Inc. is not engaged in the collection of consumer debts and is not a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

8.      Portfolio Recovery Associates, LLC purchases, collects, and manages portfolios of defaulted consumer receivables.

FURTHER YOUR AFFIANT SAITH NOT.

PORTFOLIO RECOVERY ASSOCIATES, INC.

Judith Scott
Executive Vice President and General Counsel

Subscribed and sworn to before me this 24 day of March, 2011.

City of Norfolk

Notary Public

FOYE DASHIELL BOBBITT
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7276241
My Commission Expires 10/31/13

Case 1:11-cv-00624-JOF   Document 72-1   Filed 08/30/11   Page 4 of 6

**From:** Robbins, Jennifer M. [mailto:JMRobbins@rkmc.com]
**Sent:** Tuesday, March 29, 2011 11:36 AM
**To:** TURNER LAW OFFICES, LLC
**Cc:** Heller, Lisa L.; Rahne, Denise S.; Sam; awallace@tloffices.com
**Subject:** RE: KIMBERLY BARTLETT et al. v. PORTFOLIO RECOVERY SERVICES, INC. et al; UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA; CASE NO. 11-CV-00624

Henry,

**Yes, Ms. Scott is attesting to PRA, LLC's ownership of all of the defaulted consumer receivables.** Please advise as to whether you will file an amended complaint this week.

As an aside, it appears you have a typo in your email--as I read the Dec. 31, 2010 10-K, there are 24,296,000 total accounts.

I look forward to hearing from you,
Jenny

**From:** TURNER LAW OFFICES, LLC [mailto:hturner@tloffices.com]
**Sent:** Monday, March 28, 2011 6:00 AM
**To:** Robbins, Jennifer M.
**Cc:** Heller, Lisa L.; Rahne, Denise S.; 'Sam'; awallace@tloffices.com
**Subject:** KIMBERLY BARTLETT et al. v. PORTFOLIO RECOVERY SERVICES, INC. et al; UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA; CASE NO. 11-CV-00624
**Importance:** High

Jennifer:

Hope you had a pleasant weekend. Further to the e-mail below, please confirm today if it is the position of PRA Inc. and PRA LLC that PRA LLC has sole ownership of all the 24,286,000 defaulted consumer receivables of which 769,000 are located in the State of Georgia. [PRA Inc. SEC Form 10K as of December 31, 2010, Page 9].

We need this information to determine the validity of dropping PRA Inc. as a Defendant.

Thanks.

Case 1:11-cv-00624-JOF   Document 72-1   Filed 08/30/11   Page 1 of 11

**EXHIBIT B**

Statement For: **KIMBERLY BARTLETT**
Mobile Number: (404) 784-5634
Account Number: 234964726

**Customer Service Number**   1-800-937-8997

Nov 25, 2010

PageA   2   of   11

| Date | Location | Time | Number | Type | Min | | | |
|---|---|---|---|---|---|---|---|---|
| 10/28/10 | Atlanta Ne, GA | 11:49 AM | 770-633-0997 | (V) | 2 | $ - | $ - | $ - |
| 10/28/10 | Atlanta Ne, GA | 11:55 AM | 770-633-0997 | (V) | 2 | $ - | $ - | $ - |
| 10/28/10 | Atlanta, GA | 3:02 PM | 404-391-1763 | (V) | 7 | $ - | $ - | $ - |
| 10/28/10 | Atlanta Ne, GA | 3:25 PM | 770-633-0997 | (V) | 2 | $ - | $ - | $ - |
| 10/28/10 | Atlanta Ne, GA | 3:32 PM | 770-633-0997 | (V) | 2 | $ - | $ - | $ - |
| 10/28/10 | Atlanta So, GA | 3:40 PM | 770-477-8770 | | 2 | $ - | $ - | $ - |
| 10/28/10 | Atlanta Ne, GA | 4:03 PM | 678-531-6289 | | 12 | $ - | $ - | $ - |
| 10/28/10 | Incoming | 4:19 PM | 620-662-8870 | | 2 | $ - | $ - | $ - |
| 10/28/10 | Vm Retrieval | 8:34 PM | 123 | (G) | 1 | $ - | $ - | $ - |
| 10/29/10 | Atlanta Ne, GA | 8:18 AM | 770-633-0997 | (V) | 1 | $ - | $ - | $ - |
| 10/29/10 | Atlanta So, GA | 8:35 AM | 770-477-8770 | | 21 | $ - | $ - | $ - |
| 10/29/10 | Atlanta Ne, GA | 8:57 AM | 770-633-0997 | (V) | 1 | $ - | $ - | $ - |
| 10/29/10 | Atlanta, GA | 8:58 AM | 404-748-0706 | | 1 | $ - | $ - | $ - |
| 10/29/10 | Atlanta, GA | 8:59 AM | 404-748-0706 | | 3 | $ - | $ - | $ - |
| 10/29/10 | Atlanta Ne, GA | 9:02 AM | 770-633-0997 | (V) | 7 | $ - | $ - | $ - |
| 10/29/10 | Atlanta, GA | 9:11 AM | 404-748-0706 | | 1 | $ - | $ - | $ - |
| 10/29/10 | Atlanta, GA | 9:20 AM | 404-335-6464 | | 2 | $ - | $ - | $ - |
| 10/29/10 | Atlanta Ne, GA | 9:54 AM | 770-633-0997 | (V) | 7 | $ - | $ - | $ - |
| 10/29/10 | Incoming | 2:30 PM | 678-910-8752 | | 14 | $ - | $ - | $ - |
| 10/29/10 | Atlanta Nw, GA | 5:19 PM | 678-574-3613 | | 6 | $ - | $ - | $ - |
| 10/30/10 | Incoming | 9:33 AM | 770-633-0997 | (V) | 3 | $ - | $ - | $ - |
| 10/30/10 | Atlanta Ne, GA | 11:59 AM | 770-235-2907 | | 1 | $ - | $ - | $ - |
| 10/30/10 | Vm Retrieval | 12:50 PM | 123 | (G) | 1 | $ - | $ - | $ - |
| 10/30/10 | Vm Retrieval | 8:02 PM | 123 | (G) | 2 | $ - | $ - | $ - |
| 10/30/10 | Vm Retrieval | 9:50 PM | 123 | (G) | 1 | $ - | $ - | $ - |
| 10/31/10 | Atlanta Ne, GA | 11:06 AM | 770-633-0997 | (V) | 9 | $ - | $ - | $ - |
| 10/31/10 | Incoming | 12:12 PM | 678-653-7465 | | 3 | $ - | $ - | $ - |
| 10/31/10 | Atlanta Ne, GA | 2:32 PM | 770-235-2907 | | 1 | $ - | $ - | $ - |
| 10/31/10 | Atlanta Ne, GA | 2:37 PM | 770-235-2907 | | 1 | $ - | $ - | $ - |
| 10/31/10 | Incoming | 2:42 PM | 770-235-2907 | | 8 | $ - | $ - | $ - |
| 10/31/10 | Vm Retrieval | 6:15 PM | 123 | (G) | 3 | $ - | $ - | $ - |
| 10/31/10 | Vm Retrieval | 6:47 PM | 123 | (G) | 1 | $ - | $ - | $ - |
| 10/31/10 | Vm Retrieval | 6:48 PM | 123 | (G) | 4 | $ - | $ - | $ - |
| 10/31/10 | Atlanta Nw, GA | 8:53 PM | 678-574-3613 | | 9 | $ - | $ - | $ - |
| 10/31/10 | Vm Retrieval | 8:39 PM | 123 | (G) | 1 | $ - | $ - | $ - |
| 11/01/10 | Atlanta Nw, GA | 7:57 AM | 678-574-3613 | | 14 | $ - | $ - | $ - |
| 11/01/10 | Atlanta, GA | 8:23 AM | 404-376-5474 | | 2 | $ - | $ - | $ - |
| 11/01/10 | 1-888 # | 9:26 AM | 888-231-1821 | | 1 | $ - | $ - | $ - |
| 11/01/10 | 1-866 # | 9:28 AM | 866-231-1821 | | 3 | $ - | $ - | $ - |
| 11/01/10 | 1-866 # | 9:29 AM | 866-231-1821 | | 14 | $ - | $ - | $ - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Statement For:     **KIMBERLY BARTLETT**
Mobile Number:   **(404) 784-5634**
Account Number:  **234964726**

**Customer Service Number     1-800-937-8997**

Nov 25, 2010

Page A   4   of   11

| Date | Location | Time | Number | Type | Min | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/04/10 | Vm Retrieval | 7:53 PM | 123 | (G) | 4 | $ | - | $ | - | $ | - |
| 11/04/10 | Atlanta Ne, GA | 7:58 PM | 770-235-2907 | | 4 | $ | - | $ | - | $ | - |
| 11/04/10 | Atlanta Ne, GA | 8:03 PM | 770-633-0997 | (V) | 3 | $ | - | $ | - | $ | - |
| 11/04/10 | Incoming | 8:05 PM | 678-296-9535 | (A) | 10 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 8:09 AM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 8:28 AM | 678-910-8752 | | 2 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 8:49 AM | 678-910-8752 | | 7 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 9:10 AM | 678-910-8752 | | 8 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 9:18 AM | 678-910-8752 | | 3 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 9:22 AM | 770-633-0997 | (V) | 3 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta, GA | 9:26 AM | 404-391-1763 | (V) | 5 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 9:34 AM | 678-910-8752 | | 1 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 9:35 AM | 678-910-8752 | | 1 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta, GA | 9:38 AM | 404-748-0706 | | 8 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 1:15 PM | 770-633-0997 | (V) | 7 | $ | - | $ | - | $ | - |
| 11/05/10 | Atlanta Ne, GA | 5:20 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 11/05/10 | Incoming | 9:08 PM | 770-235-2907 | | 47 | $ | - | $ | - | $ | - |
| 11/06/10 | Incoming | 8:34 AM | 404-748-0706 | | 6 | $ | - | $ | - | $ | - |
| 11/06/10 | Incoming | 8:39 AM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 11/06/10 | Incoming | 8:46 AM | 770-633-0997 | | 3 | $ | - | $ | - | $ | - |
| 11/06/10 | Incoming | 9:32 AM | 770-633-0997 | (V) | 3 | $ | - | $ | - | $ | - |
| 11/06/10 | Atlanta Ne, GA | 9:54 AM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 11/06/10 | Vm Retrieval | 3:43 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 11/06/10 | Atlanta So, GA | 3:44 PM | 770-477-8770 | | 2 | $ | - | $ | - | $ | - |
| 11/06/10 | Incoming | 4:13 PM | 678-296-9535 | | 1 | $ | - | $ | - | $ | - |
| 11/07/10 | Atlanta Nw, GA | 6:44 PM | 770-421-0148 | | 7 | $ | - | $ | - | $ | - |
| 11/07/10 | Vm Retrieval | 7:55 PM | 123 | (G) | 2 | $ | - | $ | - | $ | - |
| 11/08/10 | Incoming | 8:55 AM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 11/08/10 | Vm Retrieval | 10:07 AM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta Ne, GA | 10:36 AM | 770-633-0997 | (V) | 5 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta, GA | 10:46 AM | 678-362-4508 | | 2 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta, GA | 10:48 AM | 404-335-6464 | | 2 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta Ne, GA | 11:46 AM | 770-633-0997 | (V) | 3 | $ | - | $ | - | $ | - |
| 11/08/10 | Incoming | 1:42 PM | 770-389-3481 | | 8 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta Ne, GA | 1:51 PM | 770-633-0997 | (V) | 12 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta So, GA | 2:03 PM | 770-389-3481 | | 4 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta Ne, GA | 2:07 PM | 770-633-0997 | (V) | 16 | $ | - | $ | - | $ | - |
| 11/08/10 | Vm Retrieval | 7:14 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 11/08/10 | Atlanta Ne, GA | 7:24 PM | 770-633-0997 | (V) | 4 | $ | - | $ | - | $ | - |
| 11/08/10 | Incoming | 7:30 PM | 620-662-8870 | | 1 | $ | - | $ | - | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Case 1:11-cv-00624-JOF   Document 72-2   Filed 03/30/11   Page 4 of 18

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
Statement For: **KIMBERLY BARTLETT**
Mobile Number: (404) 784-5634
Account Number: 234964726

**Customer Service Number**   1-800-937-8997

Nov 25, 2010

Page A   B  of  13

| Date | Location | Time | Number | | Min | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/17/10 | Atlanta Nw, GA | 2:53 PM | 678-574-3613 | | 7 | $ | - | $ | - | $ - |
| 11/17/10 | Vm Retrieval | 5:27 PM | 123 | (G) | 2 | $ | - | $ | - | $ - |
| 11/17/10 | Atlanta Nw, GA | 5:40 PM | 770-421-0382 | | 6 | $ | - | $ | - | $ - |
| 11/17/10 | Atlanta So, GA | 6:46 PM | 770-477-8770 | | 33 | $ | - | $ | - | $ - |
| 11/17/10 | Atlanta So, GA | 7:18 PM | 770-477-8770 | | 1 | $ | - | $ | - | $ - |
| 11/17/10 | Atlanta So, GA | 7:19 PM | 770-477-8770 | | 8 | $ | - | $ | - | $ - |
| 11/18/10 | Incoming | 7:57 AM | 678-574-3613 | | 13 | $ | - | $ | - | $ - |
| 11/18/10 | Incoming | 8:34 AM | 770-633-0997 | (V) | 10 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Ne, GA | 8:54 AM | 770-633-0997 | (V) | 16 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 9:11 AM | 404-704-7256 | (F) | 28 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 9:45 AM | 404-748-0706 | | 6 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 9:55 AM | 404-452-9188 | (F) | 1 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 10:42 AM | 404-226-8063 | | 1 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 10:54 AM | 404-452-9188 | (F) | 1 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Nw, GA | 11:08 AM | 678-403-2393 | | 5 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta So, GA | 11:52 AM | 770-389-3481 | | 3 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Ne, GA | 11:58 AM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Ne, GA | 12:15 PM | 770-633-0997 | (V) | 10 | $ | - | $ | - | $ - |
| 11/18/10 | Incoming | 12:41 PM | 620-662-8670 | | 1 | $ | - | $ | - | $ - |
| 11/18/10 | Incoming | 1:23 PM | 678-574-3613 | | 24 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Ne, GA | 2:30 PM | 770-633-0997 | (V) | 22 | $ | - | $ | - | $ - |
| 11/18/10 | Incoming | 2:52 PM | 404-452-9188 | (F) | 18 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 3:10 PM | 404-391-1763 | (V) | 3 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 3:36 PM | 404-391-1763 | (V) | 4 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 3:40 PM | 404-391-1763 | (V) | 5 | $ | - | $ | - | $ - |
| 11/18/10 | Incoming | 3:44 PM | 404-391-1763 | (V) | 2 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta So, GA | 4:16 PM | 770-996-8623 | | 2 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta So, GA | 4:20 PM | 770-996-8623 | | 2 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Nw, GA | 4:44 PM | 678-403-2393 | | 4 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 4:48 PM | 404-391-1763 | (V) | 3 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta Nw, GA | 5:54 PM | 678-403-2393 | | 4 | $ | - | $ | - | $ - |
| 11/18/10 | Atlanta, GA | 6:48 PM | 404-391-1763 | (V) | 4 | $ | - | $ | - | $ - |
| 11/19/10 | Incoming | 7:28 AM | 770-633-0997 | (V) | 20 | $ | - | $ | - | $ - |
| 11/18/10 | Vm Retrieval | 8:08 AM | 123 | (G) | 2 | $ | - | $ | - | $ - |
| 11/19/10 | Vm Retrieval | 8:09 AM | 123 | (G) | 2 | $ | - | $ | - | $ - |
| 11/19/10 | Atlanta, GA | 9:28 AM | 404-748-0706 | | 11 | $ | - | $ | - | $ - |
| 11/19/10 | Atlanta Ne, GA | 9:42 AM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ - |
| 11/19/10 | Atlanta Ne, GA | 9:55 AM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ - |
| 11/19/10 | Incoming | 9:56 AM | 770-633-0997 | (V) | 4 | $ | - | $ | - | $ - |
| 11/19/10 | Atlanta, GA | 10:04 AM | 404-748-0706 | | 1 | $ | - | $ | - | $ - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Case 1:11-cv-00624-JOF   Document 72-1   Filed 08/30/11   Page 1 of 11

Statement For:   **KIMBERLY BARTLETT**
Mobile Number:  (404) 784-5634
Account Number:  234964726

**Customer Service Number**   1-800-937-8997

Nov 25, 2010

| Date | Location | Time | Number | | Min | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/21/10 | Atlanta Ne, GA | 6:51 PM | 770-789-0125 | | 2 | $ | - | $ | - | $ | - |
| 11/21/10 | Atlanta Nw, GA | 8:03 PM | 770-421-0382 | | 2 | $ | - | $ | - | $ | - |
| 11/21/10 | Atlanta Nw, GA | 8:05 PM | 678-574-3613 | | 1 | $ | - | $ | - | $ | - |
| 11/21/10 | Vm Retrieval | 8:06 PM | 123 | (G) | 6 | $ | - | $ | - | $ | - |
| 11/22/10 | Atlanta Nw, GA | 8:30 AM | 678-574-3613 | | 2 | $ | - | $ | - | $ | - |
| 11/22/10 | Atlanta Nw, GA | 1:14 PM | 678-574-3613 | | 1 | $ | - | $ | - | $ | - |
| 11/22/10 | Atlanta Ne, GA | 1:15 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 11/22/10 | Atlanta, GA | 1:26 PM | 404-226-8063 | | 2 | $ | - | $ | - | $ | - |
| 11/22/10 | Atlanta Nw, GA | 1:28 PM | 678-574-3613 | | 1 | $ | - | $ | - | $ | - |
| 11/22/10 | Incoming | 2:53 PM | 770-633-0997 | (V) | 13 | $ | - | $ | - | $ | - |
| 11/22/10 | Atlanta, GA | 9:15 PM | 678-296-9535 | | 1 | $ | - | $ | - | $ | - |
| 11/22/10 | Incoming | 9:19 PM | 678-296-9535 | | 19 | $ | - | $ | - | $ | - |
| 11/22/10 | Vm Retrieval | 9:37 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Ne, GA | 8:31 AM | 678-910-8752 | | 2 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Ne, GA | 8:42 AM | 770-633-0997 | (V) | 13 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 8:54 AM | 770-633-0997 | (V) | 8 | $ | - | $ | - | $ | - |
| 11/23/10 | Vm Retrieval | 9:05 AM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 9:10 AM | 770-633-0997 | (V) | 11 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta, GA | 10:52 AM | 404-391-1763 | (V) | 4 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 12:11 PM | 205-588-8181 | | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 1:26 PM | 678-663-7465 | | 2 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta, GA | 2:47 PM | 404-748-0706 | | 9 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta, GA | 2:55 PM | 404-391-1763 | (V) | 18 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Ne, GA | 3:13 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta So, GA | 3:16 PM | 770-996-8623 | | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Ne, GA | 3:25 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 3:37 PM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 3:40 PM | 207-512-5075 | | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Nw, GA | 4:14 PM | 678-574-3613 | | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta, GA | 4:30 PM | 404-226-8063 | | 1 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Nw, GA | 4:31 PM | 678-574-3613 | | 2 | $ | - | $ | - | $ | - |
| 11/23/10 | Atlanta Nw, GA | 8:14 PM | 678-574-3613 | | 2 | $ | - | $ | - | $ | - |
| 11/23/10 | Incoming | 8:16 PM | 678-296-9535 | | 9 | $ | - | $ | - | $ | - |
| 11/24/10 | Atlanta Ne, GA | 7:40 AM | 770-633-0997 | (V) | 30 | $ | - | $ | - | $ | - |
| 11/24/10 | Cust Care | 8:14 AM | 800-937-8997 | (H) | 3 | $ | - | $ | - | $ | - |
| 11/24/10 | Atlanta Nw, GA | 8:29 AM | 678-574-3613 | | 29 | $ | - | $ | - | $ | - |
| 11/24/10 | Incoming | 9:34 AM | 770-633-0997 | (V) | 5 | $ | - | $ | - | $ | - |
| 11/24/10 | Atlanta Ne, GA | 10:25 AM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 11/24/10 | Atlanta Nw, GA | 10:26 AM | 770-421-0382 | | 1 | $ | - | $ | - | $ | - |
| 11/24/10 | Atlanta Ne, GA | 1:04 PM | 770-633-0997 | (V) | 7 | $ | - | $ | - | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Date/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Case 1:11-cv-00624-JOF  Document 72-2  Filed 03/30/11  Page 6 of 11

Statement For:     **KIMBERLY BARTLETT**
Mobile Number:     (404) 784-5634
Account Number:    234964726

**Customer Service Number**     1-800-937-8997

Dec 25, 2010                                                      PageA    3  of  12

| Date | Location | Time | Number | | Min | | | | | |
|------|----------|------|--------|--|-----|--|--|--|--|--|
| 12/03/10 | Atlanta, GA | 8:33 AM | 404-391-1763 | (V) | 11 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Ne, GA | 8:45 AM | 678-910-8752 | | 2 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Nw, GA | 8:47 AM | 678-574-3613 | | 24 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Ne, GA | 9:18 AM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta, GA | 9:28 AM | 404-748-0706 | | 2 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta, GA | 12:16 PM | 404-748-0706 | | 7 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Ne, GA | 12:25 PM | 770-633-0997 | (V) | 19 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Nw, GA | 1:01 PM | 678-574-3613 | | 7 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 1:29 PM | 404-704-7258 | (F) | 3 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 2:10 PM | 440-580-0720 | | 1 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 2:39 PM | 770-986-5194 | | 44 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 4:41 PM | 770-789-0125 | | 1 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 7:28 PM | 770-235-2907 | | 1 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Ne, GA | 7:35 PM | 770-235-2907 | | 14 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 7:50 PM | 770-633-0997 | (V) | 4 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 7:53 PM | 770-363-3144 | (A) | 8 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Ne, GA | 8:08 PM | 770-363-3144 | | 1 | $ | - | $ | - | $ | - |
| 12/03/10 | Atlanta Ne, GA | 8:30 PM | 770-363-3144 | | 1 | $ | - | $ | - | $ | - |
| 12/03/10 | Incoming | 8:03 PM | 770-363-3144 | | 28 | $ | - | $ | - | $ | - |
| 12/04/10 | Incoming | 9:15 AM | 770-633-0997 | (V) | 17 | $ | - | $ | - | $ | - |
| 12/04/10 | Incoming | 1:09 PM | 770-633-0997 | (V) | 12 | $ | - | $ | - | $ | - |
| 12/04/10 | Incoming | 1:22 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 12/04/10 | Atlanta Ne, GA | 1:46 PM | 770-633-0997 | (V) | 16 | $ | - | $ | - | $ | - |
| 12/04/10 | Incoming | 2:24 PM | 770-633-0997 | (V) | 5 | $ | - | $ | - | $ | - |
| 12/04/10 | Atlanta Ne, GA | 5:09 PM | 770-363-3144 | | 54 | $ | - | $ | - | $ | - |
| 12/04/10 | Atlanta Ne, GA | 9:13 PM | 770-363-3144 | | 50 | $ | - | $ | - | $ | - |
| 12/04/10 | Incoming | 10:18 PM | 770-363-3144 | | 49 | $ | - | $ | - | $ | - |
| 12/05/10 | Atlanta Nw, GA | 10:27 AM | 678-574-3613 | | 16 | $ | - | $ | - | $ | - |
| 12/05/10 | Incoming | 10:48 AM | 770-710-2149 | | 28 | $ | - | $ | - | $ | - |
| 12/05/10 | Incoming | 1:48 PM | 678-910-8752 | | 7 | $ | - | $ | - | $ | - |
| 12/05/10 | Atlanta Ne, GA | 1:56 PM | 678-910-8752 | | 8 | $ | - | $ | - | $ | - |
| 12/05/10 | Atlanta Nw, GA | 2:05 PM | 770-986-5194 | | 3 | $ | - | $ | - | $ | - |
| 12/05/10 | Atlanta Ne, GA | 3:05 PM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/05/10 | Atlanta Ne, GA | 3:20 PM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/05/10 | Atlanta Nw, GA | 3:36 PM | 770-421-0382 | | 1 | $ | - | $ | - | $ | - |
| 12/05/10 | Incoming | 8:09 PM | 770-363-3144 | | 15 | $ | - | $ | - | $ | - |
| 12/05/10 | Incoming | 11:16 PM | 770-363-3144 | | 3 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta Nw, GA | 8:48 AM | 678-574-3613 | | 11 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta Nw, GA | 9:08 AM | 678-574-3613 | | 1 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta, GA | 9:09 AM | 404-226-8063 | | 1 | $ | - | $ | - | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Cell

Case 1:11-cv-00624-JOF   Document 72-1   Filed 08/30/11   Page 7 of 11

Statement For: **KIMBERLY BARTLETT**
Mobile Number: (404) 784-5634
Account Number: 234964726

**Customer Service Number**    1-800-937-8997

Dec 25, 2010

Page A   4  of  12

| Date | Location | Time | Number | | Min | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/06/10 | Atlanta, GA | 9:11 AM | 404-226-8063 | | 1 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta Ne, GA | 9:14 AM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta Nw, GA | 9:16 AM | 678-574-3613 | | 2 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta, GA | 9:18 AM | 404-915-1586 | | 3 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta, GA | 9:20 AM | 404-376-5474 | | 3 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta Nw, GA | 11:37 AM | 678-574-3613 | | 3 | $ | - | $ | - | $ | - |
| 12/06/10 | Incoming | 2:20 PM | 205-588-8181 | | 1 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta Ne, GA | 3:05 PM | 770-633-0997 | | 4 | $ | - | $ | - | $ | - |
| 12/06/10 | Vm Retrieval | 3:12 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 12/06/10 | Atlanta, GA | 3:18 PM | 404-932-2162 | | 15 | $ | - | $ | - | $ | - |
| 12/06/10 | Incoming | 5:06 PM | 404-362-1200 | | 3 | $ | - | $ | - | $ | - |
| 12/06/10 | Incoming | 8:05 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | $ | - |
| 12/06/10 | Incoming | 9:56 PM | 770-704-8955 | | 26 | $ | - | $ | - | $ | - |
| 12/07/10 | Incoming | 8:08 AM | 770-633-0997 | (V) | 15 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Ne, GA | 9:04 AM | 770-633-0997 | (V) | 10 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta So, GA | 9:26 AM | 678-289-1009 | | 6 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Ne, GA | 9:33 AM | 770-633-0997 | (V) | 11 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta, GA | 9:44 AM | 404-748-0706 | | 11 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta So, GA | 9:55 AM | 770-477-8770 | | 1 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta So, GA | 9:57 AM | 770-389-3481 | | 2 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Nw, GA | 10:26 AM | 678-574-3613 | | 35 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Ne, GA | 12:43 PM | 770-633-0997 | (V) | 3 | $ | - | $ | - | $ | - |
| 12/07/10 | Vm Retrieval | 12:47 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta, GA | 2:24 PM | 404-748-0706 | | 5 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Ne, GA | 2:35 PM | 678-653-7465 | | 5 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta, GA | 3:58 PM | 404-748-0706 | | 3 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Ne, GA | 4:05 PM | 770-633-0997 | (V) | 5 | $ | - | $ | - | $ | - |
| 12/07/10 | Incoming | 4:31 PM | 770-633-0997 | (V) | 6 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta Ne, GA | 4:37 PM | 678-653-7465 | | 4 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta, GA | 4:44 PM | 404-932-2162 | | 9 | $ | - | $ | - | $ | - |
| 12/07/10 | Atlanta, GA | 5:14 PM | 404-748-0706 | | 9 | $ | - | $ | - | $ | - |
| 12/07/10 | Incoming | 5:27 PM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/07/10 | Incoming | 6:04 PM | 770-704-6955 | | 22 | $ | - | $ | - | $ | - |
| 12/07/10 | Incoming | 7:40 PM | 678-403-2393 | | 18 | $ | - | $ | - | $ | - |
| 12/07/10 | Canton, GA | 9:51 PM | 770-704-6955 | | 44 | $ | - | $ | - | $ | - |
| 12/08/10 | Atlanta Ne, GA | 7:38 AM | 770-633-0997 | (V) | 22 | $ | - | $ | - | $ | - |
| 12/08/10 | Vm Retrieval | 8:03 AM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 12/08/10 | Atlanta So, GA | 8:04 AM | 770-477-8770 | | 12 | $ | - | $ | - | $ | - |
| 12/08/10 | Vm Retrieval | 8:55 AM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 12/08/10 | Atlanta Nw, GA | 9:41 AM | 678-574-3613 | | 1 | $ | - | $ | - | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Case 1:11-cv-00624-JOF   Document 13-2   Filed 03/29/11   Page 8 of 14

Statement For:   **KIMBERLY BARTLETT**
Mobile Number:   (404) 784-5634
Account Number:   234964726

**Customer Service Number**   1-800-937-8997

Dec 25, 2010

| Date | Location | Time | Number | | Min | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/10 | Atlanta Ne, GA | 8:00 PM | 770-633-0997 | (V) | 6 | $ | - | $ | - | | $ | - |
| 12/10/10 | Incoming | 8:05 PM | 770-704-6955 | (A) | 21 | $ | - | $ | - | | $ | - |
| 12/10/10 | Canton, GA | 9:21 PM | 770-704-6955 | | 39 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 8:53 AM | 770-633-0997 | (V) | 15 | $ | - | $ | - | | $ | - |
| 12/11/10 | Canton, GA | 10:15 AM | 770-704-6955 | | 3 | $ | - | $ | - | | $ | - |
| 12/11/10 | Incoming | 11:49 AM | 443-313-1380 | | 1 | $ | - | $ | - | | $ | - |
| 12/11/10 | Incoming | 11:50 AM | 770-633-0997 | (V) | 4 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 12:21 PM | 770-633-0997 | (V) | 2 | $ | - | $ | - | | $ | - |
| 12/11/10 | Incoming | 12:52 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 12:54 PM | 770-633-0997 | (V) | 1 | $ | - | $ | - | | $ | - |
| 12/11/10 | Canton, GA | 1:28 PM | 770-704-6955 | | 2 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta, GA | 1:31 PM | 404-748-0706 | | 7 | $ | - | $ | - | | $ | - |
| 12/11/10 | Vm Retrieval | 1:38 PM | 123 | (G) | 1 | $ | - | $ | - | | $ | - |
| 12/11/10 | Incoming | 1:39 PM | 770-633-0997 | (V) | 3 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Nw, GA | 1:47 PM | 678-574-3613 | | 17 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 2:59 PM | 770-235-2907 | | 7 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 3:57 PM | 770-235-2907 | | 2 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 5:22 PM | 770-235-2907 | | 2 | $ | - | $ | - | | $ | - |
| 12/11/10 | Atlanta Ne, GA | 5:41 PM | 770-633-0997 | (V) | 4 | $ | - | $ | - | | $ | - |
| 12/12/10 | Incoming | 11:45 AM | 770-633-0997 | (V) | 8 | $ | - | $ | - | | $ | - |
| 12/12/10 | Incoming | 3:59 PM | 770-633-0997 | (V) | 3 | $ | - | $ | - | | $ | - |
| 12/12/10 | Incoming | 6:17 PM | 770-363-3144 | | 13 | $ | - | $ | - | | $ | - |
| 12/12/10 | Atlanta Ne, GA | 6:31 PM | 770-633-0997 | (V) | 12 | $ | - | $ | - | | $ | - |
| 12/12/10 | Atlanta Ne, GA | 7:08 PM | 770-633-0997 | (V) | 6 | $ | - | $ | - | | $ | - |
| 12/12/10 | Canton, GA | 7:14 PM | 770-704-6955 | | 10 | $ | - | $ | - | | $ | - |
| 12/12/10 | Canton, GA | 9:03 PM | 770-704-6955 | | 14 | $ | - | $ | - | | $ | - |
| 12/12/10 | Canton, GA | 10:06 PM | 770-704-6955 | | 5 | $ | - | $ | - | | $ | - |
| 12/13/10 | Canton, GA | 7:38 AM | 770-704-6955 | | 1 | $ | - | $ | - | | $ | - |
| 12/13/10 | Atlanta Ne, GA | 7:39 AM | 770-633-0997 | (V) | 6 | $ | - | $ | - | | $ | - |
| 12/13/10 | Atlanta Nw, GA | 7:52 AM | 678-574-3613 | | 3 | $ | - | $ | - | | $ | - |
| 12/13/10 | Incoming | 7:54 AM | 770-704-6955 | (A) | 3 | $ | - | $ | - | | $ | - |
| 12/13/10 | Atlanta Nw, GA | 8:01 AM | 678-574-3613 | | 9 | $ | - | $ | - | | $ | - |
| 12/13/10 | Atlanta, GA | 9:07 AM | 404-376-5474 | | 2 | $ | - | $ | - | | $ | - |
| 12/13/10 | Vm Retrieval | 1:56 PM | 123 | (G) | 2 | $ | - | $ | - | | $ | - |
| 12/13/10 | Canton, GA | 1:57 PM | 770-704-6955 | | 34 | $ | - | $ | - | | $ | - |
| 12/13/10 | Atlanta Nw, GA | 2:53 PM | 770-966-5194 | | 8 | $ | - | $ | - | | $ | - |
| 12/13/10 | Atlanta Ne, GA | 3:11 PM | 770-633-0997 | (V) | 14 | $ | - | $ | - | | $ | - |
| 12/13/10 | Canton, GA | 3:50 PM | 770-704-6955 | | 4 | $ | - | $ | - | | $ | - |
| 12/13/10 | Canton, GA | 4:30 PM | 770-704-6955 | | 3 | $ | - | $ | - | | $ | - |
| 12/13/10 | Canton, GA | 5:18 PM | 770-704-6955 | | 34 | $ | - | $ | - | | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Case 1:11-cv-00624-JOF   Document 72-2   Filed 08/30/11   Page 3 of 11

Statement For:    **KIMBERLY BARTLETT**
Mobile Number:  (404) 784-5634
Account Number:  234964726

**Customer Service Number**   **1-800-937-8997**

Dec 25, 2010

PageA  11 of 12

| Date | Type | Time | Number | | Min | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12/21/10 | Incoming | 4:42 PM | 404-391-1763 | (V) | 3 | $ - | $ - | $ - | |
| 12/21/10 | Incoming | 6:13 PM | 770-363-3144 | | 19 | $ - | $ - | $ - | |
| 12/21/10 | Incoming | 6:45 PM | 770-363-3144 | | 11 | $ - | $ - | $ - | |
| 12/21/10 | Atlanta Ne, GA | 7:29 PM | 770-363-3144 | | 2 | $ - | $ - | $ - | |
| 12/21/10 | Incoming | 7:48 PM | 770-363-3144 | | 5 | $ - | $ - | $ - | |
| 12/21/10 | Atlanta Ne, GA | 7:57 PM | 678-910-8752 | | 26 | $ - | $ - | $ - | |
| 12/22/10 | Columbus, GA | 9:23 AM | 706-566-0728 | | 2 | $ - | $ - | $ - | |
| 12/22/10 | Atlanta Ne, GA | 9:32 AM | 770-633-0997 | (V) | 1 | $ - | $ - | $ - | |
| 12/22/10 | Columbus, GA | 9:34 AM | 706-566-0728 | | 3 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 9:45 AM | 770-633-0997 | (V) | 9 | $ - | $ - | $ - | |
| 12/22/10 | Columbus, GA | 11:31 AM | 706-566-0728 | | 3 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 12:28 PM | 678-653-7465 | | 1 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 1:21 PM | 706-566-0728 | | 8 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 1:33 PM | 770-633-0997 | (V) | 2 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 1:53 PM | 706-566-0728 | | 3 | $ - | $ - | $ - | |
| 12/22/10 | Atlanta Ne, GA | 2:41 PM | 678-458-3707 | (V) | 2 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 2:44 PM | 678-458-3707 | (V) | 7 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 5:24 PM | 678-910-8752 | | 3 | $ - | $ - | $ - | |
| 12/22/10 | Incoming | 6:10 PM | 678-458-3707 | (V) | 2 | $ - | $ - | $ - | |
| 12/22/10 | Atlanta Ne, GA | 7:29 PM | 770-235-2907 | | 5 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 8:23 AM | 770-633-0997 | (V) | 24 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 9:22 AM | 770-789-0125 | | 2 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta, GA | 9:24 AM | 404-748-0706 | | 1 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta, GA | 9:28 AM | 404-748-0706 | | 1 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta, GA | 9:30 AM | 404-748-0706 | | 1 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta, GA | 9:31 AM | 404-748-0706 | | 1 | $ - | $ - | $ - | |
| 12/23/10 | Vm Retrieval | 9:31 AM | 123 | (G) | 1 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta, GA | 9:32 AM | 404-748-0706 | | 7 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta, GA | 9:39 AM | 404-748-0706 | | 3 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta Ne, GA | 9:42 AM | 770-633-0997 | (V) | 8 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta Ne, GA | 10:32 AM | 770-363-3144 | | 2 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 11:42 AM | 770-363-3144 | | 5 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 12:09 PM | 404-391-1763 | (V) | 3 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta Ne, GA | 12:34 PM | 770-633-0997 | (V) | 8 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta Ne, GA | 12:44 PM | 770-235-2907 | | 1 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 12:44 PM | 770-235-2907 | | 16 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 1:54 PM | 678-458-3707 | (V) | 38 | $ - | $ - | $ - | |
| 12/23/10 | Incoming | 2:31 PM | 412-282-1420 | (A) | 1 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta Ne, GA | 2:31 PM | 770-633-0997 | (V) | 9 | $ - | $ - | $ - | |
| 12/23/10 | Atlanta Ne, GA | 3:17 PM | 770-633-0997 | (V) | 5 | $ - | $ - | $ - | |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Statement For:    **KIMBERLY BARTLETT**
Mobile Number:   (404) 784-5634
Account Number:  234964726

**Customer Service Number      1-800-937-8997**

Jan 25, 2011                                                    Page    2   of   13

| Date | Location | Time | Number | | Min | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/28/10 | Atlanta Ne, GA | 2:31 PM | 678-458-3707 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/28/10 | Incoming | 2:54 PM | 678-458-3707 | (V) | 3 | $ | - | $ | - | $ | - |
| 12/28/10 | Atlanta So, GA | 3:43 PM | 770-477-8770 | | 1 | $ | - | $ | - | $ | - |
| 12/28/10 | Atlanta Ne, GA | 4:41 PM | 770-633-0997 | (V) | 22 | $ | - | $ | - | $ | - |
| 12/28/10 | Incoming | 7:35 PM | 770-633-0997 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/29/10 | Atlanta, GA | 10:00 AM | 404-362-1200 | | 1 | $ | - | $ | - | $ | - |
| 12/29/10 | Incoming | 10:07 AM | 770-633-0997 | (V) | 16 | $ | - | $ | - | $ | - |
| 12/29/10 | Atlanta, GA | 10:25 AM | 404-376-5474 | | 2 | $ | - | $ | - | $ | - |
| 12/29/10 | Incoming | 2:15 PM | 404-394-0924 | | 9 | $ | - | $ | - | $ | - |
| 12/29/10 | Atlanta Ne, GA | 2:36 PM | 770-235-2907 | | 3 | $ | - | $ | - | $ | - |
| 12/29/10 | Canton, GA | 2:39 PM | 770-704-6955 | | 2 | $ | - | $ | - | $ | - |
| 12/29/10 | Incoming | 9:39 PM | 770-235-2907 | | 1 | $ | - | $ | - | $ | - |
| 12/29/10 | Canton, GA | 9:40 PM | 770-704-6955 | | 3 | $ | - | $ | - | $ | - |
| 12/29/10 | Canton, GA | 10:16 PM | 770-704-6955 | | 2 | $ | - | $ | - | $ | - |
| 12/29/10 | Atlanta, GA | 10:29 PM | 678-296-9535 | | 1 | $ | - | $ | - | $ | - |
| 12/29/10 | Canton, GA | 10:30 PM | 770-704-6955 | | 5 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 9:22 AM | 404-376-5474 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 9:29 AM | 404-391-1763 | (V) | 8 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 10:24 AM | 404-391-1763 | (V) | 4 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 10:38 AM | 404-376-5474 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 10:48 AM | 770-235-2907 | | 16 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 11:53 AM | 404-391-1763 | (V) | 3 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 12:01 PM | 404-391-1763 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta Nw, GA | 12:48 PM | 770-920-3722 | | 17 | $ | - | $ | - | $ | - |
| 12/30/10 | 1-888 # | 1:07 PM | 888-716-7894 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | 1-888 # | 1:10 PM | 888-716-7994 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 1:15 PM | 404-228-4854 | | 7 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta Ne, GA | 1:30 PM | 770-633-0997 | (V) | 3 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 1:34 PM | 404-391-1763 | (V) | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta Ne, GA | 1:34 PM | 678-653-7465 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 1:35 PM | 404-391-1763 | (V) | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 1:58 PM | 404-391-1763 | (V) | 2 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 2:22 PM | 404-966-3516 | | 4 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta Nw, GA | 2:30 PM | 770-920-3722 | | 8 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 2:49 PM | 440-580-0720 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta Ne, GA | 3:03 PM | 770-235-2907 | | 2 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 3:06 PM | 770-235-2907 | | 2 | $ | - | $ | - | $ | - |
| 12/30/10 | Incoming | 3:26 PM | 770-704-6955 | | 28 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta Nw, GA | 4:58 PM | 770-427-4281 | | 1 | $ | - | $ | - | $ | - |
| 12/30/10 | Atlanta, GA | 4:59 PM | 404-915-9228 | | 2 | $ | - | $ | - | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Statement For:   KIMBERLY BARTLETT
Mobile Number:   (404) 784-5634
Account Number:   234964726

**Customer Service Number**   1-800-937-8997

Jan 25, 2011

| Date | Location | Time | Number | | Min | | | | | | |
|------|----------|------|--------|---|-----|---|---|---|---|---|---|
| 1/19/11 | Incoming | 10:44 AM | 770-704-6955 | (A) | 14 | $ | - | $ | | $ | - |
| 1/19/11 | Atlanta, GA | 10:58 AM | 678-469-9277 | (V) | 40 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 11:37 AM | 770-704-6955 | (A) | 9 | $ | - | $ | - | $ | - |
| 1/19/11 | Atlanta, GA | 11:46 AM | 678-469-9277 | (V) | 1 | $ | - | $ | - | $ | - |
| 1/19/11 | Atlanta, GA | 11:55 AM | 678-469-9277 | (V) | 16 | $ | - | $ | - | $ | - |
| 1/19/11 | Atlanta, GA | 1:35 PM | 678-469-9277 | (V) | 36 | $ | - | $ | - | $ | - |
| 1/19/11 | Atlanta, GA | 2:33 PM | 678-469-9277 | (V) | 11 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 3:47 PM | 404-391-1763 | (V) | 6 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 5:01 PM | 678-910-8752 | | 12 | $ | - | $ | - | $ | - |
| 1/19/11 | Vm Retrieval | 5:48 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 6:02 PM | 678-469-9277 | (V) | 3 | $ | - | $ | - | $ | - |
| 1/19/11 | Atlanta So, GA | 6:05 PM | 678-289-1009 | | 3 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 6:27 PM | 770-704-6955 | | 27 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 7:06 PM | 678-594-8471 | | 2 | $ | - | $ | - | $ | - |
| 1/19/11 | Canton, GA | 8:15 PM | 770-704-6955 | | 22 | $ | - | $ | - | $ | - |
| 1/19/11 | Canton, GA | 9:37 PM | 770-704-6955 | | 26 | $ | - | $ | - | $ | - |
| 1/19/11 | Incoming | 10:34 PM | 770-704-6955 | | 4 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 8:39 AM | 678-469-9277 | (V) | 1 | $ | - | $ | - | $ | - |
| 1/20/11 | Canton, GA | 8:59 AM | 770-704-6955 | | 1 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 9:04 AM | 770-704-6955 | | 5 | $ | - | $ | - | $ | - |
| 1/20/11 | Atlanta, GA | 11:16 AM | 678-469-9277 | (V) | 4 | $ | - | $ | - | $ | - |
| 1/20/11 | Atlanta Nw, GA | 11:23 AM | 770-974-4806 | | 3 | $ | - | $ | - | $ | - |
| 1/20/11 | Vm Retrieval | 12:40 PM | 123 | (G) | 1 | $ | - | $ | - | $ | - |
| 1/20/11 | Atlanta Ne, GA | 12:41 PM | 770-236-2907 | | 1 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 12:45 PM | 412-282-1420 | | 1 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 1:33 PM | 770-928-3970 | | 21 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 5:09 PM | 678-469-9277 | (V) | 8 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 5:20 PM | 770-633-0997 | (V) | 6 | $ | - | $ | - | $ | - |
| 1/20/11 | Atlanta Ne, GA | 6:34 PM | 770-235-2907 | | 27 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 7:06 PM | 678-469-9277 | (V) | 2 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 7:15 PM | 770-704-6955 | | 12 | $ | - | $ | - | $ | - |
| 1/20/11 | Canton, GA | 8:09 PM | 770-704-6955 | | 24 | $ | - | $ | - | $ | - |
| 1/20/11 | Canton, GA | 8:59 PM | 770-704-6955 | | 18 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 9:18 PM | 770-704-6955 | | 10 | $ | - | $ | - | $ | - |
| 1/20/11 | Atlanta, GA | 9:28 PM | 678-469-9277 | (V) | 1 | $ | - | $ | - | $ | - |
| 1/20/11 | Atlanta, GA | 9:28 PM | 678-469-9277 | (V) | 2 | $ | - | $ | - | $ | - |
| 1/20/11 | Canton, GA | 9:33 PM | 770-704-6955 | | 62 | $ | - | $ | - | $ | - |
| 1/20/11 | Canton, GA | 10:45 PM | 770-704-6955 | | 8 | $ | - | $ | - | $ | - |
| 1/20/11 | Incoming | 11:14 PM | 770-704-6955 | | 12 | $ | - | $ | - | $ | - |
| 1/21/11 | Canton, GA | 7:44 AM | 770-704-6955 | | 5 | $ | - | $ | - | $ | - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (T) T-Mobile Number (U) HotSpot Call (V) myFaves Call (X) T-Mobile @Home Call

Case 1:11-cv-00624-JOF   Document 72-2   Filed 08/30/11   Page 1 of 2

# EXHIBIT C

ROBINS, KAPLAN, MILLER & CIRESI LLP

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

Jennifer M. Robbins
JMRobbins@rkmc.com
612-349-8500

March 17, 2011

Henry A. Turner                                      *By U.S. Mail and E-mail*
Turner Law Offices, LLC
403 West Ponce de Leon Avenue
Suite 207
Decatur, GA 30030

    Re:  *Bartlett et al. v. Portfolio Recovery Associates, Inc.*, 11-cv-0624

Dear Henry:

    I write in response to your March 15, 2011 email granting Portfolio Recovery Associates ("PRA") a 15-day extension to respond to plaintiff's Complaint if PRA agrees to an assignment of the case to a Federal Magistrate Judge. PRA will not agree to this request.

    Plaintiff's Complaint alleges a violation of the Telephone Consumer Protection Act against PRA, Inc. This allegation is improper because PRA, Inc. does not engage in debt collection efforts. Rather, PRA, LLC engages in such practices. If plaintiff does not file an amended Complaint alleging PRA, LLC as the defendant, PRA, Inc. will file a motion to dismiss on March 24, 2011.

    Please let me know before the end of business on March 18, 2011, whether plaintiff plans to re-file an amended Complaint.

                 Sincerely,

                 Jennifer M. Robbins

CC:   Sam Hill
       Lisa L. Heller
       Christopher W. Madel

82069927.1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| KIMBERLY BARTLETT on behalf of herself and all others similarly situated, | |
| Plaintiff, | **CASE NO.** |
| | **1:11-CV-0624-JOF** |
| v. | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | **CLASS ACTION** |
| Defendant. | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D of the Local Rules for the United States District

Court for the Northern District of Georgia, I hereby certify that the foregoing

<u>Second Amended Complaint</u> in the above-captioned case has been prepared in

Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

By:   <u>/s/ Henry A. Turner</u>
      Henry A. Turner
      Georgia Bar No. 719310

TURNER LAW OFFICES, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 261-7787       Co-Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

KIMBERLY BARTLETT on behalf of herself
and all others similarly situated,

       Plaintiff,

  v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

      Defendant.

**CASE NO.**

**1:11-CV-0624-JOF**

**CLASS ACTION**

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the within and foregoing Plaintiff's

Second Amended Complaint  in the above-captioned case with the Clerk of the

Court using the CM/ECF system, which will automatically send e-mail notification

of such filing to the following attorneys of record:

**Lisa L. Heller**  llheller@rkmc.com; tljones@rkmc.com


This 30th day of March, 2011.

By:   /s/ Henry A. Turner
       Henry A. Turner
       Georgia Bar No. 719310

TURNER LAW OFFICES, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 261-7787
hturner@tloffices.com

Co-Counsel for Plaintiff